1  David L. Witcoff (Admitted *Pro Hac Vice*)
   Illinois State Bar No. 06183629
2  dlwitcoff@jonesday.com
   JONES DAY
3  77 West Wacker Dr.
   Chicago, IL 60601
4  Telephone: (312) 782-3939
   Facsimile: (312) 782-8585
5
   Michael C. Hendershot (State Bar No. 211830)
6  mhendershot@jonesday.com
   JONES DAY
7  1755 Embarcadero Road
   Palo Alto, CA 94303
8  Telephone: (650) 739-3940
   Facsimile: (650) 739-3900
9
   [Additional counsel identified on signature pages]
10
   Attorneys for Defendant
11 NXP USA, INC.

12

                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

15
   IMPINJ, INC.,                          Case No. 4:19-cv-03161-YGR
16
                        Plaintiff,        **DEFENDANT NXP USA, INC.'S**
17                                        **MOTION TO STAY PENDING**
              v.                          ***INTER PARTES* REVIEW AT THE**
18                                        **U.S. PATENT & TRADEMARK**
   NXP USA, INC.,                         **OFFICE**
19
                        Defendant.
20
                                          **HEARING DATE: APRIL 14, 2020**
21
                                          **HEARING TIME: 2:00 P.M.**
22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2   I.   STATEMENT OF ISSUES TO BE DECIDED.....................................................1

3   II.  INTRODUCTION.............................................................................................1

4   III. BACKGROUND ..............................................................................................2

5        A.   NXP Has Filed For *Inter Partes* Review Of All Claims That

         Impinj Has Accused NXP Of Infringing In This Case. ...........................2

6
7        B.   This Case Is At An Early Stage...............................................................4

8        C.   Congress Created The IPR Procedure To Provide An Expedited

9             Review Of Patent Validity In The PTO, As An Alternative To

10            District Court Litigation..........................................................................5

11  IV.  ARGUMENT ...................................................................................................6

12       A.   The Court Has Discretion To Enter A Stay Pending The *Inter*

13            *Partes* Review........................................................................................6

14       B.   Courts Commonly Enter Stays Pending *Inter Partes* Review. ................6

15       C.   All Three Relevant Factors Strongly Weigh In Favor Of A Stay............7

16            1.   *Discovery Has Just Begun And No Trial Date Has Been*

17                 *Set.*....................................................................................8

18            2.   *A Stay Inevitably Will Simplify The Issues.* ....................................9

19            3.   *A Stay Will Not Unduly Prejudice Or Present A Clear*

20                 *Tactical Disadvantage To Impinj.* ..................................................16

21  V.   CONCLUSION................................................................................................17

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

3

CASES                                                                                                           Page

4

*Acoustic Tech., Inc. v. Silver Springs Networks, Inc.*,
   Case No. 17-cv-02176-SK, 2017 WL 6001615 (N.D. Cal. July 25, 2017) ..... 7, 8, 13, 14

5

6

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
   637 F.3d 1324 (Fed. Cir. 2011) ....................................................................................... 11

7

8

*Anza Tech., Inc. v. Toshiba Am. Elec. Components, Inc.*,
   Case No. 17-CV-07289-LHK, 2018 WL 4859167 (N.D. Cal. Sept. 28,
   2018) ........................................................................................................................... *passim*

9

10

*Aylus Networks, Inc. v. Apple, Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017) ....................................................................................... 11

11

12

*Brixham Sol. Ltd. v. Juniper Networks, Inc.*,
   Case No. 13-cv-00616-JCS, 2014 WL 1677991 (N.D. Cal. Apr. 28,
   2014) ................................................................................................................................ 10

13

14

*Corel Software, LLC v. Microsoft Corp.*,
   Case No. 2:15-CV-528-JNP-PMW, 2016 WL 4444747 (D. Utah Aug.
   23, 2016) ......................................................................................................................... 12

15

16

*Delphix Corp. v. Actifio, Inc.*,
   No. 13-CV-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014) ...................... 15

17

18

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
   No. 12-cv-02013-JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) ............................. 16

19

20

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1998) ......................................................................................... 6

21

22

*Evolutionary Intelligence LLC v. Facebook, Inc.*,
   No. 13-cv-04202-SI, 2014 WL 261837 (N.D. Cal. Jan. 23, 2014) ................... 10, 11, 15

23

24

*Evolutionary Intelligence LLC v. LivingSocial, Inc.*,
   Case No. 13-cv-04205-WHO, 2014 WL 213179 (N.D. Cal. Jan. 17,
   2014) .................................................................................................................................. 9

25

26

*Evolutionary Intelligence LLC v. Twitter, Inc.*,
   No. C 13-04207 JSW, 2017 WL 12601515 (N.D. Cal. Feb. 25, 2014) ......................... 11

27

28

*Evolutionary Intelligence LLC v. Yelp Inc.*,
No. C–13–03587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ................. 13, 14

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal. 2015) ................................................................. *passim*

*Ho Keung Tse v. Apple Inc.*,
No. C 06-06573 SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) ............................. 16

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) ................................................................ 8

*MasterObjects, Inc. v. eBay Inc.*,
Case No. 16-cv-06824-JSW, 2017 WL 2181132 (N.D. Cal. May 5,
2017) ............................................................................................................................. 9

*Murata Mach. USA v. Daifuku Co.*,
830 F.3d 1357 (Fed. Cir. 2016).................................................................................... 8

*Nanometrics, Inc. v. Nova Measuring Inst., Ltd.*,
No. C 06-2252 SBA, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) .............................. 16

*Oyster Optics, LLC v. Ciena Corp.*,
Case No. 17-cv-05920-JSW, 2018 WL 6972999 (N.D. Cal. Jan. 29,
2018) ......................................................................................................................... *passim*

*Palomar Techs., Inc. v. Mrsi Sys., LLC*,
Case No. 15-CV-1484 JLS (KSC), 2016 WL 4496839 (S.D. Cal. June
14, 2016) ..................................................................................................................... 12

*PersonalWeb Techs. LLC v. Apple, Inc.*,
69 F. Supp. 3d 1022 (N.D. Cal. 2014) .................................................................... 8, 9

*PersonalWeb Techs.LLC  v. Facebook, Inc.*,
Case Nos. 5:13-CV-01356-EJD, 5:13-CV-01358-EJD, 5:13-CV-01359-
EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ........................................... 10, 13, 15

*Philips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)................................................................................... 11

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013).................................... 5

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
No. C-14-1575-EMC, 2014 WL 3107447, at *6 (N.D. Cal. July 3, 2014).................... 14

*Uniloc USA, Inc. v. Apple Inc.*,
  Case No. 18-cv-00361-PJH, Case No. 18-cv-00362-PJH, Case No. 18-
  cv-00364-PJH, 2018 WL 2387855 (N.D. Cal. May 25, 2018) ...................... 8, 13, 14, 15

*Uniloc USA, Inc. v. LG Elec. USA., Inc.*,
  Case No. 18-cv-06737-JST, Case No. 18-cv-06739-JST, Case No. 18-
  cv-06740-JST, 2019 WL 1905161 (N.D. Cal. Apr. 29, 2019)...............................*passim*

*VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*,
  No. 11-cv-228-ACK-RLP, 2011 U.S. Dist. Lexis 148766 (D. Haw. Dec.
  27, 2011) ........................................................................................................................ 12

**STATUTES**

35 U.S.C. § 313 ........................................................................................................... 12, 16

35 U.S.C. § 314(a) ............................................................................................................. 6

35 U.S.C. § 314(b) ........................................................................................................ 5, 16

35 U.S.C. § 315(e)(2) ................................................................................................... 6, 10

35 U.S.C. § 316(a)(11) ................................................................................................. 6, 16

**OTHER AUTHORITIES**

37 C.F.R. § 42 ................................................................................................................... 11

37 CFR § 42.107(b) ................................................................................................. 5, 12, 16

iv

1
2

### NOTICE OF MOTION AND MOTION

3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4

PLEASE TAKE NOTICE that on April 14, 2020, at 2:00 P.M., or as soon

5

thereafter as the matter may be heard before the Honorable Yvonne G. Rogers, whose

6

Courtroom is located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, 4th Floor,

7

Defendant NXP USA, Inc. ("NXP"), pursuant to Civil L.R. 7-1 and 7-2, will and hereby

8

does move the Court for an Order staying this action pending the completion of the United

9

States Patent and Trademark Office's *inter partes* review of the validity of each of the

10

patents-in-suit.  This Motion to Stay is supported by the Memorandum of Points and

11

Authorities incorporated herein and the Declaration of David L. Witcoff submitted

12

herewith.

13

### RELIEF REQUESTED

14

NXP seeks a stay of this action in its entirety during the pendency of the *inter*

15

*partes* review of the validity of all eight patents asserted in this lawsuit: U.S. Patent Nos.

16

9,471,816; 9,633,302; 8,115,597; 9,495,631; 8,344,857; 8,600,298; 9,031,504; and

17

10,002,266.

18

### MEMORANDUM OF POINTS AND AUTHORITIES

19

**I.    STATEMENT OF ISSUES TO BE DECIDED**

20

Whether the Court should stay this action until the U.S. Patent and Trademark

21

Office ("PTO") completes *inter partes* review of the validity of all eight patents-in-suit.

22

**II.    INTRODUCTION**

23

NXP respectfully requests that the Court stay this lawsuit while the PTO completes

24

an *inter partes* review ("IPR") of the validity of each claim Impinj has accused NXP of

25

infringing in this case.  NXP filed petitions for IPR for each patent-in-suit in February

26

2020, including for each asserted claim.  NXP acted quickly in filing these IPR petitions,

27

preparing and filing them shortly after Impinj finalized the patents it was asserting and

28

reduced the number of patent claims it was accusing NXP of infringing.  This case is at an

1    early stage: fact discovery has only recently begun; the deadline to close fact discovery has

2    not been set; claim construction briefing has not begun; expert discovery has not started;

3    and no trial date has been scheduled.  A stay while the PTO makes an expedited review of

4    the patents-in-suit will likely significantly simplify the issues and reduce the burden on

5    both the Court and the parties, if not eliminate the case altogether.  And a stay here would

6    not unduly prejudice Impinj or present a clear tactical advantage to NXP.  Under these

7    circumstances, Courts in this District often stay the case even before the PTO decides

8    whether to institute the requested *inter partes* review of the asserted patents.

9        As demonstrated below, each of the three factors considered by courts in this

10   District strongly weighs in favor of a stay.

## III.    BACKGROUND

### A.    NXP Has Filed For *Inter Partes* Review Of All Claims That Impinj Has Accused NXP Of Infringing In This Case.

On February 14, 2020, NXP completed the filing of its petitions for *inter partes*

review of all eight patents that remain in this case: U.S. Patent Nos. 9,471,816; 9,633,302;

8,115,597; 9,495,631; 8,344,857; 8,600,298; 9,031,504; and 10,002,266.  (Witcoff Decl.,

¶¶3–12.)[1]  NXP's petitions seek PTO review of the validity of each claim (among others)

that Impinj has accused NXP of infringing in this case.  (*Id.* at ¶14.)  The IPR petitions are

based on a number of invalidating prior art references, none of which were considered by

the Examiner during the initial examination of these patents.  (*Id.*)

In support of the IPR petitions, NXP also submitted supporting declarations from

Dr. Daniel van der Weide, a technical expert with 26 years of experience in the field of

high-frequency electrical measurement and communications systems and advanced high-

frequency circuit design and measurement; Dr. Jack Lee, a technical expert with 40 years

of experience in the field of semiconductor process technology and semiconductor design;

and Dr. Travis Blalock, a technical expert with 34 years of experience in the field of

electrical engineering.  Dr. van der Weide has a B.S.E.E. degree from the University of

---

[1] NXP attaches proof of filing rather than the petitions themselves, which are
voluminous.  NXP will provide the petitions to the Court upon request.

1   Iowa, an M.S.E.E. degree from Stanford University, and a Ph.D.E.E. degree from Stanford

2   University; Dr. Lee has a B.S.E.E. and an M.S.E.E. degree from the University of

3   California, Los Angeles, and a Ph.D.E.E. degree from the University of California,

4   Berkeley; and Dr. Blalock has a B.S.E.E. and an M.S.E.E. degree from the University of

5   Tennessee and a Ph.D.E.E. degree from Auburn University.  (*Id.* at ¶15.)

6          NXP filed with the PTO the following IPR petitions challenging the identified

7   claims (the 20 claims Impinj is accusing NXP of infringing are in bold):

| IPR Petition | Date Filed | Institution Decision Due No Later Than | Challenged Claims |
|---|---|---|---|
| IPR2020-00514 | February 4, 2020 | August 20, 2020 | U.S. Patent No. 9,471,816 claims 1, **3**, **4**, 5–6, 8, 10–13, 15, 17–20 |
| IPR2020-00516 | February 5, 2020 | September 4, 2020 | U.S. Patent No. 9,633,302 claims **1**, 2, **3**, 4, 5–6, **7**, 8–20 |
| IPR2020-00519 | February 6, 2020 | August 20, 2020 | U.S. Patent No. 8,115,597 claims **1**, 2, 9–10, and **12**, **13**, 14, **15** |
| IPR2020-00543 | February 10, 2020 | September 4, 2020 | U.S. Patent No. 9,495,631 claims 1–6, 8–12, **13**, **14**, **15**, **16**, 17 |
| IPR2020-00544 | February 10, 2020 | September 4, 2020 | U.S. Patent No. 8,344,857 claims 1–15 |
| IPR2020-00552 | February 11, 2020 | August 20, 2020 | U.S. Patent No. 8,600,298 claims 1, 2, 3–5, 8–12, **15**, **16**, 17, 18–19 |
| IPR2020-00553 | February 11, 2020 | August 20, 2020 | U.S. Patent No. 8,600,298 claims 1, 2, 3–5, 8–12, **15**, **16**, 17, 18–19 |

| IPR2020-00554 | February 11, 2020 | September 4, 2020 | U.S. Patent No. 9,031,504 claims 1–2, 4, 7–10, 13–15, 17–19, 21 |
|---|---|---|---|
| IPR2020-00556 | February 11, 2020 | September 4, 2020 | U.S. Patent No. 9,031,504 claims 1–2, 4, 7–10, 13–15, 17–19, 21 |
| IPR2020-00589 | February 14, 2020 | September 8, 2020 | U.S. Patent No. 10,002,266 claims 1–7, **8, 10**, 11–17 |

(*Id.* at ¶¶3–12, 16.)

**B.     This Case Is At An Early Stage.**

Impinj's initial Complaint accused NXP of infringing 26 patents.  (ECF No. 1.)  At the November 6, 2019 Case Management Conference, Impinj requested, as an alternative approach, to file an amended complaint asserting infringement of only 8 of these patents. (November 14, 2019 Case Management and Scheduling Order (ECF No. 39) ("Scheduling Order" at 1).)  There was a lengthy discussion on the handling of the remaining 18 patents, including concerns about *inter partes* reviews, that culminated in the Court indicating that Impinj would at some point be able to file an amended complaint or otherwise dismiss these 18 patents, but first it wanted to see how the parties resolved their concerns regarding these 18 patents.  (*Id*. at 1–2.)  Ultimately, on February 13, 2020, the Court granted (ECF No. 51) the parties' Stipulation Allowing Filing of Amended Complaint (ECF No. 49), which dismissed with prejudice many of the claims from these 18 patents, and also permitted Impinj to file its First Amended Complaint asserting the other 8 patents, which Impinj did on February 18.  (ECF No. 53.)

In addition, pursuant to the Court's Scheduling Order, Impinj identified 28 patent claims from these 8 patents in its infringement contentions on November 14, 2019. Responding to NXP's complaints about deficiencies, Impinj disclosed more complete infringement contentions in January 2020, including revised claim charts.  (Witcoff Decl.,

1   ¶13.)  Moreover, on February 21, 2020, pursuant to a Case Narrowing Event in the Court's

2   Scheduling Order, Impinj reduced the number of patent claims it was asserting against

3   NXP from 28 to 20, revealing in that disclosure that it was no longer asserting any claims

4   from U.S. Patent Nos. 8,344,857 and 9,031,504.  (*Id.*, ¶16.)

5           As more fully explained below, fact discovery has only recently begun.  And, under

6   the Court's Scheduling Order, the deadline to close fact discovery has not been set; claim

7   construction briefing has not begun; expert discovery has not started; and no trial date has

8   been scheduled.

9       **C.**      **Congress Created The IPR Procedure To Provide An Expedited**
        **Review Of Patent Validity In The PTO, As An Alternative To District**
10      **Court Litigation.**

11  *Inter partes* review is a PTO procedure created by Congress that serves as an

12  alternative to district court litigation to resolve patent validity challenges.  Congress

13  specifically implemented this procedure to mitigate the burden of potential redundancies

14  borne by the courts, the taxpayers, and the parties when identical patent issues are litigated

15  in multiple forums.  *See Pi-Net Int'l, Inc. v. Focus Bus. Bank*, C-12-4958-PSG, 2013 WL

16  4475940, at *1 (N.D. Cal. Aug. 16, 2013).  An IPR is conducted on an accelerated

17  schedule (imposed by statute) in the PTO before a panel of three technically-trained

18  Administrative Patent Judges.

19          The IPR procedure is tailor-made for the present situation, particularly given that

20  the PTO was not aware of *any* of the invalidating prior art references cited in the IPR

21  petitions during the initial examinations of the patents-in-suit.  Once an IPR petition is filed

22  and accorded a filing date by the PTO, the PTO is required by statute to decide whether to

23  institute the *inter partes* review within six months.  37 C.F.R. § 42.107(b); 35 U.S.C.

24  § 314(b).  Thus, in this case, the parties should learn whether the PTO has decided to

25  institute IPR of each asserted patent no later than between August 20 and September 8,

26  2020 (and the PTO could always decide more promptly than this).  35 U.S.C. 314(b).

27          The PTO will institute an IPR upon a showing that "[t]here is a reasonable

28  likelihood that the petitioner would prevail with respect to at least 1 of the claims

5

1   challenged in the petition." 35 U.S.C. § 314(a).  According to the most recent statistics

2   released by the PTO, for Fiscal Year 2019, the PTO granted about 63% of petitions for

3   *inter partes* review.  (Witcoff Decl., ¶17.)  In that event, "the final determination in an *inter*

4   *partes* review [must] be issued not later than 1 year after the date on which the Director

5   notices the institution of a review," extendible by no more than 6 months for good cause.

6   35 U.S.C. § 316(a)(11).[2]  Once the PTO issues a final written decision, the IPR petitioner

7   is estopped in litigation from asserting that the claims, subject to the written decision, are

8   invalid on any ground that the petitioner raised or reasonably could have raised during the

9   IPR.  35 U.S.C. § 315(e)(2).  Of the patents reviewed during the IPR process since 2012,

10  81% of final decisions found at least one claim of the challenged patents unpatentable, and

11  63% found all of the challenged claims unpatentable.  (Witcoff Decl., ¶17.)

12       As explained by the PTO, "[t]he purpose of . . . [the PTO's IPR] regulations is to

13  establish a more efficient and streamlined patent system that will improve patent quality

14  and limit unnecessary and counterproductive litigation costs."  (Witcoff Decl., ¶18.)  The

15  PTO's express intent in formulating the IPR rules and procedures was "to create a timely,

16  cost-effective alternative to litigation."  (*Id.*)

17  **IV.    ARGUMENT**

18       **A.    The Court Has Discretion To Enter A Stay Pending The *Inter Partes***
19            **Review.**

20       This Court has inherent authority to stay this litigation pending *inter partes* review

21  of the validity of the patents-in-suit.  *See Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d

22  1032, 1035 (N.D. Cal. 2015) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed.

23  Cir. 1998)).  Whether to stay a case during a parallel IPR proceeding regarding the asserted

24  patents is entrusted to the Court's sound discretion.  *Oyster Optics, LLC v. Ciena Corp.*,

25  Case No. 17-cv-05920-JSW, 2018 WL 6972999, at *1 (N.D. Cal. Jan. 29, 2018).

26       **B.    Courts Commonly Enter Stays Pending *Inter Partes* Review.**

27       Recognizing the potential to streamline and inform a patent case (if not dispose of it

28  _____

    [2] According to the PTO: "Extensions of the one-year period are anticipated to be
    rare."  (Witcoff Decl., ¶19.)

1  entirely), numerous courts in this District have recently entered stays pending IPR

2  proceedings even before the PTO decided whether to institute the requested IPR.  *See, e.g.*,

3  *Uniloc USA, Inc.  v. LG Elec. USA., Inc.*, Case No. 18-cv-06737-JST, Case No. 18-cv-

4  06739-JST, Case No. 18-cv-06740-JST, 2019 WL 1905161, at *4 (N.D. Cal. Apr. 29,

5  2019) (granting pre-institution institution stay, explaining:  "Given the degree to which the

6  PTO's decisions may impact these cases, it would be particularly wasteful to require the

7  parties to proceed with preparations and filings that may be reshaped or entirely mooted a

8  short while later"); *Anza Tech., Inc. v. Toshiba Am. Elec. Components, Inc.*, Case No. 17-

9  CV-07289-LHK, 2018 WL 4859167, at *2 (N.D. Cal. Sept. 28, 2018) (granting pre-

10  institution stay because "staying the case pending the resolution of the petitions and the

11  IPRs, if instituted, could simplify the case because the PTAB could cancel or amend some

12  or all of the asserted claims"); *Uniloc USA, Inc. v. Apple Inc.*, Case No. 18-cv-00361-PJH,

13  Case No. 18-cv-00362-PJH, Case No. 18-cv-00364-PJH, 2018 WL 2387855, at *2 (N.D.

14  Cal. May 25, 2018) (granting pre-institution stay, finding that "[a] stay would simplify the

15  issues and conserve the court's and a potential jury's resources by ensuring that the court

16  does not address at claim construction, summary judgment, or trial any claims that the

17  Patent Office later invalidates"); *Oyster Optics, LLC v. Ciena Corp.*, 2018 WL 6972999, at

18  *2 (granting pre-institution stay because "[a]lthough the PTAB has not yet ruled on its

19  petitions, if the PTAB accepts review of all claims, it could dispose of this case in its

20  entirety"); *Acoustic Tech., Inc. v. Silver Springs Networks, Inc.*, Case No. 17-cv-02176-SK,

21  2017 WL 6001615, at *2 (N.D. Cal. July 25, 2017) (granting pre-institution stay because

22  "the Court finds that staying this action can reduce the burden on the Court and preserving

23  the resources of both parties and the Court").  The courts in these cases found that a stay

24  pending IPR proceedings would save significant resources, simplify cases that were still in

25  the early stage of discovery, and would not unduly prejudice the non-moving party.

26        **C.**     **All Three Relevant Factors Strongly Weigh In Favor Of A Stay.**

27          In deciding whether to stay a case pending an *inter partes* review, courts in this

28  District consider:  "(1) whether discovery in the case is complete and whether a trial date

has been set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161, at *2  (citing *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) and *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016)).  All three of these factors strongly weigh in favor of staying this case.

### 1.    *Discovery Has Just Begun And No Trial Date Has Been Set.*

The first factor weighs strongly in favor of a stay because this case is still in its early stages.  "The first factor asks the Court to consider the progress already made in the case, such as the completion of discovery, the setting of a trial date, or whether claim construction has occurred."  *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161, at *2 (citation omitted).  "Issues for consideration include whether the parties have engaged in costly expert discovery and dispositive motion practice, whether the parties have fully briefed the issue of claim construction, attended a *Markman* hearing and received a claim construction order, and whether a court has set a trial date."  *Acoustic Tech.*, 2017 WL 6001615, at *2 (citing *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025–26 (N.D. Cal. 2014)).  While the parties have exchanged some written discovery and started producing documents, no depositions have been noticed or taken, claim construction briefing will not begin until May 29 (with a *Markman* hearing currently set for July 22), and there is no fact discovery cut-off, expert discovery schedule, or trial date. (Witcoff Decl., ¶2; ECF No. 39.)  The early stage of this case, therefore, weighs strongly in favor of a stay.  *See, e.g., Anza Tech*, 2018 WL 4859167, at *1 (staying case where "only limited discovery" had occurred and the parties had not begun claim construction briefing); *Uniloc USA, Inc. v. Apple Inc.*, 2018 WL 2387855 (staying case where most of fact and expert discovery was largely incomplete); *Acoustic Tech.*, 2017 WL 6001615, at *2 (staying case where there had been "no expert discovery, no dispositive motions, no setting for trial, and no claim construction briefing").

1

## 2.    *A Stay Inevitably Will Simplify The Issues.*

2
3        A stay will simplify the issues in this case and at trial in many ways.  First, the IPRs

4    could significantly narrow, or even eliminate this case, by disposing of some or all of the

5    patents and asserted claims.  The PTO will review the validity of every claim asserted in

6    this case because NXP's IPR petitions seek review of the validity of each claim Impinj is

7    asserting against NXP here.  (Witcoff Decl., ¶14.)  Thus, "the requested stay presents the

8    maximum potential for simplification."  *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161,

9    at *4.  Courts in this District have found that this "high upside" mitigates the risk that the

10   PTO will deny review.  *Id.*

11       Even if not all claims of the patents-in-suit are ultimately found unpatentable, it is

12   highly likely that one or more claims will not survive the IPRs. "The standard is

13   simplification of the district court case, not complete elimination of it by the PTAB." *Anza*

14   *Tech.*, 2018 WL 4859167, at *2 (quotation omitted).  As noted in Section III.C *supra*, 81%

15   of final IPR decisions since 2012 have found at least one claim of the challenged patents

16   unpatentable.  (Witcoff Decl., ¶17.)  In addition, regardless of the outcome, "the [PTO's]

17   ruling on [NXP's] IPR petition[s] may clarify claim construction positions of the parties,

18   raise estoppel issues, and encourage settlement, thus reducing the litigation burden on the

19   parties."  *MasterObjects, Inc. v. eBay Inc.*, Case No. 16-cv-06824-JSW, 2017 WL

20   2181132, at *3 (N.D. Cal. May 5, 2017); *see also Oyster Optics*, 2018 WL 6972999, at *2

21
22   (same); *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, Case No. 13-cv-04205-WHO,

23   2014 WL 213179, at *2 (N.D. Cal. Jan. 17, 2014) ("This case will be simplified if the PTO

24   narrows or cancels *any* of the asserted claims, even if other claims remain in their original

25   form." (emphasis in original)).

26
27        Thus, if all of the accused claims of the patents-in-suit are found unpatentable

28

9

through IPRs while the case is stayed, then the Court and parties will have avoided the very substantial cost and burden of unnecessary litigation.  Even if the PTO finds that only some of the asserted patent claims are invalid or must be amended, then the Court and parties nevertheless will have avoided wasting resources addressing invalid claims or claims that have been amended.

Further, "even if the PTO decides to institute review and affirms the validity of every asserted claim, the case would still be simplified because 'such a strong showing would assist in streamlining the presentation of evidence . . . .'" *Finjan*, 139 F. Supp. at 1036–37 (quoting *PersonalWeb Techs. LLC v. Facebook, Inc.*, Case Nos. 5:13-CV-01356-EJD, 5:13-CV-01358-EJD, 5:13-CV-01359-EJD, 2014 WL 116340, at *4 (N.D. Cal. Jan. 13, 2014).  Even then, for example, the invalidity issues here will be simplified because NXP will be estopped from re-litigating in this Court the same invalidity issues that it raised or reasonably could have raised in the IPR proceedings.  35 U.S.C. § 315(e)(2).  *See Finjan*, 139 F. Supp. 3d at 1036 ("Staying the case pending the outcome of IPR could simplify the case by rendering some or all of Finjan['s] infringement claims moot, estopping [the defendant] from asserting any arguments it raised or reasonably could have raised in the IPR . . . ." (citing *Evolutionary Intelligence LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *2 (N.D. Cal. Jan. 23, 2014)); *Brixham Sol. Ltd. v. Juniper Networks, Inc.*, Case No. 13-cv-00616-JCS, 2014 WL 1677991, at *1 (N.D. Cal. Apr. 28, 2014) ("[A]ssuming the PTO institutes review, the case is likely to be streamlined even if no claims are cancelled because of the estoppel provisions of 35 U.S.C. § 315(e)(2) . . . .").  Thus, a stay here will inevitably simplify the case.

Moreover, if and to the extent that any claims do survive the IPR process, the Court, the jury and the parties will benefit from the PTO's expert review of the technology,

claim construction, and scope of the asserted claims and prior art.  *See Finjan*, 139 F. Supp. 3d at 1036–37 ("Staying the case pending the outcome of IPR could simplify the case by . . . providing the Court with [the PTO's] expert opinion . . . and benefit the trier of fact by providing the expert opinion of the PTO." (citing *Evolutionary Intelligence v. Facebook*, 2014 WL 261837, at *2); *Evolutionary Intelligence v. Twitter, Inc.*, No. C 13-04207 JSW, 2017 WL 12601515, at *3 (N.D. Cal. Feb. 25, 2014) ("To the extent claims survive the reexamination process, the reexamination would facilitate trial by providing the Court with expert opinion of the PTO and clarifying the scope of the claims." (citation omitted)).

A stay also would avoid the risk and burden of potentially having to repeat the patent claim construction process in this proceeding once the IPR records are complete. This is particularly true now that the PTO must apply the same standard as the district courts in construing claim terms.  *See* 37 C.F.R. 42.  For example, during the IPR proceedings, Impinj may make representations and admissions regarding the scope of the claims of the patents-in-suit to attempt to distinguish the claimed invention from the prior art.  These statements will form part of the still-developing intrinsic record of the patents-in-suit (the back-and-forth "prosecution history" in the PTO) that the Court must consider when it construes the claim language.  *See Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1359–62 (Fed. Cir. 2017) (holding that statements made by a patent owner during IPR proceedings may be used to support a finding of prosecution disclaimer during claim construction proceedings); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (statements made during PTO reexamination inform the proper construction of a claim term); *Philips v. AWH Corp.*, 415 F.3d 1303, 1314–19 (Fed. Cir. 2005) (intrinsic evidence includes the claims, the specification, and the prosecution history,

which comprises the complete record of the proceedings before the PTO).  If claim

construction is addressed before the PTO's review of the patents-in-suit, before NXP's

arguments are complete, and before the claims (if they even survive) are final, that process

will likely need to be repeated or revisited, in whole or in part, after the conclusion of the

IPR proceedings.  *See, e.g.*, *Palomar Techs., Inc. v. Mrsi Sys., LLC*, Case No. 15-CV-1484

JLS (KSC), 2016 WL 4496839, at *7 (S.D. Cal. June 14, 2016) (granting stay, noting that

in the absence of a stay, "the parties may have to seek to reopen, revisit, or potentially

completely redo discovery and claim construction to account for events occurring during

IPR"); *Corel Software, LLC v. Microsoft Corp.*, Case No. 2:15-CV-528-JNP-PMW, 2016

WL 4444747, at *2 (D. Utah Aug. 23, 2016) ("Proceeding with claim construction without

the benefit of the additional intrinsic record developed during IPR could complicate this

case by making it necessary to reconsider certain claim construction issues."); *VDF*

*Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*, No. 11-cv-228-ACK-RLP, 2011

U.S. Dist.  Lexis 148766, at *5–6 (D. Haw. Dec. 27, 2011) ("The Court particularly notes

that some or all of the Court's determinations at the scheduled Markman hearing [] could

be undermined by the PTO's reexamination, forcing the Court to hold a second Markman

hearing to address new versions of the claims.").  This is true even if the PTO ultimately

does not institute review because the Patent Owner may make statements or take positions

in its preliminary response that will become part of the intrinsic record, which will further

inform claim construction issues.[3]  Because a stay pending completion of the IPRs would

avoid imposing this unnecessary burden on the Court, the claim construction issues should

---

[3] As the Patent Owner, Impinj can submit a Preliminary Response to each IPR petition submitted by NXP within 3 months after the PTO issues its Notice of Filing Date Accorded to each petition.  35 U.S.C. § 313; 37 C.F.R. § 42.107(b).  Therefore, Impinj can submit its Preliminary Responses here no later than May 20 – June 5, 2020.  (Witcoff Decl., ¶¶3–12.)

not be litigated until the evolving intrinsic record in the PTO is complete.

A stay of the litigation while the IPRs proceed in the PTO also should enhance the likelihood of settlement.  *See Evolutionary Intelligence LLC v. Yelp Inc.*, No. C–13–03587 DMR, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013) ("[E]ven if these claims are not all cancelled, the IPR could encourage settlement . . . ." (quotation omitted)).  If, for example, Impinj is forced to amend the claims during the IPRs, then the scope of Impinj's patent allegations may be altered, and the settlement posture may have changed considerably.

If the case is not stayed, however, and the Court moves forward with this action in parallel with the IPRs, there is a substantial risk of expending substantial resources to litigate the validity of patent claims that may ultimately be held unpatentable by the PTO.  *See Finjan*, 139 F. Supp. 3d at 1037 ("Were the Court to deny a stay until a decision on institution is made, the parties and the Court would expend significant resources on issues that could eventually be mooted by the IPR decision"); *PersonalWeb Techs. v. Facebook*, 2014 WL 116340, at *4 (granting stay to "avoid[] duplicative costs and efforts").  The parties have yet to make the major investment of time and resources necessary for fact and expert discovery, or for claim construction.  It would be a waste of valuable judicial and party resources to conduct parallel proceedings before this Court and the PTO, only to risk having the work of the Court undone by claim cancellations and/or amendments that are likely to occur in the PTO.  *See Uniloc USA v. Apple*, 2018 WL 2387855, at *2 (finding that because of the possibility that the court and the PTO "could reach inconsistent conclusions regarding the same patent, there is a significant concern of wasting resources by unnecessarily proceeding with this action in parallel (internal quotation omitted)).  If this case proceeds alongside the IPRs, there also is a risk of inconsistent rulings on the

issue of patent validity.  *See Acoustic Tech.*, 2017 WL 6001615, at *2 ("A stay may also serve to avoid inconsistent results, obtain guidance from the [PTO] or avoid the waste of judicial resources."); *Evolutionary Intelligence v. Yelp*, 2013 WL 6672451, at *6 ("[G]ranting of a stay will avoid the possibility of inconsistent results.").

That the PTO has not yet issued a decision on the IPR petitions should not weigh against a stay.  "[T]he issuance of a stay while the request for an IPR is still pending is not uncommon," and this District has a "liberal policy in favor of granting motions to stay" cases pending the outcome of IPR proceedings.  *Acoustic Tech*, 2017 WL 6001615, at *3 (quoting *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575-EMC, 2014 WL 3107447, at *6 (N.D. Cal. July 3, 2014)).  Indeed, numerous courts in this District have recently granted stays *prior to* the PTO issuing an institution decision due to the potential for significant simplification of the case and conservation of resources.  *See, e.g.*, *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161, at *4 ("[G]iven the degree to which the PTO's decisions may impact these cases, it would be particularly wasteful to require the parties to proceed with preparations and filings that may be reshaped or entirely mooted a short while later."); *Anza Tech.*, 2018 WL 4859167, at *2  ("Therefore, staying the case pending the resolution of the petitions and the IPRs, if instituted, could simplify the case because the PTAB could cancel or amend some or all of the asserted claims"); *Uniloc USA v. Apple*, 2018 WL 2387855, at *2 ("A stay would simplify the issues and conserve the court's and a potential jury's resources by ensuring that the court does not address at claim construction, summary judgment, or trial any claims that the Patent Office later invalidates."); *Oyster Optics*, 2018 WL 6972999, at *2 ("Although the PTAB has not yet ruled on its petitions, if the PTAB accepts review of all claims, it could dispose of this case in its entirety."); *Acoustic Tech.*, 2017 WL 6001615, at *2 ("Therefore, the Court finds that

staying this action can reduce the burden on the Court and preserving the resources of both parties and the Court.").  The courts in each of these cases found that the benefits of a stay (preserving significant resources, simplifying the issues, etc.) under circumstances similar to those here outweighed waiting for the PTO to make its institution decision.

"Furthermore, either party may file a motion to lift the stay if any part of the petitions for IPR are denied, so 'any concern that the motion[] [is] premature is alleviated by the short time frame of the initial stay and the Court's willingness to reevaluate the stay if *inter partes* review is not instituted for all of the asserted claims." *Anza Tech.*, 2018 WL 4859167, at *2  (quoting *Evolutionary Intelligence v. Facebook*, 2014 WL 261837, at *3; *see also Uniloc USA v. Apple*, 2018 WL 2387855, at *2 ("But the fact that the [PTO] has not yet decided whether to institute an IPR does not require finding the factor weighs against issuing a stay." (collecting cases)).

Here, NXP has challenged every asserted claim of the patents-in-suit, and "if the [PTO] accepts review of all claims, it could dispose of this case in its entirety." *Oyster Optics*, 2018 WL 6972999, at *2.  "In these circumstances . . . courts in this district have found that the potential for simplification outweighs the uncertainty inherent in a pre-institution stay." [4]  *See, e.g.*, *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161, at *5; *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014); *Oyster Optics*, 2018 WL 6972999, at *3; *PersonalWeb Techs. v. Facebook*, 2014 WL 116340, at *5.

Thus, the second factor also weighs strongly in favor of a stay.

---

[4] Considering that IPRs are instituted the majority of the time (Witcoff Decl., ¶17), any consequences of staying the case at least until the institution decision (here, no later than until September 8, 2020) are greatly outweighed by the vast benefits of a stay (e.g., conserving resources, the IPRs' impact on claim construction and desire to avoid do-overs, etc.), as explained herein.

**3.     *A Stay Will Not Unduly Prejudice Or Present A Clear Tactical Disadvantage To Impinj.***

In weighing whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, courts consider: "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *Uniloc USA v. LG Elec. USA*, 2019 WL 1905161, at *5 (quoting *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 12-cv-02013-JST, 2014 WL 5021100, at *3 (N.D. Cal. Oct. 7, 2014)).  A stay does not present a tactical advantage where, as here, the case has not significantly progressed and therefore a stay is "particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery." *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007).   As discussed in Section III.C.1 *supra*, this litigation is in its early stages and has not significantly progressed.

Further, a stay will be in place for a finite amount of time.  "Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice." *Oyster Optics*, 2018 WL 6972999, at *3 (quoting *PersonalWeb Techs. v. Facebook*, 2014 WL 116340, at *5); *see also Nanometrics, Inc. v. Nova Measuring Inst., Ltd.*, No. C 06-2252 SBA, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007 (noting that "[m]ere delay, without more . . . does not demonstrate undue prejudice").  Any litigation delay here will not result in undue prejudice.  The stay requested by NXP will be of limited duration:  the PTO is statutorily required to decide whether to institute all of the IPRs no later than September 8, 2020, and may in fact reach these decisions earlier.  35 U.S.C. §§ 313, 314(b); 37 CFR § 42.107(b).  If the PTO elects not to institute the IPRs, then the stay could be lifted here by mid-September 2020 at the latest.  And if the IPRs are instituted, then the PTO must, by statute, complete the review within twelve months of institution.  35 USC. § 316(a)(11).  Thus, where the speed of the overall IPR procedure is accelerated, a stay does not result in undue prejudice.

That Impinj and NXP are competitors also should not weigh against a stay here.

1    Courts have found this factor does not create undue prejudice, especially because of the

2    stay's short duration.  *Finjan*, 139 F. Supp. 3d at 1037.  That conclusion is especially

3    compelling here, where Impinj corresponded with NXP for two years about its

4    infringement concerns before it brought suit (while the accused products were on the

5    market), and Impinj has not sought a preliminary injunction.  Impinj's clear lack of

6    urgency in bringing and litigating this case demonstrates that Impinj will not suffer

7    prejudice or a tactical disadvantage, much less ***undue prejudice*** or a ***clear*** tactical

8    advantage as required in this District.

9        Thus, the final factor also weighs in favor of a stay.

10   **V.    CONCLUSION**

11       All three factors that courts in this District consider when evaluating whether to

12   grant a stay pending *inter partes* review weigh in favor of a stay.  This case is in its very

13   early stages, there is a maximum potential for narrowing and streamlining the case (or even

14   disposing of it entirely), and Impinj will not suffer any undue prejudice or clear tactical

15   advantage because NXP did not delay in filing its IPR petitions and because Impinj has

16   demonstrated no urgency concerning the resolution of this case.  For all the reasons cited

17   above, NXP respectfully requests that the Court stay this case pending resolution of the

18   IPR proceedings for all eight patents-in-suit.

19

20

21

22

23

24

25

26

27

28

1

2      Dated: March 10, 2020                            /s/ T. Kaitlin Crowder
3                                                       David L. Witcoff (admitted *pro hac vice*)
                                                        Illinois State Bar No. 6183629
4                                                       dlwitcoff@jonesday.com
                                                        Thomas W. Ritchie
5                                                       Illinois State Bar No. 6301954
                                                        twritchie@jonesday.com
6                                                       Jones Day
                                                        77 West Wacker Dr.
7                                                       Chicago, IL 60601
                                                        T: (312) 782-3939
8                                                       F: (312) 782-8585

9                                                       Michael C. Hendershot
                                                        Bar No. 211830
10                                                      mhendershot@jonesday.com
                                                        Jones Day
11                                                      1755 Embarcadero Road
                                                        Palo Alto, CA 94303
12                                                      T: (650) 739-3940
                                                        F: (650) 739-3900
13
                                                        Yury Kalish (admitted *pro hac vice*)
14                                                      D.C. Bar No. 1020172
                                                        ykalish@jonesday.com
15                                                      Jones Day
                                                        51 Louisiana Ave., N.W.
16                                                      Washington, D.C. 20001
                                                        T: (202) 879-3939
17                                                      F: (202) 626-1700

18                                                      Jeffrey M. White (admitted *pro hac vice*)
                                                        Texas State Bar No. 24064380
19                                                      jwhite@jonesday.com
                                                        Jones Day
20                                                      2727 North Harwood Street, Suite 500
                                                        Dallas, TX 75201
21                                                      T: (214) 969-3723
                                                        F: (214) 969-969-5100
22
                                                        T. Kaitlin Crowder (admitted *pro hac vice*)
23                                                      Ohio State Bar No. 0095796
                                                        kcrowder@jonesday.com
24                                                      Jones Day
                                                        901 Lakeside Ave E.
25                                                      Cleveland, OH 44114
                                                        T: (216) 586-7347
26                                                      F: (216) 579-0212

27                                                      Attorneys for Defendant
                                                        NXP USA, INC.
28

1

**CERTIFICATE OF SERVICE**

2

I, T. Kaitlin Crowder, declare:

3

I am a citizen of the United States and employed in Cuyahoga County, Ohio.  I am

4

over the age of eighteen years and not a party to the within-entitled action.  My business

5

address is 901 Lakeside Ave. E., Cleveland, OH 44114.  On March 10, 2020, I served a

6

copy of the following documents via CM/ECF on all counsel of record:

7

- **DEFENDANT NXP USA, INC.'S MOTION TO STAY PENDING**

8

  ***INTER PARTES* REVIEW AT THE U.S. PATENT & TRADEMARK OFFICE**

9

10

Executed on March 10, 2020 at Jones Day.

11

12

*/s/ T. Kaitlin Crowder*
T. Kaitlin Crowder

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NXP'S MOTION TO STAY
PENDING *INTER PARTES* REVIEW
Case No. 4:19-cv-03161-YGR