UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>NXP USA, INC.,<br><br>        Defendant. | Case No. 19-cv-03161-YGR (AGT)<br><br>**ORDER DENYING IMPINJ'S MOTIONS TO COMPEL**<br><br>Re: Dkt. Nos. 176, 198 |

Impinj brings this patent infringement suit against NXP USA, asserting direct infringement of four Impinj patents relating to integrated circuits ("ICs"). Before the undersigned are two motions to compel, both filed by Impinj after the close of fact discovery, seeking documents and 30(b)(6) testimony from NXP USA relating primarily to an unpled theory of induced infringement. Dkts. 176, 198. After the motions to compel were taken under submission, Impinj sought leave from Judge Gonzalez Rogers to amend its complaint and infringement contentions to add claims of induced infringement, which, if granted, would have undisputedly rendered much of the discovery at issue relevant and discoverable. But Judge Gonzalez Rogers denied Impinj's motion for leave to assert inducement, finding that "Impinj has not shown good cause to amend at this late stage in the litigation, and in any event, amendment to the complaint would be futile." Dkt. 262 at 1. That order effectively precludes the discovery Impinj seeks through the pending motions to compel. Both motions are denied.

**A.  Background**

U.S.-based company NXP USA is the sole defendant in this case. NXP USA does not manufacture the accused ICs—its foreign affiliates do, overseas—but it is responsible for sales in the United States. Sales outside the United States are handled by NXP USA's foreign affiliates

1   who are not, and have never been, parties to this action.

2   This lawsuit, filed in June 2019, is one of three pending patent infringement cases between
3   Impinj and NXP USA. As noted, the only claims asserted in this case concern direct infringement
4   by NXP USA. Direct infringement is governed by 35 U.S.C. § 271(a), which provides that
5   "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the
6   United States or imports into the United States any patented invention during the term of the
7   patent therefor, infringes the patent." 35 U.S.C. § 271(a). Section 271(a)'s reach is limited to
8   activity within the United States, as "no infringement occurs when a patented product is made and
9   sold in another country." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007); *see also*
10  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir.
11  2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit
12  infringement abroad."). "Thus, while U.S. patent law allows for 'damages adequate to
13  compensate for the infringement,' there is no compensation for a defendant's foreign exploitation
14  of a patented invention, as such activity is not infringement at all." *Kajeet, Inc. v. Qustodio, LLC*,
15  2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019) (quoting *Power Integrations*, 711 F.3d at
16  1371 (citing 35 U.S.C. § 284)). "A patentee's remedy against such foreign activity lies, if
17  anywhere, in foreign law." *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d
18  1105, 1110 (N.D. Cal. 2015) (citing *Microsoft*, 550 U.S. at 456). With that brief context, the
19  Court now turns to Impinj's motions to compel.

20  **B.   Motion to Compel Documents**

21  In its first motion to compel, Impinj seeks documents from NXP USA concerning (1)
22  foreign sales of the accused ICs, (2) the role of NXP USA's foreign affiliates in the production,
23  distribution, and sale of the accused ICs, and (3) any agreements between NXP USA and its
24  customers regarding this litigation. Dkt. 176. Impinj, as the party moving to compel this
25  discovery, has the initial burden of establishing that the information sought "is relevant to any
26  party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see*
27  *Williams v. Condensed Curriculum Int'l*, No. 20-cv-05292-YGR (RMI), 2021 WL 5069946, at *2
28  (N.D. Cal. Nov. 2, 2021). Impinj has not met that burden for any of the three categories of

documents it seeks.

### 1. Foreign Sales of the Accused ICs

It is undisputed that NXP USA produced (more than a year ago) detailed sales information for all accused ICs shipped to the United States during the damages period. But Impinj now seeks information concerning *foreign* sales of the accused ICs—i.e., sales made by NXP USA's third-party affiliates outside the United States. Impinj's leading argument for compelling production of the foreign sales information is that it is directly relevant to issues of induced infringement. That argument, however, is foreclosed by Judge Gonzalez Rogers's recent order denying Impinj's request for leave to amend to assert induced infringement, *see* Dkt. 262. Impinj's fallback arguments, that the requested foreign sales information is "potentially relevant" to the reasonable royalty determination and to commercial success, are also unpersuasive.

First, "[t]he royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Kajeet*, 2019 WL 8060078, at *13 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)); *see also Power Integrations*, 711 F.3d at 1371 (recognizing that U.S. patent laws "do not thereby provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all"). Consequently, "information regarding [a] defendant's foreign sales is not relevant to the hypothetical negotiation of the reasonable royalty amount because [the] defendant would not be liable for foreign sales that do not violate U.S. patent laws." *Kajeet*, 2019 WL 8060078, at *13 (collecting cases).

Second, to the extent foreign sales could theoretically relate to commercial success—one of several "secondary considerations" that a patentee may introduce to respond to one form of invalidity (obviousness)—NXP USA has sufficiently demonstrated that the burden of production outweighs any marginal relevance. *See* Dkt. 186-1 (Hendershot Decl.) ¶¶ 2–4. Indeed, Impinj offers no persuasive explanation as to why it needs the granular worldwide data it seeks to prove commercial success, especially when it already has detailed data on its own sales and NXP USA's sales, as well as information about the size of the relevant global market and the overall size of NXP's business in the aggregate. Impinj's request to compel foreign sales information is denied.

### 2. Role of NXP USA's Foreign Affiliates in the Supply Chain

Impinj next seeks documents relating to the role of NXP USA's foreign affiliates in making, distributing, and selling the accused ICs.[1]  Impinj claims this information is relevant to "potential direct and indirect infringement by [NXP USA's] *affiliates*" and openly admits that "it is seeking this discovery to *consider seeking* [] to add NXP's affiliates based upon direct and indirect infringement[]."  Dkt. 187-1 at 3 (emphasis added).  NXP USA's foreign affiliates are not, and have never been, parties to this action, and "discovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled."  *Torio v. Wells Fargo Bank, N.A.*, No. 16-cv-00704-HRL, 2016 WL 2344243, at *5 (N.D. Cal. May 4, 2016); *see also Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-00410-EMC (LB), 2021 WL 4699170, at *2 (N.D. Cal. Oct. 8, 2021) (emphasizing that parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings") (citation omitted).  Impinj's request to compel these documents is denied.

### 3. NXP USA's Agreements with Customers Regarding this Litigation

Impinj also seeks production of "any agreements between NXP and customers regarding this litigation (e.g., indemnity agreements)," again claiming relevance only as to induced infringement.  Dkt. 176 at 5; *see* Dkt. 196 at 3–4.  Impinj's request to compel these agreements is denied.

## C. Motion to Compel Additional 30(b)(6) Testimony

Impinj's second and overlapping motion to compel, filed *months* after the close of fact discovery, seeks additional 30(b)(6) testimony regarding foreign sales of the accused ICs and the activities of NXP USA's foreign affiliates.  Dkt. 198.  In addition to being untimely under the Civil Local Rule 37-3 ("no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off"), Impinj's motion to compel further testimony is largely a rehash of its

---

[1] During the discovery hearing on this dispute, NXP USA's counsel confirmed that in June 2021, in response to Impinj's interrogatory seeking information regarding NXP's corporate structure and the supply chain of the accused ICs, NXP USA provided information "specifically detailing a number of NXP entities that are involved in the manufacture, shipment, testing, post processing of the[] accused products."  Dkt. 215-3 at 15.  Tellingly, Impinj never claimed that the information NXP USA provided in response to that interrogatory was incomplete or otherwise inadequate.

motion to compel documents, and is denied for the same reasons.  In short, and as explained above, information regarding foreign sales by one foreign third party to another foreign third party of an accused product manufactured and shipped outside the United States is simply not relevant to *direct infringement by NXP USA*—the only claim, and the only defendant, in this case.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) (emphasizing that "the only activities that are relevant to direct infringement are those activities that take place within the borders of the United States") (citation omitted).

\* \* \*

For the reasons set forth above, Impinj's motions to compel are denied in their entirety.

**IT IS SO ORDERED.**

Dated: November 1, 2022

ALEX G. TSE
United States Magistrate Judge