Ramsey M. Al-Salam, Bar No. 109506
Christina J. McCullough, Bar No. 245944
Antoine M. McNamara, Bar No. 261980
R. Tyler Kendrick, admitted *pro hac vice*
Jessica J. Delacenserie, admitted *pro hac vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: 206.359.8000 / Fax: 206.359.9000
RAlsalam@perkinscoie.com
CMcCullough@perkinscoie.com
AMcNamara@perkinscoie.com
RKendrick@perkinscoie.com
JDelacenserie@perkinscoie.com

Daniel T. Shvodian, Bar No. 184576
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650.838.4300 / Fax: 650.737.5461
DShvodian@perkinscoie.com

Daniel T. Keese, Bar No. 280683
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Tel: 503-727-2000 / Fax: 503-727-2222
DKeese@perkinscoie.com

Attorneys for Plaintiff Impinj, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>NXP USA, INC.,<br><br>                    Defendant. | Case No. 4:19-cv-03161-YGR-AGT<br><br>**PLAINTIFF IMPINJ, INC.'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: Tuesday, January 31, 2023<br>Time: 2:00 p.m.<br>Location: Courtroom 1<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>***UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL*** |

1

**<u>TABLE OF CONTENTS</u>**

2

I.      INTRODUCTION ................................................................................................. 1

3

II.     NXP IS NOT ENTITLED TO SUMMARY JUDGMENT OF
        NONINFRINGEMENT ON ANY OF THE ASSERTED PATENTS .............................. 1

4

5

        A.      There Are Genuine Issues of Fact Relating to Infringement of the '266
                Patent................................................................................................................. 1

6

                1.      There is Substantial Evidence that the Accused ICs Perform the
                        Patented Functionality.......................................................................... 1

7

8

                2.      There Is Substantial Evidence that a Processor Block Is Configured
                        to Perform the Functionality ................................................................ 3

9

                3.      Impinj is not Contending the Entire IC is the Processor Block .................. 3

10

        B.      There Are Genuine Issues of Fact Relating to Infringement of the '631
                Patent................................................................................................................. 4

11

12

                1.      There are Disputed Issues of Material Fact as to Whether the
                        Contact Islands of the Accused Products are Electrically Coupled
                        Under the Doctrine of Equivalents......................................................... 4

13

14

                2.      There is Substantial Evidence that the Contact Islands of the
                        Accused ICs Are Electrically Coupled under the Doctrine of
                        Equivalents Functionality...................................................................... 4

15

16

        C.      There Are Genuine Issues of Fact as to Infringement of the '597 Patent ............. 5

17

                1.      The Claims of the '597 Patent are not Limited to Figure 8b .................... 5

18

                2.      The Accused Rectifiers Include One *Charge-Accumulating* Path.............. 7

19

                3.      Dr. Durgin's Analysis of the Mandal Parallel Path Full-Wave
                        Rectifier Does Not Preclude Infringement.................................................. 9

20

21

        D.      NXP Is Not Entitled to Summary Judgment Based on a New Claim
                Construction Argument that Conflicts with the Teachings of the '302
                Patent............................................................................................................... 11

22

III.    NXP FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT IN
        OPPOSITION TO IMPINJ'S MOTION FOR PARTIAL SUMMARY
        JUDGMENT ..................................................................................................... 12

23

24

        A.      Impinj is Entitled to Summary Judgment of Infringement of the '302 Patent....... 12

25

                1.      There is No Dispute that the Antenna Contacts of the Accused
                        Products are Separated by a Channel Under the Ordinary Meaning
                        of Separated By ................................................................................... 12

26

27

                2.      NXP's "Channel" Noninfringement Position is Based on an
                        Argument the Court Already Rejected as a Matter of Law ...................... 13

28

3.     The Last Limitation of Claim 1 is Not Entitled to Patentable Weight and Cannot Create a Disputed Issue of Fact ................................................ 13

B.     Impinj is Entitled to Summary Judgment that NXP's Purported Invalidity Grounds Fail to Invalidate the '302 Patent ........................................................... 14

IV.     CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*AquaTex Industries, Inc. v. Techniche Solutions*,
    479 F.3d 1320 (Fed. Cir. 2007) ........................................................................................ 2

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950) ........................................................................................................ 4

*Kyocera Senco Industrial v. ITC*,
    22 F. 4th 1369 (Fed. Cir. 2021) ...................................................................................... 2

*Lockheed Martin Corp. v. Space Systems/Loral Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003) .................................................................................... 14

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ................................................................. 12

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993) .................................................................................... 14

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011) .................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

NXP seeks summary judgment of noninfringement on each of the asserted patents, but its positions on each are based on improper claim constructions and/or ignore genuine disputes on material facts.  The only patent for which summary judgment should be granted is the '302 patent, and the summary judgment should be granted to Impinj, not NXP.

## II.    NXP IS NOT ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT ON ANY OF THE ASSERTED PATENTS

### A.    There Are Genuine Issues of Fact Relating to Infringement of the '266 Patent

NXP argues that it is entitled to summary judgment of noninfringement for the '266 Patent because of an alleged failure of proof relating to the "processor block" limitation, but NXP's argument ignores Dr. Durgin's reliance on NXP's circuit schematics, NXP's analog and digital specifications, and on teardown analyses of NXP's UCODE 8 chip.  The evidence cited by Dr. Durgin demonstrates infringement or, at the least, creates material issues of disputed fact on infringement.

### 1.    There is Substantial Evidence that the Accused ICs Perform the Patented Functionality

NXP's motion alleges that Impinj has not created a material issue of fact as to whether the accused IC's contain the recited "processor block."  Element 6(b) recites "a processor block configured to: in the tuning phase: extract a first power at least equal to the SPTT from an RF wave;" and elements 6(b)(i) to 6(b)(v) recite other functions that the processor block is *configured to*, e.g. is made or designed to implement, in a protocol phase.  ECF 122-3 at 21:50-22:3; Ex. 5, ECF 269-12 at ¶¶270-271.  For these elements, and the other elements in the asserted claim, Dr. Durgin analyzes the functionality of the UCODE 8 and UCODE 9 products and includes citations to specific portions of NXP documents (datasheets, specifications and schematics) and/or to teardowns schematics for both products.  *See* Ex. 5, ECF 269-12 at ¶¶272-320 (including FN 24-51).  NXP ignores this evidence.

For example, the ███████████████████
████████████████████████████████████

1　███████████████████████████████████████████████████

2　█████████████████████████████████. In footnotes 37 and 38, Dr. Durgin

3　provides citations to relevant specification portions and teardown circuit schematics ████████

4　████████████████████████████. IMPAdditionalFact3; IMPAdditionalFact4; Ex. 5,

5　███████████████████████████████████████████████████

6　███████████████████████████████████████████████████

7　██████████████████████████████████████████. Similarly

8　throughout his analysis of elements 6(b)(i) to 6(b)(v), he cites to these and other documents,

9　identifying evidence supporting the contention that the "processor block [is] configured to:" (1)

10　"cause the tuning circuit to tune the variable impedance to increase power extraction from the RF

11　wave;" (2) "and operate at a first clock frequency less than the MFOP while causing the tuning

12　circuit to tune the variable impedance, wherein the IC is unable to communicate with an RFID

13　reader according to the protocol while operating at the first clock frequency;" (3) "… extract a

14　second power at least equal to the SPOI from the RF wave;" (4) "operate at a second clock

15　frequency greater than or equal to the MFOP;" and (5) "communicate with an RFID reader

16　according to the protocol while operating at the second clock frequency." Ex. 5, ECF 269-12 at

17　¶¶296-320, FN 39-FN 51.

18　　　　Further, NXP's motion at least implicitly suggests that expert testimony is required to

19　establish infringement. The Federal Circuit has held, however, that literal infringement can be

20　established without expert testimony on every claim limitation, at least in some cases. *See*, *e.g.*,

21　*Kyocera Senco Industrial v. ITC*, 22 F. 4th 1369, 1377 (Fed. Cir. 2021); *AquaTex Industries, Inc.*

22　*v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (expert testimony required to show

23　infringement under the doctrine of equivalents, but not always for literal infringement). Thus, while

24　Dr. Durgin's analysis and report is sufficient to create a genuine issue of fact, Impinj should also

25　be permitted introduce additional evidence to establish infringement, including testimony from

26　other witnesses regarding teardowns and datasheets of UCODE chips that are identified in Dr.

27　Durgin's Report. *See* Ex. 5, ECF 269-12 at ¶¶290-295, FN37-FN38; *see id.* at ¶¶296-320, FN39-

28　FN51.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    There Is Substantial Evidence that a Processor Block Is Configured to Perform the Functionality

NXP's motion also suggests that even if their ICs perform the functionality, Impinj has not identified a "processor block" configured to do so. But this is based on too narrow a construction of "processor block." The Court construed "processor block" as having its plain and ordinary meaning. ECF 130; IMPAdditionalFact1. The Court specifically rejected NXP's argument that "processor block" should have a narrower meaning than described in the '266 patent specification (*id.*), which provides the processor block "may be implemented in any way known in the art," including "one or more of a processor, memory, decoder, encoder, and so on." IMPAdditionalFact2. In other words, the processor block is not required to be a specific circuit or a single component and can include separate sub-blocks for performing different functions such as having a separate memory, processor, decoder etc. *Id.*; ECF 122-3 at 6:60-7:3.

Dr. Durgin properly relied on this construction in identifying the structures that comprise the claimed processor block. NXP's argument appears to be at least partially grounded in an argument that the identified portions of NXP's products do not constitute a unified block, but that ignores that the plain and ordinary meaning of the term, consistent with the disclosure of the '266 Patent, encompasses implementation in any way that was known in the art. NXP cannot plausibly argue that its own implementation does not fall within this broad description.

### 3.    Impinj is not Contending the Entire IC is the Processor Block

NXP also incorrectly asserts that Impinj (and Dr. Durgin) argue that the entire accused UCODE ICs are the claimed processor block. Dr. Durgin's report states that the accused UCODE 8 and UCODE 9 products meet the limitations of the claims, and points to portions of the UCODE 8 and UCODE 9 ICs, but that is different than stating the entire IC is a processor block. Dr. Durgin makes no such assertion, and his analysis does not support that claim. *See* Ex. 5, ECF 269-12 at ¶¶290-295. For clarity, however, Impinj does not contend that the entire UCODE ICs are a "processor block". For all these reasons, NXP's motion for summary judgment regarding the '266 patent should be denied.

1

**B.    There Are Genuine Issues of Fact Relating to Infringement of the '631 Patent**

2

    **1.    There are Disputed Issues of Material Fact as to Whether the Contact Islands of the Accused Products are Electrically Coupled Under the Doctrine of Equivalents**

3

4

      NXP's motion for summary judgment of noninfringement of the '631 Patent should be

5

denied because there is a disputed issue of fact as to whether the contact pads of the Accused ICs

6

are electrically coupled to the circuitry of the IC under the Doctrine of Equivalents,

7

    **2.    There is Substantial Evidence that the Contact Islands of the Accused ICs Are Electrically Coupled under the Doctrine of Equivalents Functionality**

8

9

      The relevant structure of the Accused ICs vis-à-vis the '631 Patent is undisputed.  The

10

Accused ICs contain four contact pads, RF1, RF2, TP1 and TP2 that Impinj identifies as the claimed

11

contact islands.  Impinj and Dr. Thompson assert that the Accused ICs meet limitation 13(e), which

12

is the subject of NXP's Motion, under the Doctrine of Equivalents.  More specifically, Dr.

13

Thompson discusses in his expert how the RF1 and RF2 pads are electrically coupled to at least

14

one of a rectifier, modulator, or demodulator.  Dr. Thompson also explains how the four contact

15

islands are equivalent to the two contact islands disclosed as a preferred embodiment of the '631

16

Patent.  To support this position, Dr. Thompson discusses the single slit antenna assembly touted

17

in datasheets for the Accused ICs, where the RF1 and TP2 pads act as the equivalent of one large

18

pad electrically connected to internal circuity, while the RF2 and TP1 pads act as the equivalent of

19

the other large pad.  Ex. 1, ECF No. 243-01 ¶¶ 190-217.  In his rebuttal report, Dr. Subramanian

20

disputes Dr. Thompson's Doctrine of Equivalents analysis, but that at most creates a genuine issue

21

of disputed fact that the jury should resolve.  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,

22

339 U.S. 605, 609-10 (1950) ("A finding of equivalence is a determination of fact.").

23

      NXP also argues that Dr. Thompson's analysis requires "modifications" to the accused

24

products to establish infringement under the Doctrine of Equivalents.  ECF No. 273 at 9:3-22.  But

25

this is not true. Dr. Thompson's opinions are based on the structure of the Accused ICs.  It is

26

undisputed that the ICs are sold for incorporation into RFID tags or inlays.  *See, e.g.*, Ex. 35, ECF

27

No. 274-35 at 2 ("UCODE 8/8m offers best-in-class performance and features for use in the most

28

demanding RFID tagging applications.").  Typically, to assemble an RFID tag, an adhesive, which

1   can be conductive, is applied to the IC and the contact pads of the Accused ICs are connected to an

2   antenna on the inlay.  Dr. Thompson discusses this assembly process to support his opinion that the

3   four contact islands, the function of which is to attach to antennas, meet the leading test for

4   equivalence under that Doctrine of Equivalents—that they perform substantially the same function,

5   in substantially the same way, to reach substantially the same result, as the two contact islands

6   discussed in preferred embodiments of the '631 Patent.  Ex. 1, ECF No. 243-01 ¶¶ 190-217.  This

7   functionality analysis at least creates a genuine issue of fact under the Doctrine of Equivalents.

8   NXP's motion fails to establish there is no genuine issue of fact under the Doctrine of Equivalents.

9         **C.     There Are Genuine Issues of Fact as to Infringement of the '597 Patent**

10         NXP seeks summary judgment for the '597 Patent based on a narrow construction of the

11   term "no charge accumulating path" and on the related position that a synchronous element cannot

12   have more than two transistors.  NXP did not propose or seek to have the Court adopt either of

13   these limitations in claim construction.  For example, NXP's expert explicitly relies on alleged

14   disclaimer to assert that the claim language requiring that "there is no *charge-accumulating path*

15   between the first beginning and the first ending [of the first synchronous element of a stage of a

16   power rectifier for an RFID circuit] other than the first path" requires that there are no other paths

17   at all.  Specifically, NXP argues that any amount of charge conducted on paths other than the

18   primary path for pumping charge from a beginning to an ending node is also a charge-accumulating

19   path, even if the path is a leakage path which a POSITA would know always exists, or if the path

20   is used for biasing (setting the voltage at a node for another part of the circuit).  In other words,

21   NXP and its expert Dr. van der Weide attempt to limit the claims to only the precise structure

22   depicted in Figure 8b of the '597 Patent, which has only a single path (although even there leakage

23   can flow in the reverse direction), though NXP never proposed this construction during claim

24   construction.

25         **1.     The Claims of the '597 Patent are not Limited to Figure 8b**

26         Specifically, during claim construction, NXP agreed to a plain and ordinary meaning

27   construction for the term "charge-accumulating path." ECF 122 (Supplemental Joint Claim

28   Construction Statement) at 1; IMPAdditionalFact 10.  NXP made no disclaimer or prosecution

1    history estoppel claim construction arguments regarding the '597 Patent.  IMPAdditionalFact 11.

2    NXP also did not propose constructions to limit the claims such that a synchronous element must

3    contain no more than two transistors or have a structure with no leakage or parasitic paths, and that

4    is not how a POSITA would understand the claim language.  IMPAdditionalFact 12; Ex. 5, ECF

5    269-12 at ¶¶209-210.  Nevertheless, NXP now argues that ████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████.

8          The experts disagree on these points.  ████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████

20         Dr. van der Weide also at least implicitly opines and NXP argues that each synchronous

21   element can only contain two transistors.  That construction is consistent with figure 8b, but figure

22   8b merely provides *an embodiment* of the asserted claims that has only two series transistors in

23   each synchronous element of a rectifier stage.  Claims 1 and 15 recite a "first synchronous element

24   *including*" a first transistor and a second transistor connected in a series configuration.  *See* ECF

25   122-2 at 11:6-22, 13:6-21 (emphasis added).  Nowhere in the claim language is there a requirement

26   that the synchronous element comprises *only* the two transistors.  The language used is open

27   ("including") and thus permits a synchronous element to include more than the two transistors so

28   long as any additional paths formed by additional devices would not be understood as forming

1    another "charge-accumulating path" prohibited by the claim language, which recites:  "there is no

2    charge-accumulating path between the first beginning and the first ending other than the first path"

3    formed by the first and second transistors.  *See id.*  In other words, the claim language should not

4    be understood to preclude other components for biasing, stabilization, etc., that provide other non-

5    charge-accumulating paths.

6         NXP begins by acknowledging that each of the synchronous elements in the claims and

7    embodiment of the '597 Patent "*includes* two transistors."  NXP Motion, ECF 273 at 13:13-14

8    (emphasis added).  But NXP then, incorrectly, proceeds to argue that the claims are limited to an

9    element that includes two transistors and only two transistors based on alleged disclaimer.  NXP

10   does ███████████████████████████████████████████████████████████████████

11   ██████████████████.

12        To support its disclaimer argument, NXP cites to Dr. Durgin's testimony where he read

13   from a previous declaration in connection with an *inter partes* review noting that in figure 8b, there

14   are no other components that would create additional current paths.  NXP Motion (ECF 269-4) at

15   14:16-19.  But Dr. Durgin was describing the operation of embodiments disclosed in the '597

16   Patent.  He never stated, for example, that the claim language requires each synchronous element

17   have two and only two transistors as NXP now proposes.  Ex. 26, ECF 274-26 at ¶¶66-70.

18   Specifically, in the paragraph of his declaration that NXP cites (paragraph 68), Dr. Durgin explicitly

19   notes that his discussion is about "the particular embodiment" with two and only two transistors.

20   *Id.* at ¶68.  Moreover, his discussion in paragraphs 66 and 67 of that same declaration explicitly

21   concerned "[a]n illustration of the single-path rectifier, as described in the '597 patent," but that is

22   far from stating that the claims are limited to a particular illustration or embodiment, such as in

23   figure 8b.

24              **2.    The Accused Rectifiers Include One *Charge-Accumulating* Path**

25   ████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████



1
2
3
4

5    The parties' experts dispute whether the plain and ordinary meaning of the claim language

6    requiring a single "charge-accumulating path" through a synchronous element is met by the

7    UCODE 8 and UCODE 9 structures.  At the least this is a disputed issue of fact regarding

8    whether

9    , and NXP should not be entitled to summary judgment based on its reliance

10   on previously undisclosed disclaimer-based constructions proffered through its expert in his

11   rebuttal report.

### 3. Dr. Durgin's Analysis of the Mandal Parallel Path Full-Wave Rectifier Does Not Preclude Infringement

13   As another disclaimer argument, NXP argues that Dr. Durgin's infringement analysis is

14   contradicted by what he said in his rebuttal report on validity and in the IPR proceedings.  Not so.

15   In his rebuttal report (and in the IPR proceedings) Dr. Durgin analyzed the four transistor structure

16   disclosed by the Mandal references relied on by NXP.  Durgin Rebuttal Report, Ex. 6 (ECF 269-

17   14) at ¶¶47-55, 74-87, 115.  The four transistor structure is pictured below in Fig. 3-3 of the Mandal

18   Thesis and Fig. 24 of the Mandal '947 patent, below:



FIG. 24

26   *Id.* at ¶¶47, 53.  As Dr. Durgin explains, this structure is a full-wave four-transistor cross-coupled

27   structure with parallel charge-accumulating paths that operate on alternate parts of an RF cycle

28   and that function differently than the half-wave synchronous structure recited by the claims of the

1  '597 patent, and it would not be obvious to modify the Mandal structure to become a half-wave

2  rectifier with a single path, as Dr. Durgin explains.  *See id.* at ¶¶47-49, 53-55, 63-73, 95-110.  As

3  Dr. Durgin also explains, the four-transistor cross-coupled design from the Mandal references do

4  not have a single charge accumulating path, because, for example, charge can leak and rejoin the

5  parallel charge accumulating path on the subsequent opposite phase of the RF cycle.  *See id.* at

6  ¶78 (diagram below).

7       Importantly, the design in the Mandal references above ███████████████████

8  ████████████████████████████████████████████████████, the Mandal

9  cross-coupled design has two parallel paths operating on different phases of the RF signal as can

10  be seen in the figure from paragraph 78 of Dr. Durgin's Rebuttal Report:



20  Ex. 6, ECF 269-14 at ¶78.  In this structure there are multiple parallel charge accumulating paths.



26  NXP's argument here amounts to belated claim-construction arguments based on alleged

27  prosecution history estoppel and/or disclaimer.  It never proposed these arguments during claim

construction, and it should not be permitted to belatedly raise the issues now to move for summary judgment.[1]  Simply put, the Patent Local Rules in this District provide an orderly and logical claim construction process, and NXP should not be able to now raise additional claim construction arguments, especially based on disclaimer, it did not before.  Further, to the extent Impinj disclaimed anything, it disclaimed that the claims over the Mandal reference. ████████████ ████████████████████████████  NXP's motion should be denied.

**D.    NXP Is Not Entitled to Summary Judgment Based on a New Claim Construction Argument that Conflicts with the Teachings of the '302 Patent**

As stated in Impinj's partial motion for summary judgment, there is no dispute of material fact that the antenna contacts of the Accused ICs are separated by a channel under the plain and ordinary meaning of the term "separated by," and as supported by the '302 Patent Disclosure.  ECF No. 235 at 9:18-11:24. NXP does not dispute that the Accused ICs contain first and second antenna contacts as recited in the claims, or that the patent describes the antenna contacts as consisting of just the top conductive layer or as also including the underlying repassivation layer.  *See* IMPFact 5.  But NXP argues that the antenna contacts of the Accused Products are not "separated by" a channel because the antenna contacts share the repassivation layer (i.e., the channel does not extend into the repassivation layer).  ECF No. 269-4 at 11:12-12:20.  NXP's argument, however, is based on Dr. Subramanian's construction of the term "separated" that conflicts with the teachings of the '302 Patent.  *See* ECF No. 233 at 14:27-17:3.

Claim 1 recites that "the first and second antenna contacts are separated by a channel…."  Claim 1 does not recite that the channel is a certain depth, or that the first and second antenna contacts are "entirely" separated by a channel, as NXP and Dr. Subramanian argue.  ECF No. 269-4 at 11:12-12:20.  The dispute about whether the Accused ICs contain antenna contacts separated by a channel, therefore, depends on the ordinary meaning of the term "separated by" in light of the disclosure of the '302 patent.

"The ordinary meaning of a claim term is given after reading the entire patent and from the perspective of one of ordinary skill in the art at the time of the invention."  *MediaTek Inc. v.*

---

[1] Impinj incorporates by reference the arguments and evidence it presents in its motion to exclude these portions of Dr. van der Weide's testimony.  *See* ECF No. 231, 292.

1    *Freescale Semiconductor, Inc.*, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014). Based on the

2    disclosure in the '302 patent, Dr. Thompson opined that the antenna contacts of the Accused ICs

3    are separated by a channel that has a depth substantially equal to the height of the contact layer of

4    the antenna contacts. The '302 Patent is clear that the channel separating the antenna contacts can

5    merely have a depth of the conductive layer of the antenna contacts—there is no requirement that

6    it reach into the repassivation layer to separate the antenna contacts. For example, the specification

7    teaches that the channel of the IC that separates the antenna contacts can have a depth substantially

8    equal to the height of the contact pads, or it may extend into the repassivation layer of the IC. *See*

9    Ex. A, ECF No. 235-3 at 13:51-14:18. Regardless of its depth, the '302 patent teaches that each

10   channel separates the same thing, and that each channel facilitates fluid flow during the inlay

11   assembly process. *Id.* at 16:21-40, 17:3-16, 17:57-61. The '302 patent, therefore, teaches that a

12   channel separating the antenna contacts does not need to have a depth extending to the bottom of

13   the repassivation layer. Under the plain and ordinary meaning of the term "separated by," the

14   Accused Products contain first and second antenna contacts separated by a channel.

15   **III.     NXP FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT IN
16            OPPOSITION TO IMPINJ'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

17        **A.     Impinj is Entitled to Summary Judgment of Infringement of the '302 Patent**

18             Impinj's motion for partial summary judgment established why each of NXP's non-

19   infringement arguments can be resolved in Impinj's favor as a matter of law. Indeed, NXP has

20   never disputed that the Accused ICs contain an "IC substrate" and the first and second antenna

21   contacts as recited in the Asserted Claims. As discussed in Impinj's Motion, NXP's arguments on

22   the remaining limitations can be resolved as a matter of law.

23        **1.     There is No Dispute that the Antenna Contacts of the Accused
                  Products are Separated by a Channel Under the Ordinary Meaning of
24                Separated By**

25             NXP contends that the antenna contacts of the Accused ICs are not "separated by" a channel

26   because the channel does not extend into the repassivation layer of the antenna contacts. ECF No.

27   269-4 at 21:16-22. As discussed above and in Impinj's Motion (*see* ECF No. 235 at 9:18-11:24),

28   and Impinj's motion to strike certain opinions of Dr. Subramanian (*see* ECF No. 233 at 14:27-

17:3), NXP's noninfringement argument is based on a construction of the term "separated by" that conflicts with its plain and ordinary meaning to a POSITA in view of the specification of the '302 Patent. For the reasons stated in these documents, NXP's argument can be rejected as a matter of law.

### 2. NXP's "Channel" Noninfringement Position is Based on an Argument the Court Already Rejected as a Matter of Law

NXP contends that Impinj has not provided any analysis to support its allegation that the Accused ICs contain a channel that spans a majority of the width of the IC substrate. ECF No. 269-4 at 21:24-22:8. NXP is incorrect.[2] In his expert report, Dr. Thompson demonstrated that each Accused IC contains a single channel that spans the majority of the width of the IC substrate, citing to NXP documents showing the measurements of the channel. Ex. D, ECF No. 235-6 ¶¶ 285-91. NXP ignores Dr. Thompson's analysis. As discussed in Impinj's motion to strike certain opinions of Dr. Subramanian (*see* ECF No. 233 at 12:4-14:24), NXP's only argument that the channel does not include a channel spanning a majority of the width of the IC substrate is based on its claim construction argument that a channel must have continuous sidewalls. The Court rejected this argument as a matter of law when it rejected NXP's proposed claim construction. NXP cannot reraise this issue in an attempt to manufacture a genuine dispute of material fact.

### 3. The Last Limitation of Claim 1 is Not Entitled to Patentable Weight and Cannot Create a Disputed Issue of Fact

The final limitation of claim 1 of the '302 Patent recites a result of the claimed channel shape—it facilitates fluid flow. It should not be afforded patentable weight. NXP contends that this limitation should be afforded weight because it is in an apparatus claim and does not include the word "wherein" immediately next to the relevant clause. ECF No. 269-4 at 22:10-23:3. NXP cites no authority for this legal principle. Instead, it is well-settled that a statement of intended purpose of a claimed structure is not considered a substantive limitation in either a method or apparatus claim. *See Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172

---

[2] NXP does not dispute that its noninfringement position on the shape of the channel depends on the channel ending at the RF1 and RF2 pads, instead of spanning the full width of the IC as Dr. Thompson opines. IMPFact 24. NXP's noninfringement argument for dependent claim 3 also depends on this argument. ECF No. 233 at 17:22-18:3.

1    (Fed. Cir. 1993); *Lockheed Martin Corp. v. Space Systems/Loral Inc.*, 324 F.3d 1308, 1319 (Fed.

2    Cir. 2003).

3    NXP also contends that Impinj's argument conflicts with its validity arguments.  ECF No.

4    269-4 at 23:4-19.  But NXP critically omits that Impinj disputed that the prior art-at-issue contained

5    the channel shape recited in claim 1 of the '302 Patent.  ECF No. 274-41 at 23:5-26:15.  It follows

6    that those same references would not disclose a channel shaped to facilitate fluid flow.  Impinj's

7    validity arguments do not conflict with its position on the final limitation of claim 1.

8    Finally, NXP contends that it "hotly" disputes whether the channel of the Accused ICs is

9    shaped to facilitate fluid flow.  ECF No. 269-4 at 23:20-25.  NXP agrees that claim 1 does not

10    require all fluid to flow through the channel of the IC.  IMPFact 29.  And Dr. Subramanian

11    diagramed how fluid would still flow through the channel of the Accused ICs, even with their

12    "intersecting channel."  *See* ECF No. 235-4 ¶¶ 343-44, 350-51.  There is no genuine issue of

13    material fact that this limitation is infringed, even if it is entitled to patentable weight.

14    **B.    Impinj is Entitled to Summary Judgment that NXP's Purported Invalidity Grounds Fail to Invalidate the '302 Patent**

15    As a matter of law, neither of NXP's purported invalidity grounds invalidate the asserted

16    claims of the '302 Patent.  NXP's first purported invalidity ground relies on a combination of prior

17    art references that no fact finder would conclude can be combined.  NXP's opposition concerning

18    this ground is limited to the assertion that Dr. Subramanian provided "extensive" analysis of

19    motivation to combine.  NXP fails to address the fact that Dr. Subramanian's "analysis" is

20    contradicted by the plain text and teachings of the prior art, such that no reasonable juror could

21    conclude that the prior art provides sufficient reason or motivation to combine.  *See Unigene Labs.,*

22    *Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1362-63 (Fed. Cir. 2011).

23    NXP's second purported invalidity ground relies on Dr. Subramanian's misapplication of

24    the Court's construction of the term "IC substrate."  NXP argues that Dr. Subramanian's opinion

25    is consistent with the Court's construction of "IC substrate."  ECF No. 269-4 at 25:9-15.  NXP is

26    incorrect.[3]  As discussed in Impinj's opposition to NXP's motion to exclude Dr. Thompson's

27

28    _____

[3] NXP also argues that this validity position was not disputed during discovery.  ECF No. 269-4 at 25:15-17.  NXP is incorrect and ignores Impinj's incorporation of its preliminary patent

1    opinions on IC substrate, both parties agreed that the IC substrate is part of the IC.  *See generally*

2    ECF No. 276.  Dr. Subramanian ignores this agreement and opines that a strap, separate from the

3    IC, is the "IC substrate."  *Id.*  This contravention of the Court's construction should be resolved in

4    Impinj's favor as a matter of law.

5    **IV.    CONCLUSION**

6           For the reasons above, NXP's motions for summary judgment should be denied and

7    Impinj granted summary judgment on the '302 Patent.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   owner response in the '302 Patent, which discussed that Nishigawa does not disclose an IC
     substrate.

1    Dated: December 2, 2022.

2                                            By: /s/ Ramsey M. Al-Salam
                                                Ramsey M. Al-Salam, Bar No. 109506
3                                               Christina J. McCullough, Bar No. 245944
                                                Antoine M. McNamara, Bar No. 261980
4                                               R. Tyler Kendrick (admitted *pro hac vice*)
                                                Jessica J. Delacenserie (admitted *pro hac
5                                               vice*)
                                                PERKINS COIE LLP
6                                               1201 Third Avenue, 49th Floor
                                                Seattle, WA 98101
7                                               Tel: 206.359.8000
                                                Fax: 206.359.9000
8                                               RAlSalam@perkinscoie.com
                                                CMcCullough@perkinscoie.com
9                                               AMcNamara@perkinscoie.com
                                                RKendrick@perkinscoie.com
10                                              JDelacenserie@perkinscoie.com
11

12                                              Daniel T. Shvodian, Bar No. 184576
                                                PERKINS COIE LLP
13                                              3150 Porter Drive
                                                Palo Alto, CA 94304
14                                              Tel: 650.838.4300
                                                Fax: 650.737.5461
15                                              DShvodian@perkinscoie.com
16

17                                              Daniel T. Keese, Bar No. 280683
                                                PERKINS COIE LLP
18                                              1120 N.W. Couch Street, 10th Floor
                                                Portland, OR 97209-4128
19                                              Tel: 503.727.2000
                                                Fax: 503.727.2222
20                                              DKeese@perkinscoie.com

21                                              *Attorneys for Plaintiff Impinj, Inc.*

22

23

24

25

26

27

28

PLAINTIFF IMPINJ, INC.'S OPPOSITION TO NXP'S
CROSS MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:19-CV-03161-YGR-AGT

1

**CERTIFICATE OF SERVICE**

2      I certify under penalty of perjury that on December 2, 2022, I caused to be electronically

3  filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

4  send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

5  Notice List.

6

7      Dated: December 2, 2022

8                                                      /s/ *Ramsey M. Al-Salam*
                                                       Ramsey M. Al-Salam
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28