UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IMPINJ, INC.**, Plaintiff, v. **NXP USA, INC.**, Defendant. | Case No. 19-cv-3161-YGR<br><br>**PRETRIAL ORDER NO. 3, INCLUDING DENIAL OF MOTION IN LIMINE NO. 1**<br><br>Dkt. No. 350 |

I. **Pretrial Conference**

On Friday, June 30, 2023, the Court held a previously-scheduled trial readiness conference. For the reasons stated on the record and for good cause showing, the following additional orders are memorialized and/or issued:

1. With respect to the parties' Undisputed Facts, the parties shall have a separate document to distribute to the jury by Monday, July 3, 2023 at 9:00am which the Court will include in the juror trial binders. The Court will admit that document as Exhibit A for evidentiary purposes.
2. The stipulated motions in limine noted at Docket 349, II.D.2. are granted.
3. The requested dismissal at Docket 349, III.C. are granted.
4. Defendant's authorized corporate representative is substituted to be Ralf Kodritsch.
5. As counsel continue to prepare for trial, be advised that the Court hesitates to seal the courtroom. Thus, examinations regarding sealed information should be scheduled to end or begin at breaks or at the end of the trial day.
6. Defendant shall clarify by email the reference to "video" witnesses in the Witness List. The could does not take testimony via video.

**II.     Motion in Limine No. 1**

The Court has various motions pending regarding the parties' experts' analyses on damages. Here, defendant NXP USA, Inc.'s moves to preclude evidence, opinion, and argument that Impinj is entitled to lost profits based on NXP's alleged infringement of the '302 patent on the ground that Lauren Kindler failed to conduct a lost profits analysis of infringement of the '302 patent alone and independent of the '631 patent.[1] Dkt. No. 350. For the reasons set forth below, the Court **DENIES** this particular motion and exclusion on this ground.

As noted, NXP argues that Kindler not only failed to conduct a lost profits analysis of the '302 patent independent of the '631 patent, she was also very explicit in her deposition testimony that she did not consider a situation in which the '302 alone is valid and infringed, because she believed the '631 would be as well. Notably, NXP does not ask the Court to exclude any statement or opinion referenced in any of Kindler's expert reports by reference to a paragraph number or page. The core of the motion focuses on her deposition testimony.

Not surprisingly, Impinj disagrees with NXP's characterization of Kindler's deposition testimony. According to Impinj, core to the damages analysis is a causal connection between NXP's alleged infringement and the lost sales that resulted. That both the '302 and the '631 protect the same technological feature is not in itself relevant to whether Impinj may collect on infringement of the '302. Kindler is aware of and discusses differences between the '631 and the '302 and the benefits provided by those patents. She discussed them collectively due to the fact that they both deal with pads, but the infringement is distinct.[2] Recovering lost profits, according to Impinj, requires showing only an "unwilling[ness] to purchase" products that lack the patented

---

[1] At the time at which Impinj served Kindler's report, four patents, including the '631, remained in the suit. The Court granted summary judgment in favor of NXP with respect to infringement of the '631. The '631 is directed to the size of pads used to connect accused products to antennas. The '302 is directed to the shape of the pads and the way in which they form a channel of a particular shape.

[2] The specific advantages of the '302 identified by Kindler are 1) ensuring consistent expulsion of the glue and 2) minimization of the chance of the integrated circuit ("IC") shorting due to a mismatch between the antenna terminal and IC. Furthermore, Kindler discusses the large pads as a *demand-driving-feature*.

functionality.  *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2013 WL 5958178, at *3 (N.D. Cal. Nov. 7, 2013).[3]

Impinj offers three more arguments:  One, NXP is obfuscating the distinct benefits of the '302 as compared to the '631 by trying to assign some of the benefits of the '302 to the '631.  Two, NXP's lack of a parallel argument concerning the attribution of value to the '597 shows that NXP's reasoning is flawed.  Three, at no point does Kindler ever opine that it is impossible for Impinj to collect damages on the '302 alone; rather she indicates that the lost profits are recoverable for infringement of the patents, collectively or individually.

The Court agrees with Impinj.  Kindler's numerical analysis of damages is founded on assumptions made with respect to anticipated merits-based testimony by others.  To the extent a jury is not persuaded by Impinj's merits-based showing, the damages analysis is mooted.  Kindler is entitled to rely on others and is not required to be an expert on those topics.  Thus, it is appropriate for Kindler to conduct an analysis on the understanding that no viable design-around exists, including the notion that use of a non-Enduro pad is not a plausible acceptable alternative.[4]  Because Kindler assumed that no design-around exists, infringement of any one patent is enough to support her opinions.   If the jury accepts Impinj's theory, then the analysis has relevance; if not, it does not.

Her deposition testimony does not compel a different result.  First, NXP only cited portions of the testimony.  In context of both the deposition and her report, the motion does not persuade.  Both parties understand that recovery of lost profits requires the patentee to prove a causal relationship between infringement and lost profits.  *See Ferguson Beauregard/Logic*

---

[3] The passage cited by Impinj here pertains to the absence of accepting noninfringing substitutes.  The elements are: "(1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) [] manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit []."  *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978).

[4] Earlier in the deposition, Ms. Kindler plainly admitted that she does not know what "Enduro" and "non-Enduro refer to."  In short, Kindler's testimony shows in no uncertain terms that she does not understand to what "non-Enduro" is supposed to refer.  To the extent that she does, she understands that some non-Enduro pads could still be covered by the '302 and/or '631 patents.

3

*Controls, Div. of Dover Res., Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating damages award in light of failure to allocation of lost profits between infringed patent and noninfringed patent).  NXP can certainly cross-examine on the weaknesses of her opinion.  That is different than requiring exclusion.

The motion to seal at Docket No. 356 is granted.  The request is narrowly tailored, does not contain material critical to a dispositive ruling, and contains confidential information.

This terminates Docket Nos. 350 and 356.

**IT IS SO ORDERED.**

Dated: 6/30/2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**