UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>NXP USA, INC.,<br><br>    Defendant. | Case No.  19-cv-03161-YGR<br><br>**TRIAL ORDER NO. 1**<br>Re: Dkt. Nos. 239, 368, 372 |

## I. TRIAL ISSUES

### A. Juror Questionnaires

On July 5, 2023, trial began on the above referenced action. In advance of jury selection, the Court provided the parties with the results of the survey monkey questionnaires received from all prospective jurors.  By no later than August 4, 2023, all counsel shall file a certification that all questionnaires (electronic or hard copy) and all information derived therefrom, have been destroyed.  Counsel shall also certify that any person to whom they provided access to the questionnaires (client, consultant, non-lawyer, etc.) have also destroyed the questionnaires and all information derived therefrom.

To the extent that either party needs the information for appeal purposes, an administrative request to extend the certification deadline may be filed.

### B. Deposition Testimony of Franz Amtmann

On July 7, 2023, the Court clarified that it will allow testimony by Franz Amtmann regarding the extent of his personal knowledge of any teardown conducted by NXP of the products Impinj is alleging NXP copied.

## II. OUTSTANDING MOTIONS

### A. NXP Motion to Strike Thompson and Kindler

Pending before the Court is NXP's motion to strike certain opinions and testimony of Scott E. Thompson and Lauren Kindler and Impinj's related administrative motion to supplement the record thereon.

The Court has previously articulated the legal standard concerning experts which is not in dispute.

The two remaining patents at issue in this suit are directed to the shape of the channel between large pads that minimize turbulence when customers attach the ICs of the products to their antennas (the '302) and improved rectifier design for enhancing read/write performance (the '597). NXP previously moved to strike paragraphs 211-217 from the Initial Expert Report of Infringement of Dr. Scott E. Thompson; paragraphs 195-196, 253-256, 298-330, and 340-362 of the Rebuttal Expert Report of Dr. Scott E. Thompson Concerning Validity; and paragraphs 14, 15, 19(b), 46-113, 164, 173-175, 180, 182, 183, as well as Tables 3, 6, 13-15, 18, 20, 22, 23, and 24, and footnotes 172, 178, 246, 330, 368, 370, 396, 419, 432, 439, along with Exhibit 6 and the final sentence of Kindler's report.[1]

#### 1. Thompson

NXP's motion to strike the opinions of Dr. Thompson related solely to the '631 patent, which the Court has already found NXP does not infringe. As the validity of the patent is no longer at issue, the motion is **DENIED AS MOOT**.

#### 2. Kindler

The motion to strike the opinions and testimony of Dr. Kindler is largely duplicative of NXP's motion in limine, which the Court denied in its Pretrial Order No. 3.[2] To the extent that the Court has not considered the arguments made, it considers them below.

##### a. Quantification of Sales Made Outside the United States

---

[1] Kindler's qualifications to opine on damages in this matter are set forth in Pretrial Order No. 4. In addition, an overview of her opinions in provided in the Pretrial Order No. 3.

[2] The Court has already rejected NXP's third argument, that Kindler's reliance on Impinj technical fellow Ron Oliver is improper.

1   NXP seeks to exclude Kindler's opinions that attempt to quantify any sales made outside
2   the United States on the ground that the only theory that would allow recovery for Impinj is
3   indirect infringement, which is not being asserted. In this regard, NXP claims that Kindler
4   admitted in deposition testimony that she considered such extraterritorial sales for only a scenario
5   in which Impinj were successful in seeking leave to add indirect infringement allegations. Impinj
6   disagrees and claims that is has a viable theory for how sales made to one overseas client amount
7   to direct infringement. The parties provided additional information to the Court on July 7, 2023
8   regarding the damages calculation.

At this juncture, the request is denied and the Court will allow the testimony on the issue of whether substantial evidence exists to support the claim regarding lost profits.[3] Plaintiff shall ensure that the information is bifurcated so that the jury can resolve the factual dispute.

### b.    Failure to Disclose Lost Profits Theory

NXP sets forth several other grounds purporting to show that Kindler failed to disclose a lost profits theory, all of which are founded on the premise that Impinj's damages contentions were not sufficiently detailed. First, NXP argues that Impinj failed to disclose its lost profits theory generally. Second, NXP contends that the "finished goods inventory" basis on which Kindler relies was not sufficiently disclosed. Third, NXP argues that, in any event, Impinj failed to provide factual support for these theories and never provided NXP with the requests it needed to supply permissible contentions.

The Court disagrees. Impinj's theory overall was sufficiently disclosed because it stated in its damages contentions that it would seek to show that it could make sales of ICs and that it would support that with expert testimony. *See* Dkt. No. 243-18 at 1. The market share allocation approach, moreover, is the other side of the coin from the non-infringing alternatives analysis. *See Malibu Boats, LLC v. Skier's Choice, Inc.*, No. 3:18-CV-00015, 2021 WL 1572477, at *5 (E.D. Tenn. Apr. 21, 2021) (accepting the market share allocation approach as an "alternative[]" to analyzing the impact of non-infringing alternatives on lost profits).

---

[3] This includes the opinions and testimony in Kindler's Supplemental Report, as well as the extent to which those sales factor into the reasonable royalty analysis.

Impinj's finished goods theory was also sufficiently disclosed. The parties agreed that information disclosed in any of their co-pending cases in Washington or Texas could be used in this case and vice versa. *See* Dkt. No. 278-1, ¶ 2. The parties have generously used information produced between cases, and NXP does not contest this fact. Said differently, this theory was disclosed. That parties are required to amend their damages contentions in light of "material[]" changes to their theories does not change that the reasoning behind this is to deter gamesmanship. *Netfuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 4381768, at *4 (N.D. Cal. July 31, 2020). Impinj disclosed this theory, albeit late, in response to late-produced documents and witnesses from NXP. In addition, NXP's assertions that it "could have" conducted additional discovery into these issues fails to persuade the Court that Impinj harmed NXP by not amending its damages contentions.

The Court therefore **DENIES** NXP's request to strike Kindler's opinions regarding market share allocation or its finished goods theory.

### c.   Purportedly Irrelevant Material

NXP argues that Kindler opines on irrelevant material in her report, specifically with regard to other patents held by Impinj, not asserted in this case.

One court specifically excluded reference to technology as a viable non-infringing alternative where the patent had not issued yet, because characterizing them as alternatives would be "speculative at best." *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-H (WVG), 2014 WL 11813868, at *2 (S.D. Cal. Feb. 21, 2014). Given that the parties position in the marketplace, the issue of whether that feature is a proper consideration, goes more to the weight of the opinion rather than its exclusion given that for Impinj this was a continuation of a patent beginning in 2012. Further, the '866 and '801 issued in 2009 and 2011, respectively. The Court finds that the patents would have been relevant to the hypothetical negotiations, and the jury may weigh that information.

### B.   Motion to Supplement the Record

At the outset, the Court notes that the instant motion is duplicative of the motion filed at

4

Docket No. 368, which was erroneously not filed as an administrative motion.[4]  In any event, Impinj seeks to supplement the record on the Motion to Strike Certain Opinions of Scott E. Thompson and Lauren R. Kindler (Dkt. No. 239) on the basis that NXP's stance in the contemporaneous case between the parties in the Western District of Washington (No. 2:20-cv-01503-JHC) is contradictory to an argument it set forth in its briefing on the motion to strike.

Specifically, Impinj contends that NXP's request to strike paragraphs 173 and 174 of Kindler's report, which relate to her 25% apportionment to each of the primary features protected by Impinj's patents.  According to Impinj, despite attacking that apportionment on several grounds, including Kindler's reliance on Impinj technical fellow Ron Oliver and the allegedly arbitrary nature of it, NXP's expert David Haas adopted the same figure in his apportionment analysis in the Washington case.  There, NXP argued that Kindler arrived at this non-arbitrary figure based on her own analysis, and that Haas appropriately adopted it.  The Court also took into account NXP's position on the matter in this case.  The Court need not probe further into the merits of this at this stage.  The Court denies the motion to strike Kindler and Thompson.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** NXP's motion to strike Kindler and Thompson.  The Court also **DENIES** Impinj's motion to supplement the record as moot.

This terminates Dkt. Nos. 239, 368, and 372.

**IT IS SO ORDERED.**

Dated: 7/8/2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

---

[4] The proper procedure would have been for Impinj to withdraw the motion at Docket No. 368 under Civil Local Rule 7-7(e).  Moreover, NXP correctly notes that an administrative motion such as this one requires the filing party to seek a stipulation and in the event that one cannot be obtained, provide a supporting declaration explaining as much.