Tharan Gregory Lanier (State Bar No. 138784)
tglanier@jonesday.com
Michael C. Hendershot (State Bar No. 211830)
mhendershot@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

[Additional counsel identified on signature pages]

Attorneys for Defendant
NXP USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IMPINJ, INC.,

Plaintiff,

v.

NXP USA, INC.,

Defendant.

Case No. 4:19-CV-03161-YGR

**NXP USA, INC.'S CROSS-MOTION REGARDING CLAIM CONSTRUCTION OF THE TERM "STAGE" IN U.S. PATENT NO. 8,115,597**

Hearing Date: 7/10/2023
Time: 8:00 A.M.
Location: Courtroom 1, 4th Floor
Judge: Yvonne Gonzalez Rogers

**REDACTED VERSION PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. Introduction ........ 1

II. The Term "Stage" Should Be Given Its Plain and Ordinary Meaning in the Art ........ 3

III. Alternatively, "Stage" Should be Construed as "smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle." ........ 4

A. The Intrinsic Evidence Dictates NXP's Proposed Construction. ........ 5

B. The Extrinsic Evidence Supports This Construction. ........ 8

IV. Impinj's Attempts to Redefine Stage for Purposes of Infringement Fail ........ 12

V. Conclusion ........ 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366 (Fed. Cir. 2014) .......... 11

*Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) .......... 10

*DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342 (Fed. Cir. 2008) .......... 5

*Evolutionary Intel., LLC v. Sprint Nextel Corp.*, No. C-13-03587, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014) .......... 6

*Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996) .......... 12

*Kaneka Corporation v. SKC Kolon PI, Inc.*, 2014 WL 10983769 (C.D. Cal. 2014) .......... 13

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) .......... 6, 9

*Phillips v. AWW Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......... 10

*Tap Pharmaceutical Products, Inc. v. Owl Pharmaceuticals, L.L.C.*, 419 F.3d 1346 (Fed. Cir. 2005) .......... 11

*Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364 (Fed. Cir. 2002) .......... 12

*Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991) .......... 7

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......... 15

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .......... 15

**STATUTES**

35 U.S.C. § 112(f) .......... 15

**OTHER AUTHORITIES**

MPEP § 2118 .......... 16

## I. INTRODUCTION & BACKGROUND

The term "stage" has an established plain and ordinary meaning in the industry that has consistently been used by both parties in their businesses for years and that is embraced by the intrinsic record. A stage in a rectifier is a unit of circuit components that receives an input DC voltage, raises it during a single RF cycle, and outputs a higher DC voltage. These stages are modular and may be repeated in a series to output a DC voltage that powers the rest of the circuit. Applying this plain and ordinary meaning is dispositive, as NXP cannot infringe under it.

For this reason, Impinj's expert (Dr. Durgin) applies an infringement theory that departs from it. If the plain and ordinary meaning is applied as the parties have long agreed, then NXP cannot infringe. Indeed, Impinj newly seeks construction because, having seen the evidence, it knows there can be no infringement without it. Should the Court conclude it needs to articulate that plain and ordinary meaning for the jury, the appropriate construction is clear and NXP cannot infringe.

Both parties' records and witnesses confirm there is an understood plain and ordinary meaning of the term in the industry. Both NXP's and Impinj's documentation consistently show that a "stage" is a modular, repeatable unit of circuit components that receive a DC voltage, raise it, and output a higher DC voltage to the next stage.

As confirmed by their schematics, both parties have multiple stages in their rectifiers that receive a DC voltage input that the stage raises over an RF cycle to output a higher DC voltage. In the industry, there is no controversy over what a rectifier stage is, where it starts and ends, or how many there are. As illustrated below, NXP's UCODE8 rectifier has 8 stages, each outputting a higher DC voltage than it receives and Impinj's M700 rectifier has 10 stages with similar DC inputs and outputs. This definition is confirmed by both parties' witnesses and documents:

**NXP's 8-Stage rectifier (UCODE8)**

(Trial Ex. 597 at 5)

- An NXP internal design and simulation report identifies it as an "8 stage" RF rectifier.
- Dr. Durgin previously acknowledged: "***each block in the chain is a single stage*** defined as 'id_uc8_pmp14' in the schematic" and the schematic for each block is "the ***individual charge pump stage*** schematic" Ex. 4, Durgin Opening Report ¶¶ 165, 167.
- NXP's Franz Amtmann testified: "Because you have shown me an exhibit where you have RFP and RFN and seven or eight blocks, and a stage for me would one of these blocks in this exhibit. . . . And one stage then is one block of this." Ex. 11, Amtmann April 5, 2022 Tr. at 123:8-12.

**Impinj's 10-Stage Rectifier (M700)**

[redacted]

(Trial Ex. 16 at 120)

- Mr. Oliver testified the "Monza 700 series is a ***ten-stage*** rectifier." Trial Tr. at 419:2-9.
- Mr. Oliver further testified this definition is what is used when "Impinj engineers are referring to the stages in [their] rectifier . . . [i]n their work . . . ." Trial Tr. at 488:16-25; *see also id.* at 417:9-11, 418:16-21.[1]

"Stage" has an established and well understood meaning that both parties agreed should apply (and that Impinj embraced before the PTO). But, to try to make out infringement, Dr. Durgin drew "stages" that contradict the term's use in the industry and by the parties themselves:

---

[1] As detailed below, Impinj's teardown report by Tech Insights on the UCODE8 product—which it argued was a compilation the sort of which the industry relies upon uses "stage" in this very same manner, discussing a separate "ten-stage high voltage pump."



| Dr. Durgin's "Stage" for NXP UCODE8 (Durgin Tr. Demo. 31) | Dr. Durgin's "Stage" for Impinj M700 (Dkt. 269-12 at ⁋ 332) |
|---|---|
|  | |

First, NXP submits the plain and ordinary meaning of "stage" in the industry is unambiguous, understood, and embraced by the intrinsic record and construction is unnecessary.

Second, should the Court conclude the jury would benefit from an articulation of that plain and ordinary meaning, then, as confirmed by the intrinsic and extrinsic record, "stage" should be construed as the "*smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle.*" This construction is: (1) derived nearly verbatim from what Impinj told the PTO was the plain and ordinary meaning of "stage"; (2) confirmed by the consistent usage throughout the '597 patent's claims and specification; and (3) reflects the established use of the term in the industry.

In either case, as Impinj itself told the PTO, one cannot "cobble together transistors from three different stages in to meet the single 'stage' of the claims." Trial Ex. 1373 at 36.

## II. <u>THE TERM "STAGE" SHOULD BE GIVEN ITS PLAIN AND ORDINARY MEANING IN THE ART</u>

"[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis." *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008). Until Friday, the parties agreed that that the term "stage" should be given its plain and ordinary meaning. *See* Dkts. 79, 79-1 (parties declining to seek construction of any terms of the '597 patent); Trial Ex. 1373 at 18 (Impinj stating in IPR proceedings "that the terms of the claims can be given their plain and ordinary meaning"). That is because the term has a well-established meaning in the art.

The purpose of a rectifier is to amplify power for a circuit through repetition, and thus a stage consists of the smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle. *See*, *e.g.*, Trial Ex. 1 cols. 6:9–26 ('597 patent) (describing "a Dickson RF charge-pump stage"), 6:39–54 (describing "a conventional NMOS RF rectifier stage"), 6:62–7:21 (describing a "conventional CMOS RF rectifier stage"). When these stages are repeated, they provide an amplified DC output to power the circuit, making them a rectifier. *Id.* cols. 6:27–38, 6:55–61, 7:14–22 (describing rectifiers composed of the preceding stages). Far from contravening the plain and ordinary meaning of "stage," the specification embraces that meaning.

The same is true of the prosecution history. As Impinj told the Patent Office, under the plain and ordinary meaning, one is not "permitted to cobble together transistors from three different stages in [a rectifier] to meet the single 'stage' of the [asserted] claims." Trial Ex. 1373 at 36; *see also Evolutionary Intel., LLC v. Sprint Nextel Corp.*, No. C-13-03587, 2014 WL 4802426, at *4 (N.D. Cal. Sept. 26, 2014) (statements in IPR proceedings can "aid the court in understanding the meaning of terms") (citing *Phillips v. AWW Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005)). Rather, a predefined "collection of circuit components" must "work[] together *as a unit* during a single cycle of the input signal to step up DC voltage." Trial Ex. 1373 at 36.

This intrinsic record embraces the use of the term in the industry as summarized above and detailed below in Part III.B. This is reflected in technical treatises, the '597 inventors, and the parties' own documents and witnesses. *See infra*

Given the widespread industry understanding, as confirmed by the intrinsic record, further construction is not required and NXP cannot infringe and is entitled to JMOL.

## III. <u>ALTERNATIVELY, "STAGE" SHOULD BE CONSTRUED AS "SMALLEST UNIT OF CIRCUIT COMPONENTS THAT STEPS UP A DC VOLTAGE TO ITS OUTPUT DURING A SINGLE RF CYCLE."</u>

If the Court concludes that the jury would benefit from a construction, then "stage" should be construed as "*smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle.*" That construction is dictated by the claim language, the specification, and Impinj's own statements in the prosecution history. It is also consistent with reams of

extrinsic evidence, including the parties' documents, witnesses, and experts.

### A. The Intrinsic Evidence Dictates NXP's Proposed Construction.

The intrinsic record to be considered in claim construction includes "three sources: The claims, the specification, and the prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). Here, each confirms the plain meaning of a rectifier "stage" is the "*smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle.*"

***Prosecution History***: NXP's proposed construction tracks Impinj's articulation of the "plain and ordinary meaning" of stage to the PTO in opposition to NXP's IPR petition:

> The term 'stage,' in the context of rectifiers, was generally understood to be ***a collection of circuit components—often a duplicate of the base rectifier's main components—that worked together as a unit to step up DC voltage during a cycle of the input RF signal.*** Each 'stage' resembled a rung of a ladder: one full cycle of the input voltage (upswing and downswing) resulted in charge being moved up a 'rung' of this ladder, which equated to some amount of voltage. Stages could be attached in series, to step up the DC voltage by 'rungs' until it reached a usable level. Rectifiers with these repeated stages were sometimes called 'charge pumps' or 'voltage adders.'

Trial Ex. 1373 at 8 (emphasis added). As Impinj reiterated, "a rectifier 'stage' indicated a collection of circuit components that worked together *as a unit* during a single cycle of the input signal to step up DC voltage." *Id.* at 36 (emphasis original). This is reflected in NXP's construction—each stage of the claimed rectifier is a unitary element, like a ladder rung or a train car, that collectively achieve their purpose when serially coupled together.

Prior art from the '597 patent prosecution history similarly uses "stage" with this meaning. *See, e.g.*, Trial Ex. 46 at 74, 76 (Mandal prior art presented in IPR referring to the smallest unit of circuit components as stages); Ex. 2 at [0034] (Smith patent application relied on by PTO in repeatedly finding the '597 patent claims as originally drafted obvious referring to a stage as small unit of circuit components that step up voltage during a single cycle); Trial Ex. 3 at 73–75, 126–28 (PTO addressing the Smith reference). As Impinj told the patent office, the "selective identification of transistors is not a 'stage.'" Trial Ex. 1373 at 36. One cannot "cobble

together" elements from different stages of a circuit in an effort "to meet the single 'stage' of the challenged claims." *Id.* This point is reflected by the inclusion of "smallest" in NXP's construction.

***Claim Language:*** The asserted claims are directed to "power rectifier[s]" ("rectifier" in claim 15), which the specification explains "typically use charge pumps to increase the output DC voltage" harvested from RF waves to power the circuit. Trial Ex. 1, cols. 1:61–2:3, 2:2–3, 10:64, 12:61. The claimed rectifier comprises "input node[s]" for receiving both phases of a single "alternating RF wireless signal" and "a plurality of serially coupled stages, at least one of the stages including" two synchronous elements to receive the two phases of the RF signal and accumulate charge, to be passed along to the next "serially coupled" stage. *Id.* cols. 10:64–11:40; see also *id.* cols. 12:61–14:18. By receiving both the "first phase" and the "second phase" of "the alternating RF wireless signal," *id.* cols. 10:66–11:3, 11:6-8, 11:23-25, the claims limit a "stage" to a unitary collection of circuit components that steps up an output DC voltage during a single RF cycle. And the "serially coupled" language ensures that these stages are limited to the smallest repeating unit of circuit components that can be connected, liked train cars, with one stage's output coupling to the next stage's input.

***Specification:*** The specification confirms this meaning. As shown below, the patent repeatedly and uniformly depicts a "stage" as the smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle. Trial Ex. 1 at Figs. 5A, 6A, 7A, 8B. Two or more stages coupled together are described as a "rectifier." *Id.* at Figs. 5B, 6B, 7B, 8A. The red and blue sinusoid in the figures below indicates the number of RF cycles. Each stage uses one RF cycle (a combination of a blue and red and blue period) and each rectifier uses two or more RF cycles to step up a DC voltage. Ex. 1, van der Weide Declaration at ¶ 20.

| Stage in ’597 Patent | Rectifier in ’597 Patent |
| --- | --- |
| DICKSON RF "CHARGE PUMP" STAGE<br>FIG. 5A (PRIOR ART) | SINGLE-ENDED RF DICKSON "CHARGE PUMP" RECTIFIER<br>FIG. 5B (PRIOR ART) |
| NMOS RF RECTIFIER STAGE<br>FIG. 6A (PRIOR ART) | SINGLE-ENDED RF NMOS RECTIFIER<br>FIG. 6B (PRIOR ART) |
| CMOS RF RECTIFIER STAGE<br>FIG. 7A (PRIOR ART) | SINGLE-ENDED RF CMOS RECTIFIER<br>FIG. 7B (PRIOR ART) |
| SYNCHRONOUS RECTIFIER STAGE<br>FIG. 8B | SYNCHRONOUS POWER RECTIFIER<br>FIG. 8A |

Trial Ex. 1 at Figs. 5A, 5B, 6A, 6B, 7A, 7B, 8A, 8B (annotated); Ex. 1, van der Weide Declaration at 27; *see also* Impinj Opening Demos. at 54, 55, 58. Moreover, the specification explains that the claimed rectifier stages “other than the zeroth stage . . . are made substantially identical.” Trial Ex. 1, col. 7:38–40. Thus, for the circuit to end with the “DC output current of the Power Rectifier,” *id.* cols. 7:66–8:2, each stage must also conclude with a DC output current.

**B.      The Extrinsic Evidence Supports This Construction.**

In addition to intrinsic evidence, the Court may also consider "evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). Because evidence of this sort can help elucidate "the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean," the Court should also consider these sources, which uniformly support the construction dictated by the patent itself. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc).

***Expert Testimony***:  The Court "has the discretion to take expert testimony into account in determining the ordinary meaning of a claim term to one skilled in the art." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331 (Fed. Cir. 2012). Here, the testimony of both parties' experts warrants consideration to the extent "consistent with the intrinsic evidence." *Id.*

Dr. van der Weide analyzed the intrinsic and extrinsic evidence and opined that the plain and ordinary meaning for "stage" is "smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle." Ex. 1 at ¶ 20. He reviewed and annotated the intrinsic evidence and showed how each stage steps up the DC voltage to its output during a single RF cycle and how each is the smallest unit of circuit components that produce the stepped-up voltage. *Id.* at ¶ 27. He also stated that persons of skill in the art describe stages according to their input-output characteristics, such as gain, which is DCOUT divided by DCIN. *Id.* at ¶ 33.

The testimony of Impinj's expert is largely consistent (outside of his efforts to make out infringement of one element). In his report, Dr. Durgin states that he "analyze[d] ***the individual charge pump stage*** schematic of the UCODE 8 . . . a portion of which is reproduced below:"



Ex. 3, Durgin Opening Report ¶ 165 (emphasis added). He then states "Shown below, ***each block in the chain is a single stage*** defined as 'id_uc8_pmp14' in the schematic, which is the previous charge pump stage shown above." *Id.* at ¶ 167 (emphasis added).

*Id.* It was only when opining on infringement that Dr. Durgin switched gears and opined that a stage could start "in the middle of a cell." *Id.* ¶ 195.

That his infringement opinion is motivated solely by this litigation, and therefore does not warrant consideration, is made clear by Dr. Durgin's statements outside of litigation. In 2014, Dr. Durgin published a paper titled Harvesting Wireless Power in IEEE Microwave Magazine on May 7, 2014. Ex. 4, Christopher Valenta and Gregory Durgin, *Harvesting Wireless Power*, IEEE Microwave Magazine (May 7, 2014). In that paper, he stated "[c]harge pumps not only rectify RF to dc but also step up the voltage to usable levels by means of cascaded diode-capacitor stages. Each stage uses the previous stage for biasing reference and as a result, a larger voltage can be obtained." *Id.* at 115. This supports the construction that a stage is the "smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle."

***Inventor Testimony***: Because "a word describing patented technology takes its definition from the context in which it was used by the inventor," *Tap Pharmaceutical Products, Inc. v. Owl Pharmaceuticals, L.L.C.*, 419 F.3d 1346, 1354 (Fed. Cir. 2005), the testimony of the inventors of the '597 patent also has relevance to the extent that testimony is consistent with the intrinsic evidence. *See AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1377 (Fed. Cir. 2014) (affirming a claim construction that was supported by the intrinsic evidence and the inventor's testimony).

Charles Peach, one of the inventors of the '597 patent, testified that a rectifier stage is a "way of tiling or cutting and pasting, copying some design elements in a way to stack and

facilitate layout and the design process," and agreed that "if you have a design of a stage you can repeat that over and over again to get the voltage you want." Ex. 5, Peach April 23, 2022 Tr. at 36:20-37:5. He also agreed that a rectifier stage refers to "a design [and] you prove that design at each stage and, [] each stage gives you a certain voltage," then "you can put multiple stages together to continue to increase that voltage." *Id.* at 37:15-38:9.

Ronald Oliver, another inventor of the '597 patent, also used the term "stage" consistently with NXP's definition that a stage is the smallest unit of circuit components that steps up a DC voltage. He testified that the Monza R6 is "on the order of seven stages or so," and had "a number of stages . . . generate[d] a supply voltage [VDD_RECT]," and then Impinj "add[s] one more stage that generates a slightly higher supply voltage [VDD] ramp." Trial Tr. at 416:21-417:9. He also confirmed that was the correct use of the term "stage" and how Mr. Oliver and Impinj engineers use that term in their work at Impinj. *Id.* at 417:10-12; 488:16-25.

Trial Ex. 590, Monza R6 Schematics at 11 (VDD_RECT and VDD_RAMP highlighted). He also agreed that the boxes with "STG" and a number are the stages of the M700 rectifier and the "Monza 700 series is a ten-stage rectifier." Trial Tr. at 419:2-9; *see also id.* at 418:16-21.

Trial Ex. 16 at 120.

***Technical Dictionaries and Industry Usage***: Technical dictionaries and industry usage reinforce the "specific meaning of [this] technical term as it is used and understood in" the field of rectifier design. *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir.

1996); *see also Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1375 (Fed. Cir. 2002) ("a technical dictionary is . . . a better source to inform the meaning of the term to a skilled artisan" when the term is used "in a technical context"); *Kaneka Corporation v. SKC Kolon PI, Inc.*, 2014 WL 10983769, *12 (C.D. Cal. 2014) (considering "general practice in the industry").

The Electrical Engineering dictionary defines stage as "a component or functional unit within a circuit, device, piece of equipment, or system." Ex. 6, *Stage*, Wiley Electrical and Electronics Engineering Dictionary (2004). By recognizing the importance of a unit assigned function within a circuit, this definition supports the construction of a stage as the smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle.

The same is true of both parties' technical documentation, which reflects the usage within the RFID industry, in which Impinj and NXP compete. Impinj's documentation specifies the smallest "repetition boundaries" as the defining stage "for multi-stage designs." Ex. 7, Monza Rectifier Datasheet, IMPINJ_NXP_DDEL_00000135 at -00000138.

*Id. See also* Ex. 8, IMPINJ_NXP_DDEL_00001559 at -00001564 (same for a developmental version of Monza 6). Impinj's documents define the stage as the smallest unit of circuit components that step up a DC voltage to its output during a single RF cycle.

Similarly, NXP's "Analog Design and Simulation Report" for the UCODE 8 rectifier refers to the rectifier "id_uc8_fe6_c" as an "8 stage differential RF front-end."

5. Block Description

5.1 id_uc8_fe6_c

8 stage differential RF front-end



Ex. 9, NXP-IMP-NDCAL-00004977 at -00004982. The number of stages—the smallest unit of circuit components that step up a DC voltage to its output during a single RF cycle—define the rectifier as "8 stage."

Finally, the companies that provide teardown reports, which Impinj has accepted as reliable sources in this trial (Trial Tr. at 201:1-23), also use the term stage consistently with NXP's construction. In context of a different rectifier, or charge pump, the UCODE 8 Tech Insights Teardown refers to the EEPROM charge pump as a "ten-stage high voltage pump shown in Figure 4.5," with each stage identified as "voltage pump cell Fig. 4.5.1." Trial Ex. 11 at 65.

*Id.* at 80 (image rotated). Each "voltage pump cell" in this charge pump is the smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle.

## IV. IMPINJ'S ATTEMPTS TO REDEFINE STAGE FOR PURPOSES OF INFRINGEMENT FAIL.

In court, Impinj's attorneys tried to negate the well-understood meaning of "stage" by arguing that it is a "nonce word" and that the '597 patent "defines what has to be in the stage." Trial Tr. at 647:24–648:5. Similarly, Impinj's expert insisted that he was applying the term for purposes of his infringement analysis "as defined by the '597 [patent]." Trial Tr. at 554:1–2, 555:18–21, 556:14–17, 559:6–10. Neither argument defeats the plain and ordinary construction

that NXP proposes.

First, a patentee may only act as "his own lexicographer and use terms in a manner other than their ordinary meaning, [where] the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). There is no such clear statement in the specification or prosecution history. Just the opposite, as Impinj used the ordinary meaning of the term in both contexts.

Second, "stage" is not a "nonce word." There is no precedent for saying so now. Here, Dr. Durgin has agreed that "[s]tage is a separate limitation we just saw in Claim 1 from the contents of [Figure 8B]." Trial Tr. 565:21-566:1. And prior to this litigation, in an educational YouTube video, Dr. Durgin stated that "a lot of times they will refer to a pair of diodes as a stage for your charge pump," and annotated the word "stage" on the diodes D1 and D2. Gregory Durgin, *WWB02: Antennas in Circuits for Energy Harvesting*, YouTube (August 2, 2018), https://youtu.be/d3RRpnxMwK8?t=5491 at 1:32:22.

Ex. 10, Gregory Durgin, YouTube Channel Snapshot. Dr. Durgin's description of stage in his video shows that this term has meaning in the art. Ex. 1, van der Weide Declaration at ¶ 29.

"Stage" also certainly is not a nonce word in the '597 patent, which recognizes the term's meaning in the art. "Stage" in the '597 patent is not used to describe a "means or step for performing a specified function." 35 U.S.C. § 112(f); *see also Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (explaining that "[g]eneric terms such as 'mechanism,'

'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6"); MPEP § 2181 (listing other "nonce" words). Unlike the word "element"—also used in the '597 patent and defined by its structure—"stage" has an established meaning that Impinj is seeking to read out of the claim for purposes of infringement. But doing so, and allowing "stage" to encompass any collection of circuit elements that include the elements described in the claim—no matter how many smallest units of circuit components that step up a DC voltage to its output during a single RF cycle are contained therein—would render the term indefinite.[2]

## V. **CONCLUSION**

For these reasons, the Court should hold that the plain and ordinary meaning of the term "stage" controls or, alternatively, construe that term to mean "smallest unit of circuit components that steps up a DC voltage to its output during a single RF cycle."

---

[2] To the extent that Impinj argues that the term "stage" is defined by first and second synchronous elements, a proper construction must also reflect that "each synchronous element includes only two transistors connected in series," as Impinj made clear to the Patent Office. Ex. 1373 at 45. "Any rectifier design that included extraneous transistors—such as the rectifier of the Mandal Thesis—necessarily included additional charge-accumulating pathways as a result of the paths through the transistor terminals." *Id.* at 45-46. Under the doctrine of prosecution history disclaimer, those representations "whether before or after an institution decision" are binding on Impinj. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017); *see also Evolutionary Intel.*, No. C-13-03587, 2014 WL 4802426, at *4 (statements in IPR proceedings can "disclaim claim scope").

Dated: July 9, 2023

JONES DAY

By: */s/ Michael C. Hendershot*
Michael C. Hendershot

Tharan Gregory Lanier
(California State Bar No. 138784)
tglanier@jonesday.com
Michael C. Hendershot
(California State Bar No. 211830)
mhendershot@jonesday.com
Gurneet Singh
(California State Bar No. 333711)
gsingh@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Thomas W. Ritchie (admitted *pro hac vice*)
(Illinois State Bar No. 6301954)
twritchie @jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

T. Kaitlin Crowder (admitted *pro hac vice*)
(Ohio State Bar No. 0095796)
Robert M. Breetz (admitted *pro hac vice*)
(Ohio State Bar No. 0098968)
kcrowder@jonesday.com
JONES DAY
901 Lakeside Ave. E.
Cleveland, OH 44114
Telephone: (216) 586-7347
Facsimile: (216) 579-0212

Jonathan McNeal Smith
(California State Bar No. 292285)
jonathansmith@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Attorneys for Defendant
NXP USA, INC.