UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NXP USA, INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:19-cv-03161-YGR<br><br>**FINAL JURY INSTRUCTIONS**<br><br>Judge: Honorable Yvonne Gonzalez Rogers<br><br>Trial Date: July 5, 2023 |

    The Court attaches hereto the jury instructions, which were used to instruct the jury orally on July 13, 2023.

Dated: 7/18/2023

                                                  _____
                                                  YVONNE GONZALEZ ROGERS
                                            UNITED STATES DISTRICT COURT JUDGE

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions has been given to you, and you may take them into the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I have instructed you to accept as proved.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, may say in closing arguments and have said at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### EVIDENCE FOR A LIMITED PURPOSE

Some evidence was admitted only for a limited purpose. When I instructed you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

### RULING ON OBJECTIONS

As previously instructed, there are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer was able to object. If I overruled the objection, the question was allowed to be answered, or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit could not be received. Whenever I sustained an objection to a question, you were required to ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses may have given different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may have seen the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differed from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testified. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## STIPULATIONS OF FACT

The parties have agreed to certain facts that were placed in evidence as Exhibit A that were read to you. You must therefore treat these facts as having been proved.

## EXPERT OPINION

You have heard testimony from several witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

The Court will now explain the substantive law applicable to the Counts brought in this action. This trial concerns two patents. The 9,633,302 patent referred to as the '302 patent and the 8,115,597 patent referred to as the '597 patent.

In summary, with respect to the '302 patent, you will decide whether the asserted claims are valid. If so, the Court has already decided that there was infringement so you will decide whether that infringement was "willful" as defined in the law and damages, if any.

With respect to the '597 patent, you will decide whether the asserted claims are infringed, if so, whether that infringement was "willful" as defined in the law, and damages, if any. You will also decide whether the claims are valid.

## INTERPRETATION OF CLAIMS

Before you decide whether NXP has infringed the asserted claims of the asserted patents or whether the claims are invalid, you will need to understand the patent claims.

As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of invalidity, infringement, and willfulness. The decisions regarding invalidity, infringement, and willfulness are yours to make.

I instruct you that the following claim term of the '597 has the following definition: The term "stage" means "a unit of circuit components that steps up a DC voltage to its output during a single RF cycle."

I instruct you that the following claim term of the '302 patent has the following definition: The term "IC substrate" means "structure that provides support for the IC components."

The following claim term of the '302 patent is not a substantive limitation: "the channel is shaped to facilitate fluid flow from the center to the first and second ends." By instructing you that a claim term is not a substantive limitation, I mean that a prior art reference does not need to disclose this to invalidate the claim.

All other terms in the asserted claims of the '597 patent and the '302 patent should be interpreted consistent with their plain and ordinary meaning.

## INFRINGEMENT—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Impinj has proven that NXP has infringed one or more of the asserted patent claims.

To prove infringement of any claim, Impinj must persuade you that it is more likely than not that NXP has infringed that claim.

## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.

The second step is to decide whether NXP has made, used, sold, offered for sale, or imported within the United States a product covered by a claim of the patent. If it has, it infringes.

For a sale to be considered within the United States such that it infringes the asserted patents, a substantial portion of activities of the sales transaction must have occurred within the United States, which may include negotiations, contracting, transfer of title, shipment, and delivery. There is no single, universally applicable fact that determines the location of a sale. However, if a product is made and delivered outside the United States, and never reaches the domestic United States, there is a presumption that the product was not sold within the United States. If you have any doubt as to whether a sale occurred within the United States, you should determine that it did not.

With respect to the '302 patent, I have decided that NXP infringes. You do not need to make that decision. However, with respect to whether NXP infringes the '597 patent, you, the jury, make this decision. You will be asked to decide whether NXP infringes claims 1 and 15 of the '597 patent.

You must consider each of the asserted claims of the '597 patent, and decide whether NXP's accused products infringe that claim.

Whether or not NXP knew its products infringed or even knew of the patents does not matter in determining direct infringement.

## LITERAL INFRINGEMENT

To decide whether NXP's products literally infringe a claim of the '597 patent, you must compare the products with the patent claim and determine whether every requirement of the claim is included in those products. If so, NXP's products literally infringe that claim. If, however, NXP's products do not have every requirement in the patent claim, NXP's products do not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in NXP's product. The fact that NXP's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

## WILLFUL INFRINGEMENT

Impinj argues that NXP willfully infringed claims in the '597 and '302 patents. In this case, the Court found NXP infringes the '302 patent, and you will decide whether NXP infringes the '597 patent.

To prove willful infringement, at least one valid claim of the asserted patents must be infringed. The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement of a claim, Impinj prove, by a preponderance of the evidence, that NXP's infringement was intentional or deliberate.

You must base your decision on NXP's knowledge and actions at the time of infringement. Evidence that the NXP had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that NXP engaged in additional conduct evidencing deliberate or reckless disregard of Impinj's patent rights.

To prove willful infringement, NXP must have infringed at least one valid claim of the patent.  With respect to the '302 patent, because the Court has already found infringement of claims 1, 3, 4, and 7, the following instructions apply for the '302 patent.  However, they only apply to the '597 patent, if you find infringement.

The first element in a willful infringement determination is whether the alleged infringer acted despite a high probability of infringing, and the second element is whether the alleged infringement was known or so obvious that it should have been known.

In deciding whether NXP willfully infringed, you should consider all of the facts surrounding the infringement including:

whether NXP intentionally copied Impinj's patented technology in developing the accused product;

whether NXP knew, or should have known, that its conduct involved an unreasonable risk of infringement; and

whether NXP had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.

If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.  For this reason, the verdict form has you decide this question after deciding damages, if any.

## INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether NXP has proven that the asserted claims of the '302 patent and the '597 patent are invalid.

Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, NXP must persuade you, by clear and convincing evidence, that it is invalid.

## INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patent(s). In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Impinj contends that the level of ordinary skill in the art at the times of the claimed inventions for the '597 patent was a person who would have had at least a bachelor's degree in electrical engineering or a related field, such as electronics engineering and/or physics, and three to five years of experience in radio frequency ("RF") technology or other equivalent industry experience. Graduate-level education might substitute for work experience in the field, while significant work experience might substitute for formal education.

NXP contends that the level of ordinary skill in the art at the time of the claimed invention for the '597 patent was a person who would have had at least a bachelor's degree in electrical engineering, physics, or a related field with at least three years of industry experience with circuit design (or equivalent degree or experience). A person could also have qualified as a person of ordinary skill in the art with some combination of (1) more formal education (such as a master's degree) and less technical experience (at least one year), or (2) less formal education and more technical or professional experience.

Impinj contends that the level of ordinary skill in the art at the time of the claimed inventions for the '302 patent was a person who would have had a least a bachelor's degree in mechanical engineering, electrical engineering, and/or a related field and 3-4 years of experience in designing or implementing semiconductor devices. Graduate-level education might substitute for work experience in the field, while significant work experience might substitute for formal education.

NXP contends that the level of ordinary skill in the art at the time of the claimed invention for the '302 patent was a person who would have had (i) a bachelor's degree in mechanical

engineering, electrical engineering, or physics, or undergraduate training in an equivalent field, and (ii) at least two years of experience in the design or implementation of semiconductor technology. Additional graduate education could substitute for professional experience, and significant work experience could substitute for formal education.

You must determine the level of ordinary skill in the art.

## ANTICIPATION

A patent claim is invalid if the claimed invention is not new.

For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new, we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of radio frequency ("RF") technology, integrated circuit design, or semiconductor technology looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

Here is a list of the ways that NXP can show that a patent claim was not new:

– if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception for the '597 patent. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– if the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of an asserted patent;

– if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before date of conception for the '597 patent;

– if the inventors did not invent the claimed invention but instead learned of the claimed invention from someone else.

## OBVIOUSNESS

Not all innovations are patentable.

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made for the '597 patent and as of the effective filing date of the claimed inventions for the '302 patent. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made for the '597 patent and as of the effective filing date of the claimed inventions for the '302 patent. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;
(2) the types of problems encountered in the field; and
(3) the sophistication of the technology.

Second, you must decide the scope and content of the prior art.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1) commercial success of a product due to the merits of the claimed invention;

(2) a long felt need for the solution provided by the claimed invention;

(3) unsuccessful attempts by others to find the solution provided by the claimed invention;

(4) copying of the claimed invention by others;

(5) unexpected and superior results from the claimed invention;

(6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7) other evidence tending to show nonobviousness.

The presence of any of the factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious as of the effective filing date of the claimed invention for the '302 patent and at the time of the claimed invention for the '597 patent.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether NXP has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether an inventor would look to the prior art to help solve the particular problem at hand. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made for the '597 patent or as of the effective filing dates of the claimed inventions for the '302 patent, and you should not consider what is known today or what is learned from the teaching of the patents.

## DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that NXP infringed any valid claim of the asserted patents, you must then determine the amount of money damages to be awarded to Impinj to compensate it for the infringement.

The amount of those damages must be adequate to compensate Impinj for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Impinj has the burden to persuade you of the amount of its damages. You should award only those damages that Impinj more likely than not suffered. While Impinj is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Impinj is not entitled to damages that are remote or speculative.

In this case, Impinj seeks to recover lost profits for some of NXP's sales of the infringing products, and a reasonable royalty on the rest of NXP's sales.

## LOST PROFITS—GENERALLY

To recover lost profits for infringing sales, Impinj must show that but for the infringement of the asserted patents, there is a reasonable probability that it would have made sales that NXP made of the infringing products. Impinj must show the share of NXP's sales that it would have made if the infringing products had not been on the market. A finding that NXP has infringed the asserted patents is necessary to any award of lost profits.

## LOST PROFITS—FACTORS TO CONSIDER

Impinj is entitled to lost profits if it proves all of the following:
  (1) that there was a demand for the patented products;

  (2) that there were no acceptable non-infringing substitutes for the product for which Impinj seeks lost profits, or, if there were, the number of sales made by NXP that Impinj would have made despite the availability of any acceptable non-infringing substitutes;

  (3) that Impinj had the manufacturing and marketing capacity to make any infringing sales actually made by NXP and for which Impinj seeks an award of lost profits; and

  (4) the amount of profit that Impinj would have made if NXP had not infringed.

## LOST PROFITS—MARKET SHARE

One way Impinj may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products. You may award Impinj a share of profits equal to that market share.

In deciding Impinj's market share, you must decide which products are in Impinj's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

## LOST PROFITS—NON-INFRINGING SUBSTITUTE

An acceptable non-infringing substitute must include the advantages of the patented invention that were important to the actual buyers of the infringing product. A non-infringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of the patented feature from the product altogether. To be an acceptable substitute, however, the substitute must have been available during the period when the infringing product was sold. A substitute may be considered available as a substitute even if it was not on sale during the infringement period, if, during that period, a competitor or NXP had all the necessary equipment, materials, know-how, and experience to design and manufacture a noninfringing substitute and sell it to its customers. If some of Impinj's customers would have been just as likely to purchase a non-infringing acceptable product as to purchase Impinj's product, then Impinj has not shown that but for NXP's sales, it would have made the sales that NXP made. Even if you find that NXP's infringing sales and Impinj's patented products were the only ones with the advantages of the patented invention, Impinj is nevertheless required to prove that it, in fact, would have made NXP's infringing sales.

# REASONABLE ROYALTY

## REASONABLE ROYALTY—ENTITLEMENT

If Impinj has not proved its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then Impinj should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

## REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways, and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused products.

(2) The value that factors other than the claimed invention contribute to the accused products.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product or products on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples and are not intended to suggest the appropriate royalty rate.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

## REASONABLE ROYALTY—MULTIPLE PATENTS

If you find that NXP infringed more than one patent, even by a single infringing act, then you may award separate royalties to Impinj for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing products and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

## DATE OF COMMENCEMENT—PRODUCTS

Damages that Impinj may be awarded by you commence on the date that NXP has both infringed and been notified of the Asserted Patents.

Impinj and NXP agree that, for the '302 patent, NXP was notified of the patent on October 6, 2017.

Impinj and NXP agree that, for the '597 patent, NXP was notified of the patent on November 12, 2018.

# STOP

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.
>
> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the

witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment as well as how to locate and view the exhibits on the computer. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the Courtroom Deputy. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the Courtroom Deputy, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with Courtroom Deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.