UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC., <br> Plaintiff, <br> v. <br> NXP USA, INC., <br> Defendant. | Case No. 19-cv-03161-YGR <br><br> **ORDER DENYING IMPINJ'S MOTION FOR A PERMANENT INJUNCTION** <br><br> Re: Dkt. Nos. 447, 457 |

**I.   BACKGROUND**

Pending before the Court is plaintiff Impinj, Inc.'s ("Impinj") motion for a permanent injunction. *See* Dkt. No. 447 ("Mtn.").[1] The Court **DENIES** the motion.

**II.   LEGAL STANDARD**

The Court considers four factors when evaluating motions for a permanent injunction, namely: "(1) irreparable injury in the absence of an injunction; (2) inadequacy of compensatory remedies at law; (3) a balance of hardships favoring an injunction; and (4) consistency of an injunction with the public interest." *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018). "The movant must prove that it meets all four equitable factors." *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1341 (Fed. Cir. 2017).

---

[1] The Court also **DENIES AS MOOT** the administrative motion at Docket Number 457, wherein the parties seek clarification on post-trial briefing. The Court received and considered Impinj's reply brief in support of its Motion for Permanent Injunction.

### III. DISCUSSION

On July 14, 2023, a jury found claims 1 and 3 of the '302 [2] patent valid and claims 4 and 7 invalid. The Court had already found that NXP infringed the '302, if valid.[3] The jury also found NXP liable for infringement of the '597[4] patent. NXP now seeks to enjoin Impinj from practicing the '302 and '597 patents, including as embodied in any of its UCODE products.

Impinj argues that NXP is causing it irreparable harm because Impinj is experiencing loss of sales, market share, reputation, brand distinction, and business opportunities. Impinj and NXP are direct competitors in the RAIN RFID market. Loss of sales and market share are signs of irreparable harm, both of which, Impinj argues, it has suffered. Impinj argues that the infringement by NXP has also caused its reputation and brand distinction to erode. Impinj also argues that it lost business opportunities due to NXP's infringement. Impinj argues, next, that its harm has a nexus to NXP's infringement. Impinj argues that it has data to support the conclusion that customers want the features protected by the '302 patent and the '597 patent.

On reputational harm, NXP observes that the CEO of Impinj admitted that UCODE 8 performs better than the Monza R6. Concerning brand distinction, Impinj failed to offer, according to NXP, any evidence that customers were unable to distinguish between the parties' products. Impinj points to only one lost business opportunity – with Nike, and does not explain why it lost that opportunity, according to NXP. On price erosion: NXP argues that other factors contributed to Impinj lowering its prices, such as encouraging the adoption of RAIN RFID technology. NXP argues that "Impinj cannot lose sales it cannot fulfill." NXP does not factually dispute that Impinj lost market share, but NXP believes that any lost market share is unrelated to

---

[2] U.S. Patent No. 9,633,302, "RFID Integrated Circuits with Channels Reducing Misalignment."

[3] The jury returned an inconsistent verdict regarding the asserted claims of the '302 patent. *See* Jury Verdict, Dkt. No. 426. The Court granted a new trial on the validity of the asserted claims of the '302. See Dkt. No. 471. As such, the Court has not concluded that NXP is infringing a valid patent by practicing the claims of the '302. Without that, the irreparable harm factor rests entirely on infringement of the '597.

[4] U.S. Patent No. 8,115,597, "RFID Tags with Synchronous Power Rectifier."

the infringement.

Additionally, NXP argues that there is no nexus to any alleged irreparable harm for a variety of reasons. First, NXP believes that Impinj ignores many other features of the accused products that make them highly desirable. To that end, consumer interest in general features does not necessarily amount to demand for any given invention. In particular, for example, Impinj offers no argument that consumers specifically demanded the rectifier of the '597. To the extent that customers demanded improved read sensitivity, they found it in the products offered by NXP, which perform better. The same arguments largely apply to the '302. It does not, per NXP, claim large pads. Furthermore, NXP's products have a unique pad design, which is the reason customers demand them, not because they mimic Impinj's design. NXP refutes any accusation of copying.

On reply, Impinj argues that the parties' competitive relationship warrants an injunction. Furthermore, according to Impinj, lost profits establish a finding of irreparable harm. Impinj reaffirms that it has suffered irreparable harm from more than lost sales, however. It has also experienced a hit to its reputation, lost business opportunities, and lost brand distinction.

Impinj has established at least some irreparable harm. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (reasoning that direct competition in the market suggests irreparable harm). The parties are direct competitors, and Impinj has shown lost sales and market share. Furtthermore, Impinj has shown a connection between the harm and the infringement where, in this basically two-player market, customers have clamored for the large pads of the '302 patent. However, the argument that there is a connection between the infringement and the harm concerning the '597 patent is weaker. General industry praise for the innovations effected by the '597, (in particular read sensitivity improvement) is not the same as customer demand, and in any event, it appears undisputed that NXP's products actually have *superior* read sensitivity. Impinj fails to establish a nexus between NXP's infringement of the '597 and any irreparable harm.

Because Impinj cannot establish irreparable harm, the Court declines to consider the other factors.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Impinj's motion for a permanent injunction. The Court also **DENIES AS MOOT** the administrative motion at Docket Number 457.

This terminates Docket Numbers 447 and 452.

**IT IS SO ORDERED.**

Dated: October 3, 2023

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE