Ramsey M. Al-Salam, Bar No. 109506
Christina J. McCullough, Bar No. 245944
Antoine M. McNamara, Bar No. 261980
Stevan R. Stark, admitted *pro hac vice*
R. Tyler Kendrick, admitted *pro hac vice*
Jessica J. Delacenserie, admitted *pro hac vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: 206.359.8000 / Fax: 206.359.9000
RAlsalam@perkinscoie.com
CMcCullough@perkinscoie.com
AMcNamara@perkinscoie.com
SStark@perkinscoie.com
RKendrick@perkinscoie.com
JDelacenserie@perkinscoie.com

M. Craig Tyler, admitted *pro hac vice*
PERKINS COIE LLP
405 Colorado Street, 17th Floor
Austin, TX 78701
Tel: 737-256-6113
CTyler@perkinscoie.com

[Additional counsel identified on signature page]

*Attorneys for Plaintiff Impinj, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>NXP USA, INC.,<br><br>                    Defendant. | Case No. 4:19-cv-03161-YGR-AGT<br><br>**PLAINTIFF IMPINJ, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUPPLEMENTAL DAMAGES AND IMPOSITION OF A ROYALTY FOR NXP'S ONGOING WILLFUL INFRINGEMENT OF U.S. PATENT NO. 8,115,597**<br><br>Hearing Date: Tuesday, November 21, 2023<br>Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>REDACTED VERSION OF  DOCUMENT FILED UNDER SEAL |

# <u>TABLE OF CONTENTS</u>

I.      NXP'S OPPOSITION MISUNDERSTANDS IMPINJ'S POSITION AND
        TAKES UNSUPPORTED POSITIONS ..................................................................... 1

        A.      NXP ignores that changed circumstances warrant a higher royalty rate for
                post-verdict willful infringement ............................................................... 1

                1.      Impinj's anticipated lost profits must be considered as part of the
                        renewed hypothetical negotiation ................................................. 1

                2.      Impinj's motion discussed nexus only because it is relevant to the
                        renewed hypothetical negotiation, not to ask the court to revisit that
                        issue ............................................................................................. 5

                3.      Impinj's ongoing royalty must be higher than the jury-awarded
                        royalty rate to avoid substantial continuing harm and the potential
                        for serial litigation ...................................................................... 6

        B.      NXP seeks to erase the jury's lost-profit finding from the supplemental
                damages award ............................................................................................ 8

        C.      The Court can and should resolve this motion now ............................................. 10

                1.      This court has jurisdiction over Impinj's motion for an ongoing
                        royalty .......................................................................................... 10

                2.      Impinj's motion for an ongoing royalty was procedurally proper ............ 12

                3.      Resolving the motion now is appropriate and will not waste judicial
                        resources ...................................................................................... 13

II.     CONCLUSION ..................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

C<small>ASES</small>

3

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
4      694 F.3d 1312 (Fed. Cir. 2012) .............................................................................. 2, 6, 7

5    *Affinity Lab'ys of Texas, LLC v. BMW N. Am., LLC*,
       783 F. Supp. 2d 891 (E.D. Tex. 2011) ............................................................................ 7
6

7    *Amado v. Microsoft Corp.*,
       517 F.3d 1353 (Fed. Cir. 2008) .......................................................................... 2, 4, 6

8    *Apple, Inc. v. Samsung Elecs. Co.*,
9      926 F. Supp. 2d 1100 (N.D. Cal. 2013), *vacated and remanded on other
       grounds,* 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded on other grounds*,
10     580 U.S. 53 (2016) ................................................................................................ passim

11   *Apple, Inc. v. Samsung Elecs. Co.*,
       No. 12-CV-00630, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ............................... passim
12

13   *ArcherDX, LLC v. Qiagen Scis., LLC*,
       No. CV 18-1019-(MN), 2022 WL 4597877 (D. Del. Sept. 30, 2022) ....................................... 4

14   *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
15     876 F.3d 1350 (Fed. Cir. 2017) ............................................................................... 1, 6

16   *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs*,
       No. CV-03-597-PHX-MHM, 2010 WL 11484420 (D. Ariz. Sept. 8, 2010) ........................... 8
17

18   *Bayer Healthcare LLC v. Baxalta Inc.*,
       989 F.3d 964 (Fed. Cir. 2021) ................................................................................. 8, 9
19

20   *Boston Sci. Corp. v. Cordis Corp.*,
       838 F. Supp. 2d 259 (Fed. Cir. 2012) ................................................................. 2, 3, 4, 8

21   *Broadcom Corp. v. Emulex Corp.*,
       No. 09-cv-1058 JVS, 2012 WL 13036855 (C.D. Cal. Mar. 16, 2012), *aff'd*,
22     732 F.3d 1325 (Fed. Cir. 2013) ............................................................................. 8, 14

23   *Griggs v. Provident Consumer Discount Co.*,
       459 U.S. 56 (1982) ...................................................................................................... 10
24

25   *I/P Engine, Inc. v. AOL Inc.*,
       No. 2:11CV512, 2014 WL 309245 (E.D. Va. Jan. 28, 2014), *rev'd on other
26     grounds*, Nos. 2013-1307, -1313, 576 F. App'x 982 (Fed. Cir. Aug. 15, 2014) ................. 7, 8

27   *i4i Ltd. P'ship v. Microsoft Corp.*,
       598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ................................................. 5
28

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
No. 4:14-CV-371, 2017 WL 4038884 (E.D. Tex. Sept. 13, 2017) ........................................... 7

*Mendenhall v. Barber-Greene Co.*,
26 F.3d 1573 (Fed. Cir. 1994) ................................................................................................ 13

*Motorola Sols. Inc. v. Hytera Commc'ns Corp.*,
No. 1:17-cv-01973, 2021 WL 6690279 (N.D. Ill. Dec. 14, 2021) ............................................ 3

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-CV-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019), *aff'd*,
815 F. App'x 547 (Fed. Cir. 2020) ...................................................................................... 6, 7

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ........................................................................................... 1, 2

*Paige v. Cal.*,
102 F.3d 1035 (9th Cir. 1996) ................................................................................................ 10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) ................................................................................................ 6

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
No. 08-CV-335-IEG (NLS), 2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) ............................ 5

*Purewick Corp. v. Sage Prod., LLC*,
No. CV 19-1508-(MN), 2023 WL 2734418 (D. Del. Mar. 31, 2023) ................................. 4, 5

*Radware, Ltd. v. F5 Networks, Inc.*,
No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ................. 8, 9, 10

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) .......................................................................................... 2, 3, 5

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
883 F.2d 1573 (Fed. Cir. 1989) .............................................................................................. 15

*Stickle v. Heublein, Inc.*,
716 F.2d 1550 (Fed. Cir. 1983) .............................................................................................. 15

*Tomita Techs. USA v. Nintendo Co.*,
No. 11-Civ.-4256, 2013 WL 4101251 (S.D.N.Y. Aug. 14, 2013) .......................................... 15

*Transperfect Global, Inc. v. MotionPoint Corp.*,
No. C10-2590 CW, 2014 WL 6068384 (N.D. Cal. Nov. 11, 2014) ................................... 9, 10

*UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2017 WL 3034655 (E.D. Tex. July 18, 2017) ............................... 7

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
    515 F. App'x 882 (Fed. Cir. 2012) ........................................................................ 12, 13

*WesternGeco LLC v. ION Geophysical Corp.*,
    No. 4:09-CV-1827, 2013 WL 12441931 (S.D. Tex. Oct. 24, 2013) .................................. 8, 9

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012).............................................................................................. 8

*XY, LLC v. Trans Ova Genetics, LC*,
    No. 13-CV-0876-WJM-NYW, 2019 WL 1403160 (D. Colo. Mar. 28, 2019) .................... 6, 7

**STATUTES**

28 U.S.C. § 1292(c) ........................................................................................................... 12

28 U.S.C. § 1292(c)(1) ...................................................................................................... 12

28 U.S.C. § 1292(c)(2) ...................................................................................................... 12

35 U.S.C. § 284 ................................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(b) ......................................................................................................... 13

LR 7-1 ................................................................................................................................ 12

LR 7-2 ................................................................................................................................ 12

LR 7-9 ................................................................................................................................ 13

LR 7-9(b)(3) ....................................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   NXP'S OPPOSITION MISUNDERSTANDS IMPINJ'S POSITION AND TAKES UNSUPPORTED POSITIONS

A mere 3% royalty for both supplemental damages and an ongoing royalty would be an immense windfall for NXP and nowhere near the actual harm Impinj continues to suffer from NXP's now-willful infringement. NXP's opposition seeks to write out the jury's lost-profit award from the equation, going against the clear aim of the damages statute to adequately compensate a patentee for the infringement it has endured. Worse, NXP's measly 3% royalty so severely undercompensates Impinj that it may be forced to resort to serial litigation to recoup its true losses.

NXP misinterprets Impinj's position as asking for a reassessment of the court's nexus finding. Impinj, however, simply asks the court to recognize that the renewed hypothetical negotiation must account for Impinj's anticipated future lost profits. Impinj has conservatively estimated those anticipated losses based on the jury-awarded lost profits, which rely in part on the connection between NXP's infringement and Impinj's harm. The remainder of NXP's opposition consists of red herrings, unsupported conjecture, and inapposite law.

### A.   NXP ignores that changed circumstances warrant a higher royalty rate for post-verdict willful infringement

Impinj is entitled to an ongoing royalty commensurate with the jury's damages award. As explained in Impinj's motion, the jury had substantial evidence to award both lost profits and a reasonable royalty. Impinj showed that its patented rectifier materially improves read sensitivity and that NXP's improved read sensitivity—enabled by use of the infringing rectifier—drove customer demand for its products. Thus, the jury found that NXP's infringement directly caused Impinj's lost profits. Impinj simply requests that the ongoing royalty for NXP's continued post-trial infringement account for the entirety of this harm.

#### 1.   Impinj's anticipated lost profits must be considered as part of the renewed hypothetical negotiation

NXP does not dispute that the ongoing-royalty analysis requires a renewed hypothetical negotiation to examine circumstances that have changed from the pre-trial analysis. Dkt. 482-4 at 8; *see also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017). But NXP

wrongly asserts that only validity and infringement have changed from the pre-verdict hypothetical negotiation. To the contrary, the pre-verdict analysis did not (and could not) account for the parties' current economic risks and market positions. Impinj's motion explained these changed circumstances, and Impinj believes that an evidentiary hearing would help to further illuminate the situation. Dkt. 476-3 at 12-14. In particular, Impinj showed that the post-verdict market is decidedly different than the pre-verdict market. For example, NXP's UCODE 7 sales have consistently decreased since 2017 to just 14.66% market share by 2021; Ms. Kindler's pre-verdict analysis assumed a 33% market share for UCODE 7. Dkt. 476-3 at 13. Further, the pre-verdict analysis conservatively excluded Impinj's new M700 product due to some potential production difficulties which no longer exist; M700 is now Impinj's best-selling product. *See* Dkt. 476-3 at 14-15; Dkt. 461-1 ¶¶ 3-4. These changed factors would significantly impact the royalty rate that Impinj would find "reasonable" in a post-verdict hypothetical negotiation. *See, e.g.*, *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275-76 (Fed. Cir. 2012); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554-55 (Fed. Cir. 1995) (a reasonable royalty "does not include a royalty that a patentee who does not wish to license its patent would find unreasonable"); *see also, e.g.*, *Paice*, 504 F.3d at 1315 ("Upon remand, the court may take additional evidence if necessary to account for any additional economic factors arising out of the imposition of an ongoing royalty."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1343 (Fed. Cir. 2012) ("The district court may wish to consider on remand additional evidence of changes in the parties' bargaining positions and other economic circumstances …."). In any event, the adjudication of infringement and validity alone changes the parties' bargaining positions and warrants revisiting the hypothetical negotiation under Federal Circuit precedent. *See, e.g.*, *ActiveVideo*, 694 F.3d at 1341-43; *Amado v. Microsoft Corp.,* 517 F.3d 1353, 1362 (Fed. Cir. 2008); *Paice*, 504 F.3d at 1317 (Rader, J., concurring).

Moreover, the hypothetical negotiation would absolutely account for Impinj's anticipated lost profits. Otherwise, NXP would get a windfall—it is no surprise that NXP seems more than willing to pay ongoing royalties at 3%. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995), is instructive. Although that case dealt with a pre-verdict royalty calculation, it is pertinent to the

post-verdict royalty calculation at issue here because both rely on a hypothetical-negotiation analysis. *See id.* at 1554-55. In *Rite-Hite*, the Federal Circuit affirmed a royalty rate that was "approximately fifty percent of [the patentee's] estimated lost profits per unit sold to retailers" for certain sales and "approximately one-third its estimated lost distribution income per infringing sale" for other sales. *Id.* at 1554. In particular, the rates were based on findings that

> Rite–Hite would have been willing to grant a competitor a license to use the '847 invention *only* if it received a royalty of no less than one-half of the per unit profits that it was foregoing. In so determining, the court considered that the '847 patent was a "pioneer" patent with manifest commercial success; that Rite–Hite had consistently followed a policy of exploiting its own patents, rather than licensing to competitors; and that Rite–Hite *would have had to forego a large profit by granting a license to Kelley* because Kelley was a strong competitor and Rite–Hite anticipated being able to sell a large number of restraints and related products.

*Id.* at 1554 (second emphasis added). Likewise, here, Impinj and NXP are direct competitors, the '597 patent is a "pioneer" patent in single-path rectifiers, Impinj has never licensed the '597 patent or any other of its numerous patents to a competitor, and Impinj will have to forgo an enormous profit by permitting NXP's infringing products to remain on the market. *See, e.g.*, Tr. vol. 5 (Kindler), 772:17–23, 735:10–16; Tr. vol. 2, (Oliver) at 336:12–337:3; Tr. Ex. 1; Tr. vol. 3 (Dossett), 605:9–607:25; Tr. vol. 2 (Diorio), 237:18-25, 238:17–20; Dkt. 426 at 6.   Thus, it is clear that the hypothetical negotiation should consider the parties' competitive landscape, including the Impinj's anticipated lost profits. *See also Motorola Sols. Inc. v. Hytera Commc'ns Corp.,* No. 1:17-cv-01973, 2021 WL 6690279, at *6 (N.D. Ill. Dec. 14, 2021) ("So too may [either party's] past or expected profits be considered under at least four of the Georgia-Pacific factors.").

*Boston Scientific Corp. v. Cordis Corp.* likewise shows the importance of considering lost profits in the ongoing-royalty analysis. There, the jury awarded lost profits on 44% of the infringing sales and a reasonable royalty for the remaining infringing sales. 838 F. Supp. 2d at 265. The court awarded an ongoing royalty at more than ten times the jury's awarded royalty rate. *Id.* at 275-76. The ongoing royalty rate of 32% was based on a per-unit extrapolation combining both the jury's lost-profits award and 2.95% reasonable royalty—exactly what Impinj has proposed here. *Id.* at 275-76. In making that award, the court recognized that "[a] post-verdict royalty is fundamentally

1    different from a pre-verdict royalty." *Id.* at 275 (citing *Amado v. Microsoft Corp.*, 517 F.3d 1353,

2    1361 (Fed. Cir. 2008)). Moreover, "[t]he court decline[d] to allow [the defendant], an adjudicated

3    willful infringer, to effectively owe less for its post-verdict infringement than the jury found for its

4    pre-verdict infringement." *Id.* at 276.

5         NXP's criticisms of *Boston Scientific* are unfounded. First, NXP misleadingly suggests that

6    an injunction in that case was denied on "public policy grounds." Dkt. 482-4 at 13. In fact, the

7    plaintiff never moved for an injunction and instead *only* sought ongoing royalties. 838 F. Supp. 2d

8    at 275. Moreover, NXP cites nothing to support its suggestion that the reason for denying an

9    injunction should impact the ongoing-royalty calculation. It is likewise immaterial that the

10   defendant's pre-verdict infringement was willful or that the infringement had been affirmed on

11   appeal, and NXP again has no support for its contrary suggestion. None of these factors changes

12   the relevance of lost profits to the ongoing-royalty analysis. Finally, NXP is again wrong that the

13   *Boston Scientific* court "provide[s] no reasoning to support its position." Dkt. 482-4 at 13. The court

14   clearly based its opinion on settled Federal Circuit precedent that "the calculus" for post-verdict

15   ongoing royalties "is markedly different" from the pre-verdict assessment "because different

16   economic factors are involved," and proceeded to assess how those differences impacted the

17   awarded rate. 838 F. Supp. 2d at 275-76 (citing *Amado*, 517 F.3d at 1362).

18        NXP's cited cases, by contrast, are taken out of context. The court in *ArcherDX, LLC v.

19   Qiagen Scis., LLC*, No. CV 18-1019-(MN), 2022 WL 4597877, at *16 (D. Del. Sept. 30, 2022),

20   declined to increase the jury-awarded royalty rate to account for lost profits because the plaintiff

21   "point[ed] to no other factors other than the lost profits award to support their" request. Here, Impinj

22   requests an ongoing royalty that accounts for its anticipated *future* losses as estimated by the jury-

23   awarded lost profits, as well as other significant changes in the market and the parties' bargaining

24   positions—this is far more than simply "point[ing] to" the existence of a lost-profit award. In

25   *Purewick Corp. v. Sage Prod., LLC*, No. CV 19-1508-(MN), 2023 WL 2734418 (D. Del. Mar. 31,

26   2023), the jury awarded *only* lost profits for one product and *only* a reasonable royalty for a second

27   product. *Id.* at *2. Thus, there was no reason why the lost-profit award from the first product should

28

1    impact the ongoing royalty rate to be applied to the second product. Moreover, the plaintiff

2    "point[ed] to no other circumstances that indicate it would be able to negotiate a rate higher than

3    the rate determined by the jury." *Id.* at \*16. Here, the jury awarded both lost profits *and* a royalty

4    for the same products, and, as discussed, Impinj has demonstrated significant circumstantial

5    changes warranting a higher ongoing royalty rate. Finally, in *Presidio Components Inc. v. Am. Tech.*

6    *Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL 3070370 (S.D. Cal. Aug. 5, 2010), the jury

7    awarded *only* lost profits, and the court declined to convert that purely lost-profits award into an

8    ongoing royalty. *Id.* at \*1, \*3. The court ultimately performed a hypothetical-negotiation analysis

9    and awarded the alternative royalty rate that the plaintiff had asked for because any lower rate would

10   "give [the defendant], who is now a willful infringer, a windfall at [the plaintiff's] expense." *Id.* at

11   \*6. Here, too, Impinj's ongoing royalty must account for the *entirety* of the jury's award to avoid a

12   windfall for NXP.

13            **2.    Impinj's motion discussed nexus only because it is relevant to the**
              **renewed hypothetical negotiation, not to ask the court to revisit that**
14            **issue**

15        Because of the importance of Impinj's anticipated lost profits to the renewed hypothetical

16   negotiation, its motion reiterated that the jury's lost-profit award necessarily found a connection

17   between Impinj's lost profits and NXP's infringement of the '597 patent. *See* Dkt. 476-3 at 2, 12-

18   13, 16-17. Unlike NXP, Impinj was not attempting to re-litigate the nexus question. Thus, NXP's

19   arguments against nexus are misplaced. Dkt. 482-4 at 13-14. Most fundamentally, NXP's sideshow

20   fails to deal with the purpose of Impinj's discussion: to show the connection between the '597

21   patented technology, NXP's infringement, and Impinj's lost profits for purposes of accounting for

22   Impinj's anticipated future losses in the renewed hypothetical negotiation. *E.g.*, *Rite-Hite*, 56 F.3d

23   at 1554-55; *Georgia-Pacific*, (factor 8 considers the profitability of a product practicing the patent,

24   factor 13 considers the "portion of the realizable profit that should be credited to the invention").

25        Moreover, NXP forfeited any argument against nexus as it relates to the lost-profit award

26   because it chose not to move for JMOL on that issue. Dkt. 419 at 9-12; *see i4i Ltd. P'ship v.*

27   *Microsoft Corp.*, 598 F.3d 831, 845 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). In any event, as

28

1    Impinj reiterated in its motion, the patented rectifier substantially impacts read sensitivity, which,

2    as the jury found, drove customer demand. *See* Dkt. 476-3 at 5-10. Contrary to NXP's suggestion,

3    Impinj has never taken the position that the rectifier alone determines sensitivity. *See* Dkt. 476-3 at

4    6; Tr. vol. 5 (Kindler) at 760:15–25.

5         NXP's related discussion of the jury instructions on non-infringing alternatives and market-

6    share theory makes no sense. Dkt. 482-4 at 14. The jury clearly found a nexus between NXP's

7    infringement and Impinj's lost profits for 57% of NXP's infringing sales under the exact market-

8    share theory that Impinj presented at trial. Dkt. 426 at 6-7. Further, NXP cites no authority to

9    support its theory that the jury must find no non-infringing alternatives in order to imply a causal

10   nexus.  The law is clearly to the contrary. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,

11   702 F.3d 1351, 1363 (Fed. Cir. 2012) (in awarding lost profits, "the jury necessarily found [the

12   defendant's] capacitor sales caused [the plaintiff] to lose BB capacitor sales.").

13        Finally, NXP's assertion that the court would need to hold an annual evidentiary hearing to

14   assess profit margins misunderstands Impinj's position. Impinj has never suggested that the

15   ongoing royalty must account for *actual* lost profits. Again, Impinj's *anticipated* future losses—

16   estimated based on the lost profits that the jury awarded—are factored into the awarded ongoing

17   royalty rate as part of the hypothetical negotiation.

18              **3.    Impinj's ongoing royalty must be higher than the jury-awarded royalty
                        rate to avoid substantial continuing harm and the potential for serial
19                      litigation**

20        The court would be well within its discretion to award an ongoing royalty at a rate higher

21   than the jury's pre-verdict royalty rate, particularly given the jury's lost-profit award. Numerous

22   cases award ongoing royalties well above the jury's awarded rate even *without* a lost-profits award

23   to consider. *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341-

24   43 (Fed. Cir. 2012); *Amado*, 517 F.3d at 1362 n.2; *XY, LLC v. Trans Ova Genetics, LC*, No. 13-

25   CV-0876-WJM-NYW, 2019 WL 1403160, at *5 (D. Colo. Mar. 28, 2019); *Arctic Cat Inc. v.*

26   *Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1357, 1370, (Fed. Cir. 2017); *Opticurrent,*

27   *LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *18 (N.D. Cal.

28

1   June 5, 2019), *aff'd*, 815 F. App'x 547 (Fed. Cir. 2020); *Affinity Lab'ys of Texas, LLC v. BMW N.*

2   *Am., LLC*, 783 F. Supp. 2d 891, 899, 905 (E.D. Tex. 2011); *Imperium IP Holdings (Cayman), Ltd.*

3   *v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038884, at *3 (E.D. Tex. Sept. 13, 2017); *I/P*

4   *Engine, Inc. v. AOL Inc.*, No. 2:11CV512, 2014 WL 309245, *2-*4 (E.D. Va. Jan. 28, 2014), *rev'd*

5   *on other grounds*, Nos. 2013-1307, -1313, 576 F. App'x 982, 992 (Fed. Cir. Aug. 15, 2014). NXP's

6   only response is to cite other cases that did not award a higher ongoing royalty rate with no

7   explanation for why the reasoning in those cases should apply here. Dkt. 482-4 at 9.

8          As Impinj explained in its motion, NXP's post-verdict willful infringement further supports

9   an ongoing royalty rate higher than the jury's awarded rate. Dkt. 476-3 at 11-12 (collecting cases).

10  That the jury found willfulness for *pre-verdict* infringement in some of Impinj's cited cases has no

11  bearing on the fact that the *post-verdict* infringement in those cases was also clearly willful.

12  Accordingly, NXP's reliance on *UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017

13  WL 3034655 (E.D. Tex. July 18, 2017), is misplaced. Dkt. 482-4 at 11-12. There, although the

14  court declined to rely on willfulness to enhance the ongoing royalty award, it did so because the

15  parties were "non-competitor[s]," "the plaintiff [chose] not to seek an injunction," and "the

16  defendant's continuing infringement in fact benefit[ted] the plaintiff"—none of those facts is

17  present here. *UroPep*, 2017 WL 3034655 at *9. Notably, even without relying on willfulness, the

18  court still awarded an ongoing royalty twice as high as the jury's awarded rate based on changed

19  circumstances, namely the doubling of the defendant's estimated "average profit margins during

20  the post-verdict period." *Id.* at *11-13; *see id.* at *13 ("[P]rofitability is not only included in

21  the Georgia-Pacific factors but is also a key concern in a negotiation between reasonable parties.").

22         Plenty of other cases have also awarded an ongoing royalty rate higher than the jury-

23  awarded royalty rate without relying on pre-verdict willfulness. *See, e.g.*, *ActiveVideo Networks,*

24  *Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341-43 (Fed. Cir. 2012); *XY, LLC v. Trans Ova*

25  *Genetics, LC*, No. 13-CV-0876-WJM-NYW, 2019 WL 1403160, at *5 (D. Colo. Mar. 28, 2019);

26  *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *18

27  (N.D. Cal. June 5, 2019), *aff'd*, 815 F. App'x 547 (Fed. Cir. 2020); *Affinity Lab'ys of Texas, LLC*

28

IMPINJ'S REPLY ISO MOTION FOR
SUPPLEMENTAL DAMAGES AND ONGOING
ROYALTY
CASE NO. 4:19-CV-03161-YGR-AGT

1   *v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899, 905 (E.D. Tex. 2011); *I/P Engine, Inc. v. AOL*

2   *Inc.*, No. 2:11CV512, 2014 WL 309245, *2-*4 (E.D. Va. Jan. 28, 2014), *rev'd on other grounds*,

3   Nos. 2013-1307, -1313, 576 F. App'x 982, 992 (Fed. Cir. Aug. 15, 2014); *Broadcom Corp. v.*

4   *Emulex Corp.*, No. 09-cv-1058 JVS, 2012 WL 13036855, at *1, *9 (C.D. Cal. Mar. 16, 2012), *aff'd*,

5   732 F.3d 1325 (Fed. Cir. 2013).

6        As explained above, courts often increase the jury-awarded rate for purposes of post-verdict

7   infringement. NXP acknowledges as much but argues that increases are always "modest." First,

8   NXP ignores that *Boston Scientific* applied an ongoing royalty that was more than ten times the

9   jury-awarded royalty rate. 838 F. Supp. 2d 259, 276. Other cases have tripled the jury-awarded rate.

10  *E.g.*, *Broadcom*, 2012 WL 13036855, at *1, *9. But the delta is not what matters; the ongoing

11  royalty must account for changed circumstances after trial, whatever they may be. In this case,

12  because the court denied Impinj's motion for a permanent injunction, NXP will be permitted to

13  continue infringing essentially without consequence unless the court imposes an ongoing royalty at

14  or close to Impinj's requested rate. A royalty that ensures that Impinj is compensated for its damages

15  avoids repetitive litigation. *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34–35

16  (Fed. Cir. 2012); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs*, No. CV-03-597-PHX-

17  MHM, 2010 WL 11484420, at *3 (D. Ariz. Sept. 8, 2010).

18      **B.**    **NXP seeks to erase the jury's lost-profit finding from the supplemental**
19            **damages award**

20       As explained in Impinj's motion, the supplemental damages award must also be

21  commensurate with the scope of the jury's award. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989

22  F.3d 964, 985-86 (Fed. Cir. 2021); *Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1106

23  (N.D. Cal. 2013), *vacated and remanded on other grounds,* 786 F.3d 983 (Fed. Cir. 2015), *rev'd*

24  *and remanded on other grounds*, 580 U.S. 53 (2016). Here, that means accounting for both the

25  jury's royalty and lost-profit awards. *See, e.g.*, *WesternGeco LLC v. ION Geophysical Corp.*, No.

26  4:09-CV-1827, 2013 WL 12441931, at *5 (S.D. Tex. Oct. 24, 2013); *Radware, Ltd. v. F5 Networks,*

27  *Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 4427490, at *9-11 (N.D. Cal. Aug. 22, 2016).

28       NXP has no support for its transparent attempt to erase the jury-awarded lost profits from

any supplemental damages award. Instead, it sets up strawmen to knock down cases supporting Impinj's position and affirmatively relies on only inapposite cases that did not unambiguously award both a reasonable royalty and lost profits. Impinj's cited cases are directly on point. NXP does not deny that *WesternGeco* decidedly supports awarding supplemental damages based on both the jury's lost-profit and reasonable-royalty awards. That case unequivocally rejected the royalty-rate-only argument that NXP makes here because "considering only the reasonable royalty would insufficiently compensate WesternGeco." *Id.* at *5. NXP's attempts to discredit the *WesternGeco* court's sound reasoning fall flat. First, the court's opinion was not "unsupported"; rather, it was expressly based on the "mandate[]" of 35 U.S.C. § 284 that "damages [must be] adequate to compensate for the infringement." *Id.* Moreover, the court acknowledged that "[m]ost courts confronting supplemental damages are faced with only one form of damages" to highlight the fact that this case was *different*. *Id.* "In this case, the Court must extrapolate the jury's award of lost profit damages and reasonable royalty to ensure consistency with the jury's verdict and adequate compensation for WesternGeco." *Id. Radware* likewise shows that the supplemental damages award should be commensurate in scope with the jury's award. There, the court calculated supplemental damages based on lost profits awarded for one product and a reasonable royalty awarded for another product. *Id.* at *9-10. There is no indication that the court would have simply ignored the lost profits if they were instead awarded for the same product as the royalty; the point is for the supplemental damages to approximate the jury's award "for infringing units that a jury could not consider at trial." *Id.* Finally, Impinj's citations to *Bayer* and *Apple* were simply for the proposition that supplemental damages should reflect the entirety of the jury's award, not specifically to show the use of both lost profits and a reasonable royalty in calculating supplemental damages, as NXP apparently misunderstood.

By contrast, NXP conspicuously omits the fact that its *Bayer* quote actually states that "supplemental damages *in this case* merely required applying the jury's royalty rate" and ignores that the jury *only* awarded a reasonable royalty there. 989 F.3d at 972, 986 (emphasis added). *Transperfect Global, Inc. v. MotionPoint Corp.* is likewise easily distinguishable. No. C10-2590

1   CW, 2014 WL 6068384 (N.D. Cal. Nov. 11, 2014). There, unlike here, the jury did not expressly

2   award both a reasonable royalty and lost profits because the verdict form asked for the total amount

3   of damages. *Id.* at *2; *see* Dkt. 426 at 6. Nor did the plaintiff in *Transperfect* seek to increase the

4   applied rate to account for a lost-profit award; instead, it "relie[d] largely on the fact that, after

5   judgment, the patent has been determine to be valid and infringed," which the court found

6   insufficient on its own to change the royalty rate resulting from the hypothetical negotiation. *Id.* at

7   *5. In short, NXP cites no authority for ignoring the jury's unambiguous lost-profit award when

8   determining supplemental damages.

9           **C.      The Court can and should resolve this motion now**

10                  **1.      This court has jurisdiction over Impinj's motion for an ongoing royalty**

11          Impinj's request for ongoing royalties is not "inextricably bound" with its permanent-

12  injunction appeal. Despite NXP's unsupported arguments otherwise, this court was never divested

13  of jurisdiction to decide this motion.

14          In *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630, 2014 WL 6687122, *5-6 (N.D.

15  Cal. Nov. 25, 2014), the court faced the same jurisdictional argument that NXP now presents and

16  found it unpersuasive. In fact, the jurisdictional question was not even a "close" one. *Id.* at *7.

17  There, the court denied the plaintiff's motion for a permanent injunction, the plaintiff appealed that

18  denial to the Federal Circuit and, a few days later, filed its motion for ongoing royalties with the

19  district court. *Id.* at *1. The defendant argued that the appeal divested the district court of

20  jurisdiction over the ongoing royalties question because it involved "issues common to a permanent

21  injunction." *Id.* at *5. But the district court found the "theory that ongoing royalties are inextricably

22  bound to the permanent injunction appeal [wa]s not supported by the law." *Id.* at *6 (citing *Griggs

23  v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Paige v. Cal.*, 102 F.3d 1035, 1039

24  (9th Cir. 1996)).

25          The court further explained the "inextricably bound" standard: "predicate issues that are

26  necessary to resolution of an injunction are 'inextricably bound up with' an interlocutory appeal

27  and thus removed from the district court's jurisdiction during the appeal." But it does not extend to

28

a "mere factual overlap between issues." *Id.* The *Apple* court retained jurisdiction because "determining [the plaintiff's] entitlement to ongoing royalties was not necessary for resolving [the plaintiff's] permanent injunction motion." *Id.* In fact, the court recognized that permanent injunctions also "require some analysis of liability and remedies," yet the court retained jurisdiction to resolve the parties other post-trial motions. *Id.*

Here, too, the mere factual overlap between Impinj's permanent-injunction appeal and some of the analysis required for the ongoing-royalties hypothetical negotiation does not divest this court of jurisdiction to decide Impinj's motion. The injunction requires an affirmative nexus finding; the hypothetical negotiation analysis does not. Rather, one factor to consider in setting the ongoing royalty rate is the profits that Impinj anticipates losing due to NXP's continued infringement. Again, Impinj has not asked this court to revisit its nexus determination, but instead to recognize that the royalty rate Impinj would agree to in a hypothetical negotiation would, in part, be informed by the future risk to Impinj's profits. In turn, Impinj has estimated that future risk based on the jury's lost-profit award.

NXP fails to meaningfully distinguish this case from *Apple*. Like the plaintiff in *Apple*, Impinj also moved for ongoing royalties after the court denied an injunction; as discussed below, it is irrelevant that Impinj included a short discussion of ongoing royalties as an alternative remedy in its motion for injunction to avoid any argument that it waived the issue. NXP is plainly wrong that the defendant in *Apple* "did not identify any specific findings being challenged on appeal … [and] in the district court." Dkt. 482-4 at 6. Rather, the defendant there argued that "that 'the amount of money adequate to compensate Apple' is 'involved in the appeal,'" and specifically argued that the "permanent injunction appeal affects application of the *Georgia–Pacific* factors (for purposes of determining ongoing royalties) because issues such as the probative value of Apple's patent licenses and demand for the patented features must be 're-open[ed].'" *Apple*, 2014 WL 6687122, at *6. But there, as here, the mere factual overlap between the Federal Circuit's and this court's analyses does not divest this court of jurisdiction.

Further, the fact that the district court "terminate[d]" the injunction motion was not a ruling

1  on the royalty question such that Impinj's appeal divested the court of jurisdiction over that

2  question—the court's order did not discuss or even mention ongoing royalties. Dkt. 472. Even if it

3  had, the appellate court would not have jurisdiction over the ongoing-royalties portion of the order

4  anyway. Impinj's interlocutory appeal derives jurisdiction from the exception to the finality rule

5  found in 28 U.S.C. § 1292(c)(1). That statute allows an appeal of an injunction order before entry

6  of a final judgment. There is a similar exception in § 1292(c)(2) for cases that are final except for

7  an accounting. But neither exception to the finality rule encompasses a ruling on ongoing royalties,

8  which must be determined before the court can enter final judgment. *See Warsaw Orthopedic, Inc.*

9  *v. NuVasive, Inc.*, 515 F. App'x. at 882 (ongoing royalties do not fall into the finality exception

10  under § 1292(c)). Therefore, the Federal Circuit would not have jurisdiction over the ongoing

11  royalties question and, accordingly, this court could not have been divested of jurisdiction to decide

12  Impinj's motion.

13            **2.      Impinj's motion for an ongoing royalty was procedurally proper**

14            NXP cites no authority to support its theory that Impinj's motion was improper because its

15  prior motion for a permanent injunction included an alternative request for ongoing royalties. There

16  is plainly no rule prohibiting Impinj from having filed the present motion. *See* LR 7-1 and 7-2.

17            As it was permitted to, Impinj's motion for a permanent injunction sought an ongoing

18  royalty as alternative relief. Dkt. 447 at 19-20. Had Impinj not included that alternative request in

19  its injunction motion, NXP surely would have argued for forfeiture, as the defendant unsuccessfully

20  did in *Apple*. 2014 WL 6687122, at *5. Impinj elected not to expansively brief the ongoing royalties

21  point in its motion for a permanent injunction because, like the plaintiff in *Apple*, Impinj was weary

22  of "tak[ing] the conflicting position that money damages are inadequate, while simultaneously

23  proposing money damages to remedy the infringement." *Id.*

24            However, Impinj's alternative request for ongoing royalties, made out of an abundance of

25  caution to avoid a forfeiture argument, does not limit the evidence or arguments that Impinj can

26  make to support its present ongoing-royalty request. [1] NXP cites no authority to support this

27  _____

28  [1] In the event that the court limits Impinj to its one-page placeholder argument, that argument at least set 9% as the floor for an ongoing royalty based on the '597 patent. *See* Dkt. 447 at 19-20.

IMPINJ'S REPLY ISO MOTION FOR
SUPPLEMENTAL DAMAGES AND ONGOING
ROYALTY
CASE NO. 4:19-CV-03161-YGR-AGT

1    aggressive ask. Impinj's alternative request was never meant to be its last word on the issue. Impinj

2    did not even request a specific royalty rate in the injunction motion motion—it clearly expected to

3    provide a more fulsome brief in the event that the court denied injunctive relief. *See* Dkt. 447 at 19-

4    20.

5         Moreover, despite NXP's suggestion otherwise, Impinj was not required to move for

6    reconsideration. In fact, there is nothing for the court to "reconsider" at this point, because the

7    court's order denying Impinj's motion for a permanent injunction did not address or even mention

8    ongoing royalties.[2] Dkt. 472; *see* LR 7-9. Above all, the court is empowered to revise "any order

9    or other decision … that adjudicates fewer than all the claims … at any time before the entry of a

10   judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see Mendenhall v. Barber-Greene Co.*,

11   26 F.3d 1573, 1581 (Fed. Cir. 1994), *as corrected on reh'g* (Sept. 14, 1994) (the court may

12   "reconsider any portion of its decision and reopen any part of the case" before entry of final

13   judgment). Thus, although Impinj's present motion was entirely proper, the court is also well within

14   its discretion to consider the motion. To ignore Impinj's motion would be a manifest injustice—

15   NXP would be free to continue infringing effectively unabated. Importantly, NXP cites no prejudice

16   or other harm that would result from the court considering Impinj's motion, and none exists because

17   NXP took advantage of the opportunity to fully respond to the motion.

18   ### 3.    Resolving the motion now is appropriate and will not waste judicial resources

19

20        Resolving these disputes now would be a productive use of judicial resources. The *Apple*

21   court agreed. 2014 WL 6687122, at *7-*8. There, the court considered and granted the plaintiff's

22   request for ongoing royalties while the interlocutory appeal regarding the denial of a permanent

23   injunction was pending; that is exactly the situation here. 2014 WL 6687122, at *1. In *Apple*, the

24   court observed that "ongoing royalties must be addressed before entry of final judgment and appeal

25   of any remaining issues." *Id.* at *7; *see Warsaw*, 515 F. App'x at 882. Delaying resolution,

26   therefore, would "prevent the parties from appealing any remaining issues other than denial of a

27

28   ---

[2] If the court deems it necessary, it should consider the present motion as a motion for leave to seek reconsideration under LR 7-9(b)(3), or simply as a renewed motion for ongoing royalties.

1  permanent injunction." *Apple,* 2014 WL 6687122, at *7.

2  Even if Impinj ultimately obtains the injunctive relief it seeks, that would not moot the

3  ongoing-royalties issue. The court would still have to determine the royalty rate for any

4  infringement prior to issuance of the injunction that is not covered by a supplemental damages

5  award (e.g., after entry of final judgment but before an injunction goes into effect). This becomes

6  particularly important given NXP's request for a ▮▮▮▮▮ sunset provision. *See, e.g., Broadcom*

7  *Corp. v. Emulex Corp.*, No. 09-cv-1058 JVS, 2012 WL 13036855, at *9 (C.D. Cal. Mar. 16, 2012),

8  *aff'd*, 732 F.3d 1325 (Fed. Cir. 2013) (granting trebled royalty rate during sunset period before

9  effective date of injunction); Dkt. 452 at 24.

10  Finally, for both the ongoing royalty and supplemental damages requests, there is no reason

11  to wait for completion of the '302 patent's validity trial, and NXP cites no authority showing

12  otherwise. The jury verdict specifically found $17.68 million in damages attributable to the

13  infringement of the '597 patent *alone*. Dkt. 426 at 6-7. That award clearly was not, as NXP

14  contends, "inextricably intertwined" with the '302 patent damages award. Dkt. 482-4 at 4.

15  Moreover, NXP's "double-counting" concerns are unfounded. Dkt. 482-4 at 15, 18-19. The

16  jury made clear the amount of lost-profit damages that overlapped between the '597 patent and '302

17  patent judgments, and any supplemental damages award for the '302 patent alone could easily

18  account for the overlap by removing the already-awarded amount from the calculation. For any

19  ongoing royalties awarded for the '302 patent, Impinj agrees that the portion that is based on

20  overlapping lost profits should not be included—Impinj is not seeking a double recovery. [3] Rather,

21  the ongoing royalty rate would be subject to a hypothetical-negotiation analysis, which would

22  properly account for the status of the parties, the fact that NXP's products are covered by multiple

23  patents, and any portion of the royalty paid for the '597 patent that overlaps with the recovery on

24  the '302 patent. [4] Notably, although Impinj's requested royalty does not approach NXP's profit

25

26  [3] The rate for the '302 patent could, for example, be calculated the same way that Impinj calculated the '597 patent's ongoing royalty rate. To avoid double counting, that '302 patent would receive the per-unit rate calculated from the combination of the jury's awarded 1.5% reasonable royalty

27  and the portion of lost profits attributable to the '302 patent that did not overlap with the lost profits awarded on the '597 patent.

28  [4] Impinj does not assert that all of its patents are as important as the '597 patent. For example,

1   margin, "[t]here is no rule that a royalty be no higher than the infringer's net profit margin." *See*

2   *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *see also Stickle v.*

3   *Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983) (royalty rate can be higher than the price of

4   the infringing product).

5          NXP cites only one case for the proposition that the court must wait to resolve the '302

6   patent before deciding the ongoing royalty rate for the '597 patent. But *Tomita Techs. USA v.*

7   *Nintendo Co.*, No. 11-Civ.-4256, 2013 WL 4101251 (S.D.N.Y. Aug. 14, 2013), is readily

8   distinguishable. There, the court vacated the jury's damages award as excessive and gave the

9   patentee the option to either accept a 50% reduction in damages or undertake a new trial on

10   damages. *Id.* at *8-*9. Thus, damages for the only at-issue patent—which form the starting point

11   for the ongoing-royalty analysis—were unsettled when the patentee requested an ongoing royalty.

12   *Id.* at *10. Here, by contrast, the pre-verdict damages for the '597 patent are fixed and entirely

13   distinct from the '302 patent damages: the jury indisputably awarded $17.68 million in lost profits

14   and a 3% royalty for infringement of the '597 patent *alone*. Dkt. 426 at 6-7. Thus, the court can

15   readily determine the ongoing royalty rate for NXP's continued infringement of the '597 patent.

16   **II.   CONCLUSION**

17          For the foregoing reasons, and those stated in Impinj's motion, Impinj respectfully requests

18   that the Court grant Impinj supplemental damages and an ongoing royalty at the rates requested in

19   Impinj's motion, and grant an evidentiary hearing to allow Impinj to further support its requested

20   rates.

21

22

23

24

25

26   _____

27   Impinj is currently in trial in Texas against NXP on three patents (originally in the instant case), where it is not seeking lost profits on any of them.  Impinj has consistently asserted, however, that the '597 invention is the primary driver of the sensitivity and range improvements that are
28   embodied in Impinj's Monza R6 and subsequent ICs, and in the infringing UCODE 8 and 9 ICs.

Dated: November 7, 2023

By: /s/ Ramsey M. Al-Salam
    Ramsey M. Al-Salam, Bar No. 109506
    Christina J. McCullough, Bar No. 245944
    Antoine M. McNamara, Bar No. 261980
    Stevan R. Start (admitted *pro hac vice*)
    R. Tyler Kendrick (admitted *pro hac vice*)
    Jessica J. Delacenserie (admitted *pro hac vice*)
    PERKINS COIE LLP
    1201 Third Avenue, 49th Floor
    Seattle, WA 98101
    Tel: 206.359.8000
    Fax: 206.359.9000
    RAlSalam@perkinscoie.com
    CMcCullough@perkinscoie.com
    AMcNamara@perkinscoie.com
    SStark@perkinscoie.com
    RKendrick@perkinscoie.com
    JDelacenserie@perkinscoie.com

    M. Craig Tyler, admitted *pro hac vice*
    PERKINS COIE LLP
    405 Colorado Street, 17th Floor
    Austin, TX 78701
    Tel: 737-256-6113
    CTyler@perkinscoie.com

    Daniel T. Shvodian, Bar No. 184576
    PERKINS COIE LLP
    3150 Porter Drive
    Palo Alto, CA 94304
    Tel: 650.838.4300
    Fax: 650.737.5461
    DShvodian@perkinscoie.com

    Daniel T. Keese, Bar No. 280683
    PERKINS COIE LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR 97209-4128
    Tel: 503.727.2000
    Fax: 503.727.2222
    DKeese@perkinscoie.com

    *Attorneys for Plaintiff Impinj, Inc.*

IMPINJ'S REPLY ISO MOTION FOR
SUPPLEMENTAL DAMAGES AND ONGOING
ROYALTY
CASE NO. 4:19-CV-03161-YGR-AGT

1

## **CERTIFICATE OF SERVICE**

2

3        The undersigned hereby certifies that a true and correct copy of the above and foregoing

4 document has been served via U.S. District Court CM/ECF notification and email on November 7,

5 2023 to all counsel of record.

6

7 Dated: November 7, 2023

8                                                  /s/ *Ramsey M. Al-Salam*
                                                   Ramsey M. Al-Salam

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28