1   Tharan Gregory Lanier (State Bar No. 138784)
    tglanier@jonesday.com
2   Michael C. Hendershot (State Bar No. 211830)
    mhendershot@jonesday.com
3   JONES DAY
    1755 Embarcadero Road
4   Palo Alto, CA  94303
    Telephone:  (650) 739-3939
5   Facsimile:   (650) 739-3900

6   [Additional counsel identified on signature pages]

7   Attorneys for Defendant
    NXP USA, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13  IMPINJ, INC.,                    Case No. 4:19-CV-03161-YGR

14            Plaintiff,             **NXP USA, INC.'S MOTIONS *IN
                                     LIMINE***
15       v.
                                     Trial Date: March 18, 2024
16  NXP USA, INC.,                   Location: Courtroom 1, 4th Floor
                                     Judge: Yvonne Gonzalez Rogers
17            Defendant.

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS............................................................................................................i

I.      MOTION #1:  IMPINJ SHOULD BE PRECLUDED FROM INTRODUCING
        EVIDENCE OF "COPYING" INCLUDING PRODUCT "TEARDOWNS".................1

        A.      Impinj Never Disclosed "Copying" As A Relevant Secondary
                Consideration Of Non-Obviousness During Discovery........................................1

        B.      Impinj's "Copying" Evidence Is Untethered From The Obviousness Of
                The '302 Patent ....................................................................................................3

        C.      Introducing Evidence Of Copying Would Unfairly Prejudice NXP....................3

II.     MOTION #2:  IMPINJ SHOULD BE PRECLUDED FROM ELICITING ANY
        EVIDENCE OR ARGUMENT REGARDING THE COURT'S FINDING OF
        INFRINGEMENT ...............................................................................................................5

        A.      Previous Findings Of Infringement Are Irrelevant To The Question Of
                Invalidity .............................................................................................................5

        B.      Any References To The Finding Of Infringement Is Unfairly Prejudicial
                To NXP, Will Cause Juror Confusion, And Waste Time ....................................6

III.    MOTION #3:  IMPINJ SHOULD BE PRECLUDED FROM REFERENCING
        THE SIZE, WEALTH, OR NUMBER OF EMPLOYEES OF EITHER IMPINJ
        OR NXP .............................................................................................................................8

IV.     MOTION #4:  IMPINJ SHOULD BE PRECLUDED FROM REFERRING TO
        THE '302 PATENT AS THE "ENDURO" PATENT .....................................................10

        A.      Any Nexus Must Be Between The Alleged Secondary Considerations And
                The Claimed Invention In The '302 Patent, Not The Broader "Enduro"
                Feature................................................................................................................11

        B.      The '302 Patent Indisputably Is Not Coextensive With "Enduro" .....................12

        C.      Referring To The '302 Patent As The "Enduro" Patent Unfairly Prejudices
                NXP.....................................................................................................................13

V.      MOTION #5: IMPINJ SHOULD NOT BE PERMITTED TO TELL THE JURY
        THAT THE '302 PATENT IS ENTITLED TO A PRESUMPTION OF
        VALIDITY..........................................................................................................................14

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

4

**CASES**

5

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.2d 1350 (Fed. Cir. 1984)..................................................................................................14

6

7

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
   776 F.2d 281 (Fed. Cir. 1985)....................................................................................................11

8

9

*Asyst Techs., Inc. v. Emtrak, Inc.*,
   544 F.3d 1310 (Fed. Cir. 2008)..................................................................................................11

10

11

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015-JRG-RSP, 2017 WL 2537021 (E.D. Tex. May 30, 2017).........................9

12

13

*Borders v. Arch Aluminum & Glass Co.*,
   No. 07- cv-2188-JPO, 2008 WL 5427711 (D. Kan. Dec. 30, 2008).........................................9

14

15

*C.R. Bard, Inc. v. United States Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004)......................................................................................................5

16

17

*Century Wrecker Corp. v. E.R. Buske Mfg. Co.*,
   898 F. Supp. 1334 (N.D. Iowa 1995).......................................................................................5, 7

18

*Day v. Kraft Foods Glob., Inc.*,
   No. 06-2022-JPO, 2007 WL 9724116 (D. Kan. July 16, 2007) ................................................9

19

20

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988)..................................................................................................11

21

22

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)....................................................................................................6

23

24

*Fox Factory, Inc. v. SRAM, LLC*,
   944 F.3d 1366 (Fed. Cir. 2019)...........................................................................................11, 12

25

26

*HTC Corp. v. Tech. Props. Ltd.*,
   No. 5:08-cv-00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ...................................9

27

*Honda Motor Co. v. Oberg*,
   512 U.S. 415 (1994).....................................................................................................................8

28

*Hurley v. Vendtech-SGI, LLC*,
   No. 16-01222-CV-W-ODS, 2018 WL 1077316 (W.D. Mo. Feb. 26, 2018) ............................9

*ICU Med., Inc. v. RyMed Techs., Inc.*,
   752 F. Supp. 2d 486 (D. Del. 2010) ...............................................................................3

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996) .......................................................................................11

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) .........................................................................................................5

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
   No. 12-cv-9033-RRP, 2017 WL 4161976 (N.D. Ill. Apr. 11, 2017) ...............................4

*Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*,
   70 F.4th 1331 (Fed. Cir. 2023) .......................................................................................4

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91, 131 S. Ct. 2238 (2011) .............................................................................14

*MiiCs & Partners Am. Inc. v. Toshiba Corp.*,
   No. CV 14-803-RGA, 2017 WL 11573565 (D. Del. Oct. 12, 2017) ................................2

*Monsanto Co. v. Bayer Bioscience N.V.*,
   No. 4:00CV01915 ERW, 2005 WL 5989796 (E.D. Mo. Oct. 28, 2005) ...........................2

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*,
   No. CIV.A.05-CV-1887 DMC, 2009 WL 3754170 (D.N.J. Nov. 5, 2009) .....................6, 7

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
   No. 15-cv-5024 (RWS), 2018 WL 6929176 (S.D.N.Y. Dec. 7, 2018) ..............................3

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
   882 F.3d 1056 (Fed. Cir. 2018) .....................................................................................11

*Prometheus Labs., Inc. v. Roxan Labs., Inc.*,
   805 F.3d 1092 (Fed. Cir. 2015) .....................................................................................11

*Richdel, Inc. v. Sunspool Corp.*,
   714 F.2d 1573 (Fed. Cir. 1983) .......................................................................................6

*Roeder v. DIRECTV, Inc.*,
   No. C14-4091-LTS, 2017 WL 11458456 (N.D. Iowa May 31, 2017) ..............................9

NXP USA, INC.'S MOTIONS *IN LIMINE*
Case No. 4:19-CV-03161-YGR

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
   No. CV 17-1023, 2020 WL 6803077 (W.D. Pa. Nov. 19, 2020) ........................................3, 5, 7

*Specialty Rental Tools & Supply v. Boyd's Bit Serv.*,
   84 Fed. Appx. 90 (Fed. Cir. 2003) ...............................................................................6

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).......................................................................................................8

*Tokai Corp. v. Easton Enters., Inc.*,
   632 F.3d 1358 (Fed. Cir. 2011)......................................................................................6

*Viskase Corp. v. Am. Nat'l Can Co.*,
   261 F.3d 1316 (Fed. Cir. 2001)......................................................................................6

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
   683 F.3d 1356 (Fed. Cir. 2012)...............................................................................3, 11

*WSOU Investments LLC v. Google LLC*,
   No. 6:20-cv-00580-ADA, Dkt. 163 (W.D. Tex. Apr. 25, 2023) ...................................3

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001)........................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(e)...........................................................................................................2

Fed. R. Civ. P. 33(d) ..........................................................................................................2

Fed. R. Civ. P. 37 .......................................................................................................1, 2, 3

Fed. R. Evid. 401 ................................................................................................................9

Fed. R. Evid. 402 ....................................................................................................... passim

Fed. R. Evid. 403 ....................................................................................................... passim

Fed. R. Evid. 404 ................................................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.**     **MOTION #1**:  **IMPINJ SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF "COPYING" INCLUDING PRODUCT "TEARDOWNS"**

NXP moves to preclude Impinj from introducing evidence of alleged copying by NXP, including teardown reports by third-parties TechInsights and Science Vision that NXP purchased and any related testimony or attorney argument.  (*See, e.g.*, Exhibits 332 and 333[1]).  Impinj seeks to introduce such evidence despite 1) never identifying "copying" as a secondary consideration of non-obviousness that Impinj intended to rely on during the fact discovery period; 2) never tying its evidence of "copying" to the invention claimed in the '302 patent, and 3) filing its own motion in limine seeking to prevent NXP from rebutting these copying allegations by presenting evidence of its own independent development (*i.e.*, the HITAG product).

Specifically, Impinj's alleged "copying" evidence, including the so-called "teardown reports" that it intends to introduce into evidence are irrelevant to any issue in this narrow trial in which the jury will be asked to decide one issue: whether or not Impinj's '302 patent is obvious in view of the prior art.  The teardown reports depict underlying circuitry utilized by Impinj's chips.  These circuit schematics do not depict or illustrate the large antenna contact pads *at all*.   And nothing in the teardown reports ties any alleged copying by NXP to the claimed invention of the '302 patent.  Indeed, the teardown reports have *no connection whatsoever* to the allegedly patented aspect of large pads, *i.e.*, the shape of the channel between the pads.

This evidence is properly excluded under Federal Rules of Evidence 402 and 403 and Federal Rule of Civil Procedure 37.

**A.**     **Impinj Never Disclosed "Copying" As A Relevant Secondary Consideration Of Non-Obviousness During Discovery**

During discovery, NXP served an interrogatory asking Impinj to describe each secondary consideration it alleges supports its contention that each claim is non-obvious and to "describe all facts and circumstances" that support that contention.  (*See* Ex. A (NXP Interrogatory No. 4 and

---

[1] Unless otherwise indicated, exhibits cited to herein are attached to the Declaration of T. Kaitlin Crowder, filed concurrently herewith.

1   Impinj's Second Supplemental Response dated April 25, 2022).)   Despite supplementing its

2   response twice, and identifying numerous documents pursuant to Rule 33(d), Impinj never once

3   identified "copying" as one of the secondary considerations that it alleges supports its contentions

4   of non-obviousness, instead pointing to only the commercial success and industry praise for Impinj

5   and NXP's products.  And Impinj never identified the teardowns at all.  This warrants exclusion.

6   *See Monsanto Co. v. Bayer Bioscience N.V.*, No. 4:00CV01915 ERW, 2005 WL 5989796, at *9

7   (E.D. Mo. Oct. 28, 2005) (granting motion *in limine* to exclude evidence of secondary

8   considerations that were not identified in response to an interrogatory).

9        Given Impinj's disclosures during fact discovery, it is thus unsurprising that during the

10   original trial on the invalidity of the '302 patent, Impinj's expert Dr. Thompson never testified

11   about NXP's copying (and certainly never pointed to the teardowns) as evidence of non-

12   obviousness to the jury.  (Ex. B (July 12, 2023 Trial Transcript) at 1174:14-1175:16.)  Instead, Dr.

13   Thompson testified only about trade news articles that he claimed described the '302 technology

14   as "new" and NXP's alleged praise of the Enduro technology.  (*Id.*)

15        It is only now, in the run-up to the new trial, that Impinj contends the teardown reports are

16   evidence of copying, and thus, non-obviousness.  They are not.  And Impinj's intention to introduce

17   them as such is a transparent effort to besmirch NXP as a bad actor before the jury.  Other courts

18   have refused to allow evidence of secondary considerations of non-obviousness where such

19   motivation was evident.  *See MiiCs & Partners Am. Inc. v. Toshiba Corp.,* No. CV 14-803-RGA,

20   2017 WL 11573565, at *1 (D. Del. Oct. 12, 2017) (granting MIL barring plaintiff from offering

21   evidence of the commercial success of the accused products where "Plaintiffs seem much more

22   interested in getting the $1,000,000,000 in sales of the accused products in front of the jury than

23   they do of actually being able to prove 'nexus.'").

24        Moreover, a party that fails to provide information as required by Rule 26(e) "is not allowed

25   to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure

26   was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).   This provision is an

27   "automatic" sanction to provide "a strong inducement for the disclosure of material...." *Yeti by*

28   *Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P.

37 advisory committee's note (1993)).  Thus, district courts are given "particularly wide latitude" to issue sanctions under Rule 37(c)(1).  Exclusion is an appropriate remedy under Rule 37(c)(1) even if a party "never violated an explicit court order to produce," and "even absent a showing in the record of bad faith or willfulness."  *Id.*  Because Impinj failed to identify this evidence in response to an interrogatory specifically requesting it, Federal Rule of Civil Procedure 37 precludes use of the teardown evidence now.

**B.      Impinj's "Copying" Evidence Is Untethered From The Obviousness Of The '302 Patent**

Impinj has never attempted to show, much less met its burden to establish, any "nexus between the [alleged] copying and the novel aspects of the claimed invention" which "must exist for evidence of copying to be given significant weight[.]"  *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) (rejecting "copying" as a secondary indicia of non-obviousness even where the accused infringer's internal documents showed that it sought to reformulate its products to match the patentee's products because "that desire extended not just to the inclusion of [the patented sweetener], but to the inclusion of similar sweeteners"); *see also Sherwin-Williams Co. v. PPG Indus., Inc*., No. CV 17-1023, 2020 WL 6803077, at *3 (W.D. Pa. Nov. 19, 2020) (excluding evidence of copying purportedly related to invalidity where there was no nexus).  Without establishing the nexus between its alleged copying evidence, including the teardown reports, and the patented features in this case, this evidence cannot be relevant to any issue that is to be decided by the jury and should be excluded under FRE 402.

**C.      Introducing Evidence Of Copying Would Unfairly Prejudice NXP**

Given the inherently prejudicial nature of copying allegations, courts routinely grant motions *in limine* to preclude evidence of copying because of its limited probative value and potential to mislead the jury.  *See, e.g., ICU Med., Inc. v. RyMed Techs., Inc.,* 752 F. Supp. 2d 486, 493 (D. Del. 2010) (excluding evidence of alleged copying as "not probative" on relevant issues and likely to "cause substantial confusion"); *WSOU Investments LLC v. Google LLC*, No. 6:20-cv-00580-ADA, Dkt. 163 (W.D. Tex. Apr. 25, 2023); *Olaf Sööt Design, LLC v. Daktronics, Inc*., No. 15-cv-5024 (RWS), 2018 WL 6929176, at *1-2 (S.D.N.Y. Dec. 7, 2018) (excluding copying

evidence under FRE 403); *see also Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033-RRP, 2017 WL 4161976, at *2 (N.D. Ill. Apr. 11, 2017) (citing Fed. R. Evid. 404(b)).  The same is true here—Impinj cannot point to any evidence of alleged copying, including the teardown reports, that is "probative" of non-obviousness.  Impinj's purported evidence will serve only to confuse the jury and unfairly prejudice NXP.  On that reasoning alone, evidence of "copying," including the teardowns, are properly excluded under FRE 403.  Compounding the prejudice is Impinj's own motion *in limine*—seeking to exclude NXP from eliciting evidence and testimony on its HITAG product.  But evidence of alleged "copying" is properly rebutted by independent development, which includes NXP's development of the HITAG product.  *See Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1339 (Fed. Cir. 2023) (noting that the "rationale" that "copying. . . [is] flattering praise for inventive features" "only appl[ies], of course if the alleged copyist has in fact copied the patented product rather than independently arrived at a similar design").

FRE 403 also permits the exclusion of evidence that wastes time.  Impinj's alleged "copying" story; untethered from the invention here and unsupported by the evidence, is a side show being misused to mislead the jury and waste time.  The question of obviousness—the only question before the jury—cannot be answered by looking at teardown reports that have no connection to the '302 claimed invention.  If Impinj is permitted to put on its irrelevant "copying" evidence, including the teardown reports, NXP will have to respond—by bringing additional witnesses and presenting additional documentary evidence to combat Impinj's copying allegations.  More specifically, NXP will have to present evidence and testimony of its own independent development of shaped large pads (*i.e.*, the HITAG product).  Excluding irrelevant (and belatedly disclosed) evidence of copying prevents wasting the Court's and the jury's time.

1

2   **II.    <u>MOTION #2</u>:  IMPINJ SHOULD BE PRECLUDED FROM ELICITING ANY**

3   **EVIDENCE OR ARGUMENT REGARDING THE COURT'S FINDING OF**

4   **INFRINGEMENT**

5   After ruling that the claim limitation "the channel is shaped to facilitate a fluid flow from

6   the center to the first and second ends" had no patentable weight, this Court found as a matter of

7   law that NXP infringed all asserted claims of the '302 patent.  A jury then found NXP willfully

8   infringed the '302 patent under that construction.  There is no remaining question concerning

9   infringement for the jury to answer; this new trial exclusively concerns invalidity.  Any evidence

10  or argument on the finding of infringement (or willful infringement) is not only irrelevant under

11  FRE 402 but is also unfairly prejudicial to NXP and should be precluded pursuant to FRE 403.

12  **A.    Previous Findings Of Infringement Are Irrelevant To The Question Of**

13  **Invalidity**

14  The question of invalidity is independent from any question of infringement.   The

15  infringement inquiry focuses on the accused product compared with the claims; invalidity focuses

16  on the disclosures of the prior art.  *See, e.g., C.R. Bard, Inc. v. United States Surgical Corp.*, 388

17  F.3d 858, 861 (Fed. Cir. 2004) (infringement focuses on comparing the claims to the accused

18  device); *KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 406 (2007) (obviousness requires analysis of

19  level of ordinary skill in the art, scope and content of the prior art, and differences between the

20  claims and the prior art).  The jury can understand and answer any question regarding obviousness

21  independent of NXP's liability for infringement of the '302 patent.

22  Given its irrelevance to the issue of invalidity, courts across the country have prevented

23  plaintiffs from referencing a previous finding or stipulation of infringement in front of the jury.  *See*

24  *e.g., Sherwin-Williams Co. v. PPG Indus., Inc.,* No. CV 17-1023, 2021 WL 1110568, at *4 (W.D.

25  Pa. Mar. 23, 2021) (granting motion *in limine* to exclude any reference to a stipulation of

26  infringement finding that "[n]othing in the stipulation helps resolve the merits of the anticipation,

27  obviousness, etc., questions that must be decided by the jury.  A jury of laypersons may fail to

28  appreciate the distinction between 'infringement' and 'invalidity.'"); *Century Wrecker Corp. v.*

1   *E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1345 (N.D. Iowa 1995), on reconsideration in part (Sept.

2   29, 1995) ("Because the validity question is entirely separate from, and is in fact a defense to, an

3   infringement claim, the jury need not be advised that the court has found infringement as a matter

4   of law in order for the jury to make its determination on the validity issue."); *Novartis Pharms.*

5   *Corp. v. Teva Pharms. USA, Inc.,* No. CIV.A.05-CV-1887 DMC, 2009 WL 3754170, at *14 (D.N.J.

6   Nov. 5, 2009) (granting motion *in limine* to exclude reference to a stipulation of infringement.).[2]

7       Moreover, it is a well-established principle of patent law that a defendant cannot infringe

8   an invalid patent. *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1320 (Fed.

9   Cir. 2009) ("[I]nvalid claims cannot give rise to liability for infringement."); *Viskase Corp. v. Am.*

10  *Nat'l Can Co.,* 261 F.3d 1316, 1323 (Fed. Cir. 2001) ("an invalid claim can not be infringed"); *see*

11  *also Specialty Rental Tools & Supply v. Boyd's Bit Serv.,* 84 Fed. Appx. 90, 92 (Fed. Cir. 2003)

12  ("invalid claims cannot be infringed"); *Richdel, Inc. v. Sunspool Corp.,* 714 F.2d 1573, 1580 (Fed.

13  Cir. 1983) ("The claim being invalid there is nothing to be infringed."). Unless and until the jury

14  decides invalidity in Impinj's favor, the previous finding of infringement is irrelevant. Thus, Impinj

15  should be foreclosed from representing to the jurors that NXP "infringes" its patent, is an

16  "infringer," or has been found to "willfully infringe" the '302 patent.

17      **B.**    **Any References To The Finding Of Infringement Is Unfairly Prejudicial To**

18          **NXP, Will Cause Juror Confusion, And Waste Time**

19      Allowing Impinj to reference the prior finding of infringement would mislead and confuse

20  the jury and waste time, also requiring exclusion under FRE 403. Such references will confuse and

21  mislead the jurors into thinking that the issue of infringement is somehow tied to the issue of

---

23

24      [2] Any argument that Impinj makes that it must be permitted to discuss infringement with
the jury to prove the secondary consideration of copying should be rejected. At the outset, Impinj
did not identify copying as a secondary consideration it intended to rely on in its interrogatory

25  responses during the fact discovery period. *See NXP's MIL #1.* But even if Impinj is permitted to
put on evidence of "copying" as a secondary consideration, a finding of infringement, and even

26  willful infringement is not coextensive with a finding of copying. *See Novartis*, 2009 WL 3754170,
at *14 (rejecting Plaintiff's argument that evidence of the stipulation of infringement was necessary

27  to show the secondary consideration of copying.); *Tokai Corp. v. Easton Enters., Inc.,* 632 F.3d
1358, 1370 (Fed. Cir. 2011) (stipulation of infringement is unpersuasive evidence of copying

28  because copying "requires evidence of efforts to replicate a specific product." (citation omitted)).

1   obviousness that they are being asked to decide, and the implication that NXP has already been

2   found to be the "wrongdoer" will unfairly prejudice NXP and lead the jurors to believe that

3   infringement should factor into their decision regarding invalidity.  *See e.g., Sherwin-Williams Co.*

4   *v. PPG Indus., Inc.,* No. CV 17-1023, 2021 WL 1110568, at *4 (W.D. Pa. Mar. 23, 2021) (granting

5   motion *in limine* to exclude any reference to a stipulation of infringement because "[n]othing in the

6   stipulation helps resolve the merits of the anticipation, obviousness, etc., questions that must be

7   decided by the jury[, and] [a] jury of laypersons may fail to appreciate the distinction between

8   'infringement' and 'invalidity.'"); *Novartis*, 2009 WL 3754170, at *14 ("The admission of

9   [infringement stipulation] evidence will only serve to mislead and confuse the jury."); *Century*

10  *Wrecker*, 898 F. Supp. at 1345 ("The jury could conclude on the improper basis of the court's prior

11  finding of infringement as a matter of law, that the patents infringed must be valid. . . Thus, the

12  relevance of the prior decision is substantially outweighed by its prejudicial effect.").  Moreover,

13  NXP will need to present evidence of its own good faith independent development (*i.e,* the HITAG

14  product) in an effort to rebut the unfair implications Impinj seeks to cast on the issue of invalidity.

15      Admitting evidence of infringement or willful infringement at trial also would waste trial

16  time.  *See* Fed. R. Evid. 403 (providing that evidence can be excluded in light of considerations

17  such as "waste of time").  This jury will be asked to address one focused issue: whether

18  Impinj's '302 patent is invalid in view of the prior art.  If Impinj is permitted to reference the

19  infringement and/or willful infringement finding, NXP will need to correct any misconception the

20  jurors will take away from these types of arguments, and combat Impinj's efforts to paint NXP as

21  a bad actor.

22      This evidence and/or argument should be precluded under FRE 402 and 403.

23

24

25

26

27

28

1    **III.    MOTION #3:  IMPINJ SHOULD BE PRECLUDED FROM REFERENCING THE**

2                **SIZE, WEALTH, OR NUMBER OF EMPLOYEES OF EITHER IMPINJ OR NXP**

3          In Pretrial Order No. 1 for the first jury trial, this Court issued a standard motion *in limine*

4    prohibiting any "reference to or evidence presented of wealth or lack thereof of any party except in

5    the punitive damage phase of a case, to the extent it exists." (Dkt. 376 at 2.)  Throughout the trial,

6    Impinj repeatedly circumvented the purpose of the rule—for example, referring to Impinj as a

7    "small company" with "400 employees" that "don't really have the time or money or desire to just

8    pay lawyers." (*See e.g.*, Ex. C (July 5, 2023 Trial Tr.) at 125:11-14; Ex. D (July 6, 2023 Trial Tr.)

9    at 237:24-238:7; Ex. E (July 13, 2023 Trial Tr.) 1257:15-19.)  Impinj's lawyers and witnesses

10   repeatedly contrasted Impinj's size and implied value of Impinj with NXP's, referring to NXP as a

11   "large multinational headquartered in the Netherlands with, according to their filings, 33,000

12   employees." (Ex. D at 238:9-11.)  Despite being unable to articulate why any of this information

13   would be relevant for this retrial, Impinj refused to agree to NXP's proposed motion *in limine*.  The

14   reason seems clear—despite the irrelevance and unfair prejudice, Impinj wants to continue to push

15   its David v. Goliath narrative to garner sympathy from the jury.   But statements on size, wealth,

16   and/or number of employees of the company are irrelevant to any issue at the retrial (which is

17   limited to invalidity), unfairly prejudicial to NXP, and should be excluded under FRE 402 and 403.

18         As the Supreme Court has recognized, plaintiffs like Impinj frequently want to push a David

19   v. Goliath narrative in order to "create[] the potential that juries will use their verdicts to express

20   biases against big businesses." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417

21   (2003) (quoting *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432 (1994)). There is no question that

22   Impinj wants to continue to spin its narrative that NXP is a large multi-national conglomerate with

23   thousands of employees, while Impinj is a smaller U.S. based company with just hundreds of

24   employees in an attempt to paint NXP in a bad light, as it has done in every previous jury trial

25   against NXP.   The size, wealth and number of employees of the parties has nothing to do with the

26   issue of the invalidity of the '302 patent.

27         As these characterizations and evidence have no relation to the claims, are unfairly

28   prejudicial, and are likely to mislead the jury, courts routinely preclude such characterizations and

1  evidence under FRE 402 and FRE 403.  *See, e.g.*, *HTC Corp. v. Tech. Props. Ltd.,* No. 5:08-cv-

2  00882-PSG, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) ("The court finds that the probative

3  value of evidence related to [defendant's] size, wealth, or overall revenues is substantially

4  outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury ...."); 

5  *Roeder v. DIRECTV, Inc.,* No. C14-4091-LTS, 2017 WL 11458456, at *3 (N.D. Iowa May 31,

6  2017) (granting "David and Goliath" evidence motion *in limine*, ruling that "evidence and argument

7  related to DIRECTV's size and wealth in comparison to plaintiffs' shall be excluded"); *Biscotti*

8  *Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2537021, at *1-2 (E.D. Tex. May

9  30, 2017) (precluding references "to Microsoft's overall size, net worth, market capitalization, or

10  stock value"); *Borders v. Arch Aluminum & Glass Co.*, No. 07- cv-2188-JPO, 2008 WL 5427711,

11  at *3 (D. Kan. Dec. 30, 2008) ("Applying the standard of relevance set out in Fed. R. Evid. 401,

12  the court finds the so-called 'David and Goliath' evidence is irrelevant to the claims in this case.");

13  *Day v. Kraft Foods Glob., Inc.*, No. 06-2022-JPO, 2007 WL 9724116, at *2 (D. Kan. July 16, 2007)

14  (granting motion *in limine* finding that "the so-called 'David and Goliath' evidence is irrelevant to

15  the claims in this case."); *Hurley v. Vendtech-SGI, LLC*, No. 16-01222-CV-W-ODS, 2018 WL

16  1077316, at *1 (W.D. Mo. Feb. 26, 2018) (granting motion *in limine* to exclude "David and

17  Goliath" evidence because "[i]n the eyes of the law, there is no difference between Plaintiff and

18  Defendant.")

19      Accordingly, the Court should preclude any reference to the size, wealth, and number of

20  employees of NXP or Impinj in this case.

21

22

23

24

25

26

27

28

1  **IV.    MOTION #4:  IMPINJ SHOULD BE PRECLUDED FROM REFERRING TO THE**

2  **'302 PATENT AS THE "ENDURO" PATENT**

3  The upcoming trial is confined to a narrow issue:  the invalidity of the '302 patent.  In

4  response to NXP's invalidity case, NXP expects Impinj to allege certain secondary considerations

5  of non-obviousness, including commercial success and industry praise.  Much of the evidence of

6  these purported secondary considerations that Impinj has identified is directed to or generally

7  describes Impinj's "Enduro" marketing name, which references a collection of multiple features of

8  its large antenna contact pads.  "Enduro" is not coextensive with the invention claimed in the '302

9  patent.  It is a loosely defined marketing term that applies to all aspects of the large pads.  As

10  Impinj's CEO Chris Diorio testified:

11  Q:  What are Enduro pads?

12  A:  Enduro is the marketing name that we use for the large pads on a contact island.  Enduro
    is not itself precisely defined because it is the marketing term.  It has become to be

13  known as the Impinj large pads as you see them today on Monza R6 and M700, but it's
    a somewhat loosely defined marketing term for our invention and subsequent bringing

14  to the market of big pads, the raised contact islands.

15  (Ex. F (Diorio Apr. 14, 2022 Dep. Tr.) at 286:12-20; *id.* at 317:21-319:15; *see also*, Ex. G (Diorio

16  Apr. 13, 2022 Dep. Tr.) at 99:22-101:3 ("Enduro is a set of large contact pads on the surface of the

17  IC to make contact with an antenna…And by creating these big pads, we create a larger surface

18  area, which had a variety of benefits, which I'm sure we're going to get into.  But these big pads

19  were essentially Enduro.").)  Beyond the size of the pads, Impinj has touted the "thick repassivation

20  layer overlaying the IC" and the "rugged connection with low resistivity, low RF parasitics, tight

21  manufacturing tolerances, and a mechanically tough connection."  (Ex. H at 2.)

22  But in order for any alleged commercial success or industry praise to be probative of the

23  question of obviousness, Impinj must establish a nexus to the specific invention claimed in the '302

24  patent, which nowhere mentions "Enduro."  The commercial success or industry praise of the

25  broader "Enduro" suite of features is not enough.  Allowing Impinj to refer to the '302 patent as

26  the "Enduro" patent will confuse the issues before the jury and create the false perceptions that (1)

27  the '302 patent is coextensive with "Enduro," and (2) any commercial success or industry praise

28  tied to "Enduro" constitutes a legally and factually sufficient nexus to the '302 patent.  There is no

probative value whatsoever in referring to the '302 patent as the "Enduro" patent.  Therefore, such references would be unfairly prejudicial to NXP and should be excluded.

**A.**     **Any Nexus Must Be Between The Alleged Secondary Considerations And The Claimed Invention In The '302 Patent, Not The Broader "Enduro" Feature**

"For secondary considerations to have probative value, the decision maker must determine whether there is a nexus between the merits of the claimed invention and the secondary considerations."  *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985); *see also Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) (rejecting evidence of commercial success where "the evidence [did] not show that the success of [the patentee's] product was directly attributable to [the claimed invention]").  And to the extent Impinj seeks to rely on secondary considerations, it is Impinj's burden to produce evidence of that nexus.  *Prometheus Labs., Inc. v. Roxan Labs., Inc.*, 805 F.3d 1092, 1101-1102 (Fed. Cir. 2015) (affirming decision placing burden of proof on patentee to demonstrate nexus).

"[Commercial] success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention—as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter."  *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).  "When the thing that is commercially successful is not coextensive with the patented inventions—for example, if the patented invention is only a component of a commercially successful machine or process—the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold."  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).  "Put another way, 'objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support.'"  *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (quoting *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008)).  "A patent claim is not coextensive with a product that includes a 'critical' unclaimed feature that is claimed by a different patent and that materially impacts the product's functionality[.]"  *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1375 (Fed. Cir. 2019).

**B.**    **The '302 Patent Indisputably Is Not Coextensive With "Enduro"**

The '302 patent claims a only narrow aspect—the shape of the channel between the large-pads that Impinj markets as "Enduro"—and does not claim other "critical" elements of the feature that "materially impact[] the product's functionality." *Fox Factory*, 944 F.3d at 1375.  In a "Summary of Benefits" in a white paper meant "to explain to the industry what Enduro was" (Ex. F (Diorio Apr. 14, 2022 Dep. Tr.) at 311:6-312:15), Impinj described the "key facts revealed by [Impinj's] tests" of its "Enduro" large pads as:

- "connection resistance" that "improves inlay sensitivity and reduces sensitivity variability";
- wider tolerance of assembly parameters "such as thermode force, and can be done faster with reduced inlay tuning variability";
- "[a] much larger connection area" that "allows for far more connection points between the IC and the inlay, which improves reliability relative to a bumped IC";
- A "surface [that] is more mechanically robust and less likely to crack when stressed in printers, assembly, and converter machines, because the IC is flat."

(Ex. H at 2-3 (Ex. 17 to the Diorio Apr. 14, 2022 Dep. Tr.).)  In that same white paper, Impinj touted the large surface area of the pads, each of which "cover[] nearly 50% of the IC area"; the "thick repassivation layer overlaying the IC"; and the "rugged connection with low resistivity, low RF parasitics, tight manufacturing tolerances, and a mechanically tough connection."  (*Id.* at 2.) Additional alleged benefits of "Enduro" are described in more detail in the "How to use Enduro" section and in a number of test results showing purported advantages of "Enduro" (*id.* at 3-10), none of which tout facilitating fluid flow to reduce misalignment—the purpose of the invention claimed in the '302 patent.  (*See* Ex. K at, *e.g.*, Title (RFID Integrated Circuits With Channels For Reducing Misalignment); Abstract ("the channel facilitates the flow of liquid adhesive so as to reduce the turbulence and the propagation velocity…thereby reducing misalignment…"); Claim 1 ("the channel is shaped to facilitate a fluid flow from the center to the first and second ends").)

Impinj also has multiple patents that it claims cover "Enduro."  (Ex. H at 11 ("Enduro is covered by U.S. Pat. Nos. 8,188,927, 8,511,569, and 8,614,506.  Multiple additional patent

1    applications are pending.").)  Notably, in this very litigation Impinj asserted a second patent it

2    claimed was embodied by its "Enduro" pads (the '631 patent).[3]  In opining on reasonable royalty

3    rates for the '302 and '631 patents, Impinj's damages expert concluded that the '631 patent

4    contributed 75% of the technical value to NXP's competing "large pads," whereas the '302 patent

5    contributed only 25%.  (Ex. I (Kindler Rep.) at ¶ 175(b); Ex. J (Kindler Dep. Tr.) at 27:13-18 ("so

6    [Impinj employee Ron Oliver's] reasonable allocation was 75/25 split between those two patents;

7    meaning that, in his view…the teachings of the '631 patent …had relatively more contribution to

8    big pads than the channel configuration taught by the '302 patent.").)

9    **C.    Referring To The '302 Patent As The "Enduro" Patent Unfairly Prejudices**

10   **NXP**

11          There is no probative value to referring to the '302 Patent as the "Enduro" patent.  Indeed,

12   there is no probative value in referring to the patent as anything except "the '302 patent."  But

13   allowing Impinj to refer to the '302 patent as the "Enduro" patent when that patent indisputably is

14   not coextensive with the "loosely defined marketing term" "Enduro" would be unfairly prejudicial

15   to NXP.  As discussed above, for Impinj's alleged secondary considerations to even be relevant to

16   non-obviousness, there must be a nexus to the claimed invention.  Referring to the '302 patent as

17   the "Enduro" patent will confuse the issues and mislead the jury into believing that Impinj has

18   satisfied its burden to demonstrate the required nexus merely by establishing the commercial

19   success or industry praise of "Enduro" as a feature, regardless of whether that success or praise is

20   attributable to the shape of the pads.

21                              *      *      *

22          To be clear, in this motion *in limine*,  NXP does not seek to preclude Impinj from offering

23   evidence to meet its burden of production to show that the requisite nexus between the '302 patent

24   and alleged secondary considerations of non-obviousness exists.   NXP's request is narrow.

25   Because of the unfair prejudice to NXP, NXP asks the Court to preclude Impinj from referring to

26   the '302 patent as the "Enduro" patent pursuant to FRE 402 and 403.

27   _____

28          [3] The Court granted summary judgment of no infringement of the '631 patent.  (Dkt. 339.)

V.     **MOTION #5: IMPINJ SHOULD NOT BE PERMITTED TO TELL THE JURY THAT THE '302 PATENT IS ENTITLED TO A PRESUMPTION OF VALIDITY**

The rationale for the presumption of validity for patents is based on "the basic proposition that a government agency such as the [PTO] was presumed to do its job." *American Hoist & Derrick Co. v. Sowa & Sons, Inc*., 725 F.2d 1350, 1359 (Fed. Cir. 1984).  But if "the PTO did not have all material facts before it, its considered judgment may lose significant force." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2241 (2011).

Here, the claims of the '302 patent include a limitation that recites "the channel is shaped to facilitate a fluid flow from the center to the first and second ends."  The claim limitation, as originally filed, read:  "the channel is shaped to facilitate a fluid flow from the center of the channel to the end of the channel."  During the prosecution of the '302 patent, the Examiner specifically recognized this as a substantive limitation, noting that prior art reference Koepp disclosed "the channel is shaped to facilitate a flow of the fluid adhesive from the center of the channel to the end of the channel during the attaching (see figure 12). (See ['302 patent] col. 2, lines 5-15; and col. 11, lines 12-51)." (Ex. L at 6 (Non Final Rejection at 5).)  In response, Impinj amended the claims to include, among other things, the current "fluid flow" recitation ("the channel is shaped to facilitate a fluid flow from the center to the first and second ends") and argued that Koepp was not anticipatory.  (Ex. L at 9-18 (Claim Amendments at 2 and Applicant Remarks).)  After Impinj amended the claim, the '302 patent was allowed.

In granting summary judgment of infringement, unlike the Examiner and Impinj during prosecution, this Court deemed the "facilitating flow" limitation to be merely a statement of purpose and non-substantive.  (Dkt. 339 at 11.)  Impinj never argued to the Patent Office or advised the Patent Office of its belief that the "facilitating flow" limitation was non-substantive nor did the Examiner suggest an understanding that the limitation was anything other than substantive in examining and allowing the claims.  At trial, Impinj argued that the 70 searches the Patent Office ran on this application and the "presumption" that the Examiner was "competent" in running those searches supported the non-obviousness of the '302 patent.  (Ex. E (July 13, 2023 Trial Tr.) at 1263:17-19; 1270:24-1271:5.)  But however many searches were run, and however "competent"

the Examiner is presumed to be, the Examiner examined the '302 patent application with the assumption that facilitating fluid flow was a substantive limitation, not a statement of purpose. The Examiner did not run prior art searches or consider the claims as the Court has construed them to determine whether the claims were patentable over the prior art. And the Court's construction is material. Indeed, the Court's finding that NXP's products infringed the '302 patent flows directly from its finding that the facilitation of fluid flow recited in the claims was nothing more than a statement of purpose. As Impinj never made the "statement of purpose" argument to the Patent Office, the Patent Office did not have all material facts before it during prosecution, and it cannot be said that the Patent Office found the claims—as construed by this Court to no longer have a substantive limitation—patentable over the prior art. Thus, the presumption of validity has "los[t] significant force" and Impinj should not be permitted to argue to the jury that the Patent Office examined the '302 patent, found it valid over the prior art, and issued it.

Allowing Impinj to argue to the jury that the Patent Office already examined the patent and that it is entitled to a presumption of validity would unfairly prejudice NXP and waste time contrary to FRE 403. In response to this argument, NXP would need to spend time explaining the patent prosecution history, including the original claims filed, the amendments made to the claims, the arguments that Impinj made to the examiner that led to granting the patent, and this Court's summary judgment ruling. None of this testimony is otherwise necessary; the jurors simply need to examine NXP's prior art and the claims of the '302 patent (with the Court's construction) and determine if the claims are obvious.

NXP respectfully requests that Impinj be precluded from making arguments or eliciting testimony regarding the Patent Office's review and allowance of the '302 patent and from arguing that Impinj is entitled to a presumption of validity.

1    Dated: January 19, 2024          JONES DAY

2

3                                     By:/s/ T. Kaitlin Crowder

4                                         T. Kaitlin Crowder

5                                     Tharan Gregory Lanier
                                      (California State Bar No. 138784)
6                                     tglanier@jonesday.com
                                      Michael C. Hendershot
7                                     (California State Bar No. 211830)
                                      mhendershot@jonesday.com
8                                     Gurneet Singh
                                      (California State Bar No. 333711)
9                                     gsingh@jonesday.com
                                      JONES DAY
10                                    1755 Embarcadero Road
                                      Palo Alto, CA 94303
11                                    Telephone:  (650) 739-3939
                                      Facsimile:  (650) 739-3900
12
                                      Thomas W. Ritchie (admitted *pro hac vice*)
13                                    (Illinois State Bar No. 6301954)
                                      twritchie @jonesday.com
14                                    Lisa L. Furby (admitted *pro hac vice*)
                                      (Illinois State Bar No. 6312855)
15                                    lfurby@jonesday.com
                                      John M. Michalik (admitted *pro hac vice*)
16                                    (Illinois State Bar No. 6280622)
                                      jmichalik@jonesday.com
17                                    Timothy J. Heverin (admitted *pro hac vice*)
                                      (Illinois State Bar No. 6243107)
18                                    tjheverin@jonesday.com
                                      JONES DAY
19                                    110 North Wacker Drive, Suite 4800
                                      Chicago, IL 60606
20                                    Telephone:  (312) 782-3939
                                      Facsimile:  (312) 782-8585
21
                                      Yury Kalish (admitted *pro hac vice*)
22                                    (D.C. State Bar No. 1020172)
                                      ykalish@jonesday.com
23                                    Tracy A. Stitt (admitted *pro hac vice*)
                                      (D.C. State Bar No. 1015680)
24                                    tastitt@jonesday.com
                                      Robert Levent Herguner (admitted *pro hac vice*)
25                                    (New York State Bar No. 5722228)
                                      rlherguner@jonesday.com
26                                    JONES DAY
                                      51 Louisiana Ave., N.W.
27                                    Washington, D.C. 20001
                                      Telephone:  (202) 879-3939
28                                    Facsimile:  (202) 626-1700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

T. Kaitlin Crowder (admitted *pro hac vice*)
(Ohio State Bar No. 0095796)
Robert M. Breetz (admitted *pro hac vice*)
(Ohio State Bar No. 0098968)
kcrowder@jonesday.com
JONES DAY
901 Lakeside Ave. E.
Cleveland, OH 44114
Telephone:  (216) 586-7347
Facsimile:  (216) 579-0212

Matthew J. Silveira
(California State Bar No. 264250)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
msilveira@jonesday.com

Attorneys for Defendant
NXP USA, INC.