United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IMPINJ, INC.,** <br><br>      Plaintiff, <br><br>    v. <br><br> **NXP USA, INC.,** <br><br>      Defendant. | Case No.  19-cv-03161-YGR <br><br> **PRETRIAL ORDER NO. 2A RE: DAMAGES AND MOTIONS *IN LIMINE* FOR SECOND TRIAL** <br><br> Re: Dkt. Nos. 498, 499, 500. |

In anticipation of the upcoming trial readiness conference, the Court issues the following orders, including those with respect to the parties' motions *in limine* ("MIL"), namely, plaintiff Impinj, Inc.'s ("Impinj") MIL No. 1, and defendant NXP USA, Inc.'s ("NXP") MIL Nos 1–5. (*See* Dkt. Nos. 498, 500.)

## I.     DAMAGES AND INJUNCTIVE RELIEF

The Court understands from the parties' filings that there is no anticipation of a damages phase with respect to the retrial on the '302 patent.  Accordingly, the parties shall file a stipulation by **Noon on February 1, 2024** which specifies the damages to be awarded in the event of a finding in favor of the plaintiff, or alternatively, a finding in favor of the defendant.

The parties have failed to provide the Court with a statement regarding any evidentiary presentation on the issue of injunctive relief.  (*See* Dkt. No. 493 at 5–6.)  Each shall do so by **Noon on February 1, 2024.**

## II.     NXP MILS

### A.     NXP MIL No. 1: Copying of Products Embodying the '302 Patent

NXP moves for an order precluding Impinj from presenting evidence or testimony of NXP's alleged copying of products embodying the '302 patent.  (*See* Dkt. No. 498 at 1–4.)

NXP's motion makes three separate arguments: first, that under Federal Rule of Civil Procedure 37, Impinj should be precluded from introducing any evidence of copying as a secondary consideration of nonobviousness, because it failed to disclose or identify such evidence in its contention interrogatory responses.  Second, NXP argues that Impinj's purported evidence of copying (e.g., NXP teardown reports of Impinj products) are irrelevant because Impinj fails to demonstrate "a nexus between the copying and the novel aspects of the claimed invention [which] must exist for evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012).  Finally, because the teardown reports are at best minimally probative, NXP argues that introducing them would unfairly prejudice NXP by painting it as a bad actor.

With respect to the procedural arguments, Rule 37 provides that a party who fails to adequately disclose information under Rule 26 (a) or (e) is precluded from using that information as evidence at trial, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Impinj does not dispute that it did not identify evidence of copying as a secondary consideration of nonobviousness in its interrogatory responses, and instead argues that it did not need to do so because NXP has the burden of proving invalidity and setting forth its contentions in detail.  The Court is not persuaded.  Rule 26(a) or (e) does not address burden. Parties are required to identify and disclose evidence they intend to rely upon at trial, and to supplement those disclosures when additional information is discovered.

Thus, the Court determines whether this particular failure was justified or harmless.  Here, the core evidence at issue, NXP's teardown reports, are in the possession of the parties and were produced in this litigation.  Further, both parties' experts opined on this issue during the first trial, and this issue was not raised at that juncture.  (*See* Dkt No. 437 at 1042:9–12 (Impinj's expert opined as to copying as a secondary consideration of nonobviousness, and NXP elicited its own expert testimony specifically to rebut that argument.))  In fact, NXP also elicited fact testimony from its witnesses to rebut allegations of copying, which NXP cites to now in opposition to Impinj's motion *in limine*.  (*See* Dkt. No. 505-3 at 977:5–10; 980:7–22; 982:21–984:6.) Importantly, Impinj's theory of copying relates exclusively to alleged copying by NXP, and not

United States District Court
Northern District of California

1   any third parties.  The Court finds no undue prejudice.  NXP is aware of the issue and in

2   possession of any evidence required to rebut it.

3          With respect to the substantive issues, the Court is similarly unpersuaded.  It is well

4   established that "evidence that a competitor has copied a product embodying the patented

5   invention can be an indication of nonobviousness." *Wm. Wrigley Jr.*, 683 F.3d at 1364; *see also*,

6   *Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000) ("Another

7   indicia of non-obviousness of a product is the acclamations it receives when it is released, and the

8   copying that occurs.").  NXP argues that Impinj must (and has failed to) demonstrate "a nexus

9   between the copying and the novel aspects of the claimed invention [which] must exist for

10  evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr.*,

11  683 F.3d at 1364.  The Court finds that this argument goes to the weight of the evidence presented,

12  and does not warrant exclusion on a motion *in limine*.  Impinj should be permitted to introduce the

13  teardown reports as relevant to NXP's state of mind with copying, as "where there is evidence of

14  actual copying efforts, that evidence is always relevant." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941

15  F.3d 1133, 1138 (Fed. Cir. 2019).  NXP, for its part, will be permitted to introduce its own

16  evidence to rebut Impinj's evidence, and demonstrate that there is no nexus between the copying

17  and the '302 patent. (*See* Section III, *infra*.)  Ultimately, it will be the jury's role as factfinder to

18  determine how much weight to give this evidence in the overall obviousness analysis.

19         For the foregoing reasons, NXP's MIL No. 1 is **DENIED.**

20     **B.     NXP MIL No. 2:  Prior Finding of Infringement**

21         NXP's second MIL requests the Court enter an order precluding Impinj from making any

22  reference to the Court's finding that NXP infringed all asserted claims of the '302 patent, on the

23  grounds that such reference would be entirely irrelevant to issues of validity and unduly

24  prejudicial to NXP by painting it as a bad actor.  (*See* Dkt. No. 498 at 5–7.)  Impinj counters that

25  evidence of infringement is relevant as it goes to the commercial success of products embodying

26  the '302 patent, which is a secondary consideration of nonobviousness, and that any prejudice may

27  be mitigated by a limiting instruction.  (*See* Dkt. No. 506 at 4–6.)

28         Under established Federal Circuit law, "[t]he the success of an infringing product is

United States District Court
Northern District of California

considered to be evidence of the commercial success of the claimed invention" and is therefore a relevant secondary consideration of nonobviousness. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). NXP cites a number of cases in which courts have excluded infringement findings in validity trials, but the plaintiffs in those cases did not appear to rely upon (or could not have relied upon[1]) evidence of the commercial success of an infringing product in their validity cases. However, when plaintiffs do allege such success as a relevant consideration, courts appear to permit such evidence. *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, No. 06-cv-100-JD, 2010 WL 1451171, at *1 (D.N.H. Apr. 8, 2010) (permitting evidence of infringement in validity trial as evidence of commercial success of infringing product); *Innovention Toys, LLC v. MGA Ent., Inc.*, No. 07-6510, 2012 WL 5384933, at *1–2 (E.D. La. Nov. 1, 2012) (same).

Because Impinj is entitled to present evidence of the commercial success of an infringing product as evidence of nonobviousness, the Court **DENIES** NXP's MIL No. 2. The parties are instructed to submit a proposed limiting instruction as to the Court's finding of infringement.

## C.    NXP MIL No. 3: Relative Size of Companies

NXP's third MIL requests the Court enter an order precluding Impinj from referencing the "size, wealth or number of employees of either Impinj or NXP." (Dkt. No. 498 at 8.) NXP argues that Impinj's testimony at the prior trial repeatedly tried to contrast the parties' sizes and wealth to create a "David v. Goliath" narrative, and violated the Court's standard motion *in limine* order prohibiting any "reference to or evidence presented of wealth or lack thereof of any party except in the punitive damage phase of a case, to the extent it exists." (*Id.* (quoting Dkt. No. 376 at 2.)) Impinj counters that it did not reference the parties' respective sizes in the original trial to paint

---

[1] For example, in *Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, the question of commercial success of an infringing product could not have been material, as that case was brought pursuant to the Hatch-Waxman Act, where the defendant's filing of an Abbreviated New Drug Application seeking FDA approval is considered an artificial act of infringement under 35 U.S.C. § 271(e)(2). No. CIV.A.05-CV-1887 DMC, 2009 WL 3754170, at *2 (D.N.J. Nov. 5, 2009). In such cases, there can be no evidence of the commercial success of an infringing product, because the suit is brought prior to FDA approval to commercially manufacture the infringing product.

United States District Court
Northern District of California

1   NXP in a bad light but rather to provide context to the parties' motivations and relationships with

2   the industry.  Impinj agrees that it will not reference the "relative size, wealth or number of

3   employees of the parties 'in an effort to paint NXP in a bad light' to the jury" but argues that it

4   should "be permitted to reference such characteristics in an effort to introduce the parties to the

5   jury." (Dkt. No. 506 at 10.)

6        The Court's standard order which NXP quotes relates to cases where punitive damages are

7   at issue.  Here, the Court will not issue a blanket order prohibiting the parties from making any

8   reference to the size of the parties or their number of employees, to the extent that such

9   information is relevant for the jury to understand the context of the dispute.  However, the Court

10  will entertain specific objections to specific questions where the inquiry is to incite the passions or

11  prejudices of the jurors.

12       The Court **DENIES** NXP's MIL No. 3.

13       **D.      NXP MIL No. 4: Enduro Patent**

14       NXP's fourth MIL requests the Court enter an order precluding Impinj from referring to

15  the '302 patent as the "Enduro" patent.  (*See* Dkt. No. 498 at 10.)  Impinj does not oppose the

16  requested relief.  (*See* Dkt. No. 506 at 11; Dkt. No. 507 at 6:1–2 (indicating the motion is moot.))

17  Accordingly, the Court **GRANTS** NXP's MIL No. 4.  During trial, Impinj shall not refer to the '302

18  patent as the "Enduro" patent.

19       **E.      NXP MIL No. 5: Presumption of Validity**

20       NXP's final MIL requests the Court enter an order precluding Impinj from telling the jury

21  that the '302 patent is entitled to a presumption of validity.  (*See* Dkt. No. 498 at 19–20.)  NXP

22  argues that the '302 patent should not be entitled to a presumption of validity (or should be

23  entitled to a weaker presumption of validity) because the PTO did not have the benefit of this

24  Court's constructions of the "facilitating flow" limitation when it determined that the '302 patent

25  claims were patentable over the prior art.  (*See id.*)  Accordingly, because "the PTO did not have

26  all material facts before it" NXP argues that "its considered judgment may lose significant force."

27  *Microsoft Corp v. I4I Ltd. P'ship*, 564 U.S. 91, 111 (2011).

28       The Court finds NXP's position unconvincing and contrary to established law. It is black

United States District Court
Northern District of California

letter law that a patent "shall be presumed valid" and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282; *see also Microsoft*, 564 U.S. at 100 ("By its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense.").  NXP has provided no authority for the proposition that a patent somehow loses this presumption when challenged by evidence not previously presented to the PTO.  Absent such authority, the Court sees no reason why it "[a]llowing Impinj to argue to the jury that the Patent Office already examined the patent and that it is entitled to a presumption of validity would unfairly prejudice NXP and waste time contrary to FRE 403."  (Dkt. No. 498 at 20.)  The Patent Office *did* examine the '302 patent, and the '302 patent *is* entitled to a presumption of validity. Instructing the jury of these facts simply cannot cause NXP any undue prejudice.

NXP's reliance on *Microsoft* does not compel otherwise.  In *Microsoft*, the defendant took a similar position to NXP here, arguing that "a preponderance [of the evidence] standard must apply at least when an invalidity defense rests on evidence that was never considered by the PTO in the examination process."  *Microsoft*, 564 U.S. at 99–100.  The Supreme Court expressly rejected that position, finding that a patent's presumption of validity, and the heightened standard of proof attached thereto, did not "rise and fall with the facts of each case."  *Id.* at 109.  Rather, the Court merely approved the "commonsense principle . . . that new evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the PTO . . . ." *Id.* at 110.  Likewise, NXP may argue at trial that its invalidity defenses should carry more weight because they were not considered by the PTO.  However, nothing in *Microsoft* suggests that Impinj should be precluded from arguing that, under the black letter law, the '302 patent is entitled to a presumption of validity.

Accordingly, the Court **DENIES** NXP's MIL No. 5.

### III.   **IMPINJ MIL NO. 1: HITAG PRODUCT**

Impinj, in its only MIL, moves for an order precluding NXP from presenting evidence, testimony, or argument related to its allegedly prior art HITAG product. (*See* Dkt. No. 499-3.) Impinj argues that because the Court has previously denied NXP's motions to amend its invalidity

United States District Court
Northern District of California

1   contentions to assert the HITAG product as a prior art reference, (*see* Dkt. Nos 411, 495) HITAG

2   is thus entirely irrelevant and should be excluded under Federal Rules of Evidence 402 and/or 403.

3   NXP counters that it should be permitted to introduce evidence of HITAG as relevant evidence of

4   NXP's independent development of RFID chips with large pads, and to rebut Impinj's arguments

5   as to NXP's copying as a secondary consideration of nonobviousness. (*See* Dkt. No. 505.)

6   The Court agrees with NXP and finds Impinj's MIL overreaches.  While Impinj is correct

7   that the Court has ruled repeatedly, and reaffirms here, that NXP may not rely upon HITAG as a

8   ground for invalidity under 35 U.S.C. §§ 102 or 103, that does not mean that HITAG has no

9   relevance at all in the forthcoming trial.  Indeed, in the prior trial NXP was permitted to introduce

10   evidence and testimony regarding HITAG as a non-infringing alternative, to which Impinj had no

11   objection.  (*See, e.g.*, Dkt. No. 437 at 1044:20–23.)  Impinj argues that evidence of HITAG is

12   irrelevant to validity "because non-infringing alternatives are only relevant to damages," (Dkt No.

13   499-3 at 3), but this overstates the law as non-infringing alternatives may bear on secondary

14   considerations of nonobviousness, such as commercial success, or long-felt but unresolved need.

15   *See ABS Glob., Inc. v. Inguran, LLC*, No. 14-CV-503-WMC, 2019 WL 3812520, at *22 (W.D.

16   Wis. Aug. 14, 2019) (agreeing that evidence of non-infringing alternative may be relevant to rebut

17   evidence of commercial success of products embodying patents-in-suit).  In its motion, Impinj

18   selectively ignores evidence of NXP's independent design, which may be relevant to rebut its

19   allegations of copying and other secondary considerations of nonobviousness.  (*See* Dkt. No. 505

20   at 4.)  Because the Court is permitting Impinj to introduce evidence of NXP's alleged copying of

21   its products, NXP will likewise be permitted to introduce relevant rebuttal evidence, in the form of

22   HITAG.

23   Finally, Impinj argues that HITAG is not relevant to copying, and cites to evidence and

24   testimony from the prior trial which it asserts proves that NXP "indisputably" copied Impinj's

25   design.  This argument, like NXP's substantive arguments in its MIL No. 1, go to the weight of

26   the testimony and evidence.  HITAG is relevant to provide the jury with a comprehensive picture

27   for consideration, and the Court will not pre-judge that outcome by excluding relevant evidence

28   here.

The Court **DENIES** Impinj's MIL No. 1. The limited motion to seal at Dkt. No. 499 is **GRANTED**, good cause having been shown.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** NXP's MIL No. 4 and **DENIES** all of the parties' other MILs.  The Court further **GRANTS** Impinj's administrative motion to seal portions of its MIL No. 1.

This order terminates Dkt. Nos. 498, 499, and 500.

**IT IS SO ORDERED.**

Dated: January 29, 2024

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

8