Ramsey M. Al-Salam, Bar No. 109506
Christina J. McCullough, Bar No. 245944
Antoine M. McNamara, Bar No. 261980
R. Tyler Kendrick, admitted *pro hac vice*
Jessica J. Delacenserie, admitted *pro hac vice*
Stevan R. Stark, admitted *pro hac vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: 206.359.8000 / Fax: 206.359.9000
RAlsalam@perkinscoie.com
CMcCullough@perkinscoie.com
AMcNamara@perkinscoie.com
RKendrick@perkinscoie.com
JDelacenserie@perkinscoie.com
SStark@perkinscoie.com

Daniel T. Shvodian, Bar No. 184576
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650.838.4300 / Fax: 650.737.5461
DShvodian@perkinscoie.com

Daniel T. Keese, Bar No. 280683
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Tel: 503-727-2000 / Fax: 503-727-2222
DKeese@perkinscoie.com

*Attorneys for Plaintiff Impinj, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPINJ, INC., <br><br> Plaintiff, <br><br> v. <br><br> NXP USA, INC., <br><br> Defendant. | Case No. 4:19-cv-03161-YGR <br><br> IMPINJ, INC.'S POSITION REGARDING EVIDENTIARY PRESENTATION ON INJUNCTIVE RELIEF |

The Court has ordered the Parties to provide a "statement regarding any evidentiary presentation on the issue of injunctive relief" by noon on February 1, 2024 (Dkt. 509 at 1). Impinj is unclear what further evidence or presentation the Court seeks but contends that the trial record and the jury's lost profits award is sufficient to support injunctive relief precluding NXP's continuing infringement of the '302 patent if Impinj prevails on the re-trial of validity. At most, Impinj intends to present testimony that the relevant facts established at trial remain true and to rebut any claim by NXP that an injunction would cause it undue hardship. The relevant evidence presented at trial and jury findings include at least the following:

1. The market for the sale of integrated circuits ("ICs") for RAIN RFID applications is essentially a two-competitor market composed of Impinj and NXP (e.g., Trial Transcript ("Tr.") at 772:17-23, 735:10-16 (Kindler); Tr. 233:9-14 (Diorio)).

2. Impinj introduced large antenna contact pads with flared channels — the subject matter of the '302 patent — in its Monza R6 product (e.g., Tr. at 245:22-25 (Diorio); Tr. at 323:16-22 (Oliver); Zach Dep. at 107:15-24, May 13, 2022 (played at Tr. at 493:3)).

3. The patented antenna pads made tag assembly easier and more reliable and became a substantial driver of customer demand, causing Impinj's market share to grow (e.g., Trial Exh. 229:19; Trial Exh. 288:1; Trial Exh. 55:2-3; Tr. at 740:6-741:1; Tr. at 741:17-742:7 (Kindler); Trial Exh. 1327).

4. When NXP was designing its UCODE 8 product, it targeted the Monza 6 product and asked customers what they wanted to see in the UCODE 8 product (e.g., Trial Exh. 1327; Zach Dep. at 78:11-17, May 13, 2022 (played at Tr. at 493:3) Trial Exh. 157:3);

5. Customers identified and praised Impinj's patented pad design as a feature that should be included in the UCODE 8 product (e.g., Trial Exh. 229:19);

6. NXP adopted its infringing pad design in the UCODE 8 (and at a customer request, in one version of the UCODE 7), and continued to include it in the UCODE 9, despite knowledge of the '302 patent;

7. Following the introduction of NXP's infringing UCODE 8 products, Impinj's market share dropped by 10%, and NXP's rose by the same amount (e.g., Trial Exh. 1327; Tr. at

275:3-9 (Diorio); Tr. at 1097:24-1098:13 (Haas); Tr. at 740:6-741:1 (Kindler) (referring to customer demand for '302 invention) Tr. at 755:21-756:3 (explaining opinion "if the jury is to find that only lost profit[s] should be awarded on the '597 patent…" (Kindler)).

        8.     Impinj put NXP on notice that it was infringing the '302 patent on October 6, 2017 (Tr. Ex. 242:15) but NXP has never stopped infringing.

        9.     Ms. Kindler, Impinj's damages expert, opined Impinj would have made additional sales but for NXP's infringement of the '302 patent, opining that Impinj would have made 57% of NXP's infringing sales;

        10.    The jury adopted Ms. Kindler's recommendation, and awarded Impinj lost profits on the '302 patent on 57% of NXP's infringing sales; and

        11.    The jury further found that NXP engaged in willful infringement of the '302 patent.

Impinj respectfully submits that the facts and jury verdict above are more than sufficient to support injunctive relief precluding NXP's ongoing infringement of the '302 patent. The Court appeared to acknowledge the strength of such evidence in its earlier Order. Dkt. 472 at 3 ("Impinj has established at least some irreparable harm. … The parties are direct competitors, and Impinj has shown lost sales and market share. Furthermore, Impinj has shown a connection between the harm and the infringement where, in this basically two-player market, customers have clamored for the large pads of the '302 patent.").

Impinj acknowledges, however, that the Court in a subsequent Order concluded that Ms. Kindler did not separate the '302 patent from the '597 patent when opining on lost profits, and that the jury "did not apportion its lost profits award separately as to each asserted patent." (Dkt. 493 at 5). Impinj respectfully submits that this is clearly wrong. First, Ms. Kindler did opine, both in her report and in her testimony, that Impinj was entitled to lost profits independently for the infringement of each patent. *See* Tr. at 755:21-756:3 (explaining recommended award "if the jury is to find that only lost profit[s] should be awarded on the '597 patent…"). More importantly, the jury made clear that it was awarding lost profits separately for each patent. First, during

deliberations, the jury specifically asked whether damages were "additive" for each patent. *See* Jury Note No. 5 (Dkt. 428). In response, the Court gave the following instruction:

> You should decide whether Plaintiff is entitled to lost profits, if any, on the '597 patent independent of whether Plaintiff is entitled to lost profits on the '302 patent. However, if you decide that Plaintiff is entitled to lost profits on both, you should note on the verdict form how much of those profits overlap. Ultimately, Plaintiff cannot recover duplicative profits on the same sales.

Following that instruction, the jury issued its jury verdict (Dkt. 426) where it separately found that Impinj had proven lost profits on the '597 patent of $17.68 million, and lost profits on the '302 patent of $17.79 million. (Dkt. 426 at 6-7). The jury also found for the '302 patent, that "$17.68 million overlaps with '597 patent lost profits." (*Id.* at 7).[1]

The parties also **stipulated** that the jury awarded lost profits separately for '597 patent, in response to the Court's request that the parties identify the appropriate reduction in connection with its decision on AdvanIDe Americas sales. *See* Dkt. 485 (stipulating to "$13,141,341 as the total amount of damages to be awarded to Impinj for NXP's infringement of the '597 Patent from November 12, 2018, through July 6, 2023"). In other words, NXP has agreed that lost profits were awarded separately for the '597 patent (and thus also for the '302 patent).

Consistent with the above and its earlier briefing (Dkts. 447, 460), the finding that NXP's infringement of the '302 patent is diverting sales from Impinj to NXP supports the grant of injunctive relief. The only evidence that was not presented to the jury is evidence as to the hardship that NXP will allegedly suffer from an injunction. Impinj will seek to rebut any such evidence and/or to assert that NXP is estopped from claiming such hardship when it and its witnesses testified and argued at trial that the UCODE 7 without big pads is a readily available non-infringing alternative for customers.

Impinj reserves the right to address or rebut any other arguments by NXP relating to the hardship an injunction will allegedly impose on it.

---

[1] The damages award on the '302 patent was marginally higher than the '597 patent because the damages period began earlier (based on Impinj's notice of infringement to NXP).

| | | |
|---|---|---|
| 1 | Dated February 1, 2024 | By: */s/ Ramsey M. Al-Salam* |
| 2 | | Ramsey M. Al-Salam, Bar No. 109506 |
| | | Christina J. McCullough, Bar No. 245944 |
| 3 | | Antoine M. McNamara, Bar No. 261980 |
| | | R. Tyler Kendrick (admitted *pro hac vice*) |
| 4 | | Jessica J. Delacenserie (admitted *pro hac vice*) |
| 5 | | PERKINS COIE LLP |
| | | 1201 Third Avenue, 49th Floor |
| 6 | | Seattle, WA 98101 |
| | | Tel: 206.359.8000 |
| 7 | | Fax: 206.359.9000 |
| | | RAlSalam@perkinscoie.com |
| 8 | | CMcCullough@perkinscoie.com |
| | | AMcNamara@perkinscoie.com |
| 9 | | RKendrick@perkinscoie.com |
| 10 | | JDelacenserie@perkinscoie.com |
| 11 | | Daniel T. Shvodian, Bar No. 184576 |
| | | PERKINS COIE LLP |
| 12 | | 3150 Porter Drive |
| | | Palo Alto, CA 94304 |
| 13 | | Tel: 650.838.4300 |
| 14 | | Fax: 650.737.5461 |
| | | DShvodian@perkinscoie.com |
| 15 | | |
| | | Daniel T. Keese, Bar No. 280683 |
| 16 | | PERKINS COIE LLP |
| 17 | | 1120 N.W. Couch Street, 10th Floor |
| | | Portland, OR 97209-4128 |
| 18 | | Tel: 503.727.2000 |
| | | Fax: 503.727.2222 |
| 19 | | DKeese@perkinscoie.com |
| 20 | | *Attorneys for Plaintiff Impinj, Inc.* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via U.S. District Court CM/ECF notification on February 1, 2024, to all counsel of record.

                                             */s/ Ramsey M. Al-Salam*
                                               Ramsey M. Al-Salam