1   Tharan Gregory Lanier (State Bar No. 138784)
    tglanier@jonesday.com
2   Michael C. Hendershot (State Bar No. 211830)
    mhendershot@jonesday.com
3   JONES DAY
    1755 Embarcadero Road
4   Palo Alto, CA  94303
    Telephone:  (650) 739-3939
5   Facsimile:   (650) 739-3900

6   [Additional counsel identified on signature pages]

7   Attorneys for Defendant
    NXP USA, INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12

13  IMPINJ, INC.,                      Case No. 4:19-CV-03161-YGR

14              Plaintiff,             **NXP USA, INC.'S TRIAL BRIEF
                                       REGARDING EVIDENTIARY
15        v.                           HEARING ON PERMANENT
                                       INJUNCTION REQUEST**
16  NXP USA, INC.,
                                       Location: Courtroom 1, 4th Floor
17              Defendant.             Judge: Yvonne Gonzalez Rogers

18                                     Trial Date: March 18, 2024
19
20                                     **REDACTED PUBLIC VERSION**
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................ 2

III.    ANALYSIS ............................................................................................................ 2

        A.      The Facts Do Not Support a Permanent Injunction............................... 2

                1.      Impinj Cannot Establish Irreparable Harm. ............................... 3

                        (a)     Impinj Cannot Support the Harm It Has Alleged.................... 3

                        (b)     There Is No Causal Nexus to Any of the Alleged Harm.......... 3

                2.      Legal Remedies Are More Than Adequate................................. 5

                3.      The Balance of Hardships Does Not Favor Impinj. .................... 6

                4.      An Injunction Would Not Be in the Public's Interest. ................ 7

        B.      The Proposed Injunction Is Facially Overbroad.................................... 9

                1.      There Is No Basis to Enjoin NXP's Subsidiaries and Affiliates. ...................... 9

                2.      An Injunction Cannot Extend to Inducement or Non-U.S. Conduct. ............... 9

                3.      There Is No Basis to Require a Notice With Sales. ........................ 10

                4.      Any Injunction Should Include an Appropriate Sunset Provision. ................. 10

IV.     CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................6

*Apple Inc. v. Samsung Elecs. Co. (Apple II)*,
   695 F.3d 1370 (Fed. Cir. 2012)..................................................................................3

*Apple Inc. v. Samsung Elecs. Co. (Apple III)*,
   735 F.3d 1352 (Fed. Cir. 2013)........................................................................ passim

*Apple Inc. v. Samsung Elecs. Co. (Apple IV)*,
   809 F.3d 633 (Fed. Cir. 2015)........................................................................3, 6, 7, 9

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
   802 F. Supp. 2d 555 (D. Del. 2011)...........................................................................7

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013)................................................................................10

*Cave Consulting Grp., LLC v. Optuminsight, Inc.*,
   No. 5:11-cv-00469-EJD, 2016 WL 4658979 (N.D. Cal. Sept. 7, 2016)................3, 6

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009)....................................................................................9

*Conceptus, Inc. v. Hologic, Inc.*,
   No. C 09-02280 WHA, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012)........................6, 7

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)....................................................................................................2

*Genband US LLC v. Metaswitch Networks Corp.*,
   861 F.3d 1378 (Fed. Cir. 2017)..................................................................................4

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)..................................................................................10

*Inguran, LLC v. ABS Glob., Inc.*,
   72 F.4th 1272 (Fed. Cir. 2023)................................................................................10

*LA Alliance for Human Rights v. Cnty. of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021)......................................................................................................10

*Lear, Inc. v. Adkins*,
  395 U.S. 653, 670 (1969)............................................................................................................9

*MercExchange, L.L.C. v. eBay, Inc.*,
  500 F. Supp. 2d 556 (E.D. Va. 2007).........................................................................................7

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010)....................................................................................................................3

*Nestier Corp. v. Menasha Corp.-Lewisystems Div.*,
  739 F.2d 1576 (Fed. Cir. 1984)...................................................................................................9

*Nichia Corp. v. Everlight Ams., Inc.*,
  855 F.3d 1328 (Fed. Cir. 2017)...................................................................................................2

*Orantes–Hernandez v. Thornburgh*,
  919 F.2d 549 (9th Cir. 1990).....................................................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. C 09-5235 MMC, 2015 WL 604582 (N.D. Cal. Feb. 12, 2015)...........................................5

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)...................................................................................................2

*TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*,
  920 F.3d 777 (Fed. Cir. 2019)...................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 65.................................................................................................9

1    **I.     INTRODUCTION**

2          Impinj filed this lawsuit in June 2019, asserting 26 patents, which it contended "cover key

3    Impinj technologies such as AutoTune, Integra, Enduro, and FastID, as well as Impinj circuit

4    designs and implementations."  Dkt. 453-7; Dkt. 453-2 at ¶¶ 9–10; Dkt. 453-8; Dkt. 452-9.

5    Impinj dropped 22 of those patents from this lawsuit; of those, eight had some or all claims

6    canceled during *inter partes* review.  Dkt. 453-2 at ¶¶ 3–4.  The Court entered summary judgment

7    of non-infringement on two of the four patents remaining in this case.  *See* Dkt. 339.  Having

8    denied a permanent injunction on one of the two patents tried—the '597 patent—the only

9    possible injunction that could be entered after re-trial would be based on the '302 patent alone.

10         The '302 patent claims to "facilitate a fluid flow" from the center of a channel between

11   two large RF pads to the ends.  But, adopting Impinj's newly proposed claim construction at

12   summary judgment, the Court ruled that "facilitate a fluid flow" is *not* a substantive limitation

13   and is *not* part of the claimed invention.  Dkt. 339 at 11.  That leaves the claimed *shape* of the

14   channel between the pads as the sole basis for Impinj to seek an injunction on the '302 patent.

15         In declining to issue an injunction on the '597 patent, the Court noted that "customers

16   have clamored for the *large pads* of the '302 patent."  Dkt. 472 at 3 (emphasis added).  But large

17   pads are not the '302 patent's invention.  Large pads were well known in the art prior to the '302

18   patent application, *e.g.*, Eberhart (Ex. 518), HITAG (Ex. 160), among others.  And Impinj has

19   offered no admissible evidence that customers clamored for the '302 patent's claimed channel

20   shape.  Rather, Impinj characterized its "Enduro Technology," which is covered by several

21   patents in addition to the '302 patent, as "replac[ing] traditional bumps with *large copper pads*."

22   Ex. 54 at 2 (emphasis added).  On the other hand, NXP's UCODE 8 pads were recognized for

23   their own "unique shape … with a four-sided pad structure that provides dual-axis glue spacer

24   (space for glue to affix the chip to the antenna) along with the UCODE's standard, corrosion-free,

25   large-area gold bumps."  Ex. 288 (RFID Journal Article) at 2.

26         Beyond large pads, NXP's UCODE 8 and UCODE 9 products have myriad other features,

27   including features that the Court has already found do not infringe Impinj's patents, like Self-

28   Adjust.  Dkt. 339 (granting summary judgment of noninfringement of the '266 patent).  There is

1   nothing equitable about enjoining an entire product based on the Court's determination that one

2   aspect of one component embodies the '302 patent.  Nor would it be equitable to issue an

3   injunction where the Patent Office has initiated *ex parte* reexamination of the '302 patent based

4   on the Court's clam construction, agreeing to review grounds that other prior art—including the

5   HITAG reference that the jury will be directed not to consider as prior art—raises multiple

6   "substantial new question[s] of patentability" under that construction.[1]

7   **II.      LEGAL STANDARD**

8         Impinj has the burden to establish the four *eBay* factors:  that (1) infringement—rather

9   than lawful competition—caused it irreparable harm, (2) monetary damages are inadequate, (3)

10  the balance of hardships favors it, and (4) the public interest would be furthered by an injunction.

11  *Nichia Corp. v. Everlight Ams., Inc.*, 855 F.3d 1328, 1344 (Fed. Cir. 2017).  And Impinj may not

12  rely on presumptions or other shortcuts as to any factor.  *Robert Bosch LLC v. Pylon Mfg. Corp.*,

13  659 F.3d 1142, 1149 (Fed. Cir. 2011).  This is so even when the parties are direct competitors and

14  when lost profits have been awarded.  The analysis is an equitable one, and the Court may decline

15  to impose an injunction if any one of these four factors are lacking.  *eBay Inc. v. MercExchange,*

16  *L.L.C.*, 547 U.S. 388, 391 (2006).  As the record evidence shows, and as will be further

17  demonstrated at the upcoming hearing, Impinj cannot satisfy its burden as to any factor.

18  **III.     ANALYSIS**

19        **A.     The Facts Do Not Support a Permanent Injunction.**

20        "'An injunction is a drastic and extraordinary remedy, which should not be granted as a

21  matter of course.…'  Rather, 'if a less drastic remedy … is sufficient to redress a plaintff's injury,

22  no recourse to the additional and extraordinary relief of an injunction is warranted.'"  *Apple Inc.*

23  *v. Samsung Elecs. Co.* (*Apple III*), 735 F.3d 1352, 1359 (Fed. Cir. 2013) (quoting *Monsanto Co.*

24  *v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010)) (cleaned up).

25

---

26        [1] This brief provides an overview of the injunction framework and the evidence already
    offered (with all citations to Tr. and Ex. referring to the transcript and exhibits associated with the
27  July 5, 2023 trial), while previewing the evidence that NXP will present at the upcoming hearing.
    NXP requests briefing and an opportunity to be heard after the evidentiary hearing before the
28  Court entertains any renewed request for an injunction if the jury finds the '302 patent valid.

1        **1.        Impinj Cannot Establish Irreparable Harm.**

2        A patentee must establish both "1) that absent an injunction, it will suffer irreparable

3    harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged

4    infringement." *Apple Inc. v. Samsung Elecs. Co. (Apple II)*, 695 F.3d 1370, 1374 (Fed. Cir.

5    2012).  Impinj's six-year delay in seeking an injunction "suggests that [it] did not suffer

6    irreparable harm," period.  *Cave Consulting Grp., LLC v. Optuminsight, Inc.*, No. 5:11-cv-00469-

7    EJD, 2016 WL 4658979, at *22–23 (N.D. Cal. Sept. 7, 2016).  In any event, "[w]ithout a showing

8    of causal nexus, there is no *relevant* irreparable harm." *Apple III*, 735 F.3d at 1363 (emphasis

9    added).  A patentee may not "leverage its patent for competitive gain beyond that which the

10   inventive contribution and value of the patent warrant." *Apple II*, 695 F.3d at 1375.

11       **(a)        Impinj Cannot Support the Harm It Has Alleged.**

12       Impinj has alleged various types of harm, but with the exception of its market share

13   decreasing before the first trial after NXP introduced a better product, Impinj can prove none of

14   them.  In the original trial, the jury accepted Impinj's expert's market-share-based opinions on

15   lost profits for the percentage of NXP's sales of the accused products she contends Impinj would

16   have made—57%, not 100%—and a reasonable royalty rate for the use of the '302 patent (1.5%).

17   *See* Dkt. 426 at 6, 7; Tr. at 753:17–754:20, 756:18–20, 760:15–761:3, 761:17–762:1.  NXP

18   contends that the evidence does not support lost profits at all.  *See* Dkt. 446 at 20–24.  But the

19   jury's damages verdict shows that Impinj's harm is readily compensable.

20       **(b)        There Is No Causal Nexus to Any of the Alleged Harm.**

21       "[P]roving a causal nexus requires the patentee to show some connection between the

22   *patented features* and the demand for the infringing products" and "not just the importance, in

23   general, of features of the same type as the claimed invention." *Apple Inc. v. Samsung Elecs. Co.*

24   *(Apple IV)*, 809 F.3d 633, 641 (Fed. Cir. 2015) (emphasis added); *Apple III*, 735 F.3d at 1364.  At

25   base, the '302 patent claims only a shape.  Indeed, the sole dispute at trial as to the '302 patent

26   was over limitation 1(f)'s flared channel shape, which Impinj's expert repeatedly referred to as

27   the patent's "key" element.  Tr. at 1162:6–9, 1164:9–13, 1177:7–9.  It is undisputed that large

28   pads were in the prior art and marketed by NXP long before the '302 patent.  *See* Ex. 518

1  (Eberhardt); Tr. at 910:3–911:24, 913:9–914:18 (Zenz); Ex. 160 (HITAG data sheet).  In this very

2  litigation, Impinj asserted a separate patent relating to other aspects of large pads that the Court

3  found NXP did not infringe.  *See* Dkt. 339 at 6–9 (ruling on '631 patent).

4      Moreover, pads are simply one component of one part of an IC chip.  *See* Dkt. 452-4 at 8-

5  10; *see also* Ex. 2, '302 Patent, FIG. 4.  In this "multi-purchaser, multi-component situation,"

6  Impinj must proffer evidence that "*the infringing features*" of the accused products "significantly

7  increased the product's desirability" or evidence that otherwise "soundly supports an inference of

8  causation of a significant number of purchasers' decisions" to buy NXP's UCODE 8 and UCODE

9  9 products.  *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir.

10  2017).  The UCODE 8 data sheet evidences the many features and technologies embedded in and

11  responsible for customer demand for that product, such as Self Adjust, Memory Safeguard, Brand

12  Identifier, Untraceable, and Kill Command, to name a few.  Ex. 423 at 2–3, 18–25.[2]

13      NXP's UCODE 8 and UCODE 9 large pads also differ from Impinj's "Enduro" pads in

14  material respects.  The '302 patent claims neither a four-pad structure nor a dual-axis channel as

15  advertised in NXP's products, as is evident from a side-by-side comparison:

  

20  Ex. 2, FIG. 12; Ex. 18 at 7.  At trial, Dr. Zenz testified to multiple advantages of this four-pad

21  structure.  Tr. at 922-924; 959-963.  Moreover, NXP used gold pads, which do not suffer the

22  corrosion issues that Impinj's copper pads did, before Impinj.  *See* Tr. at 391:6–12 (Oliver).  As

23  Dr. Zenz also testified, customers' preferences for large pads over bumps are driven in large part

24  by convenience and the desire to minimize different assembly processes.  Tr. at 914-916.

25      Impinj and third parties called attention to the Monza R6's "[l]arge copper pads."  Ex. 54

---

27  [2] In fact, Impinj had to add a kill command into its Monza R6 P because it was losing
   market share in the EU due to GDPR requirements.  *See* Dkt. 452-7 at 73:3-79:18 (discussing Ex.
28  1036 at 11); Dkt. 452-8 at 369:4-370:5 (discussing Ex. 1077 at 2).

at 2; *accord* Ex. 51 at 2 (article praising the "attachment surfaces that are *much* larger" (emphasis in original)).  While Impinj has tried to equate customer demand for its "Enduro" pads with the channel shape, "Enduro" consists of much more.  *See* Ex. 235 at 11 ("Enduro is covered by U.S. Pat. Nos. 8,188,927, 8,511,569, and 8,614,506," with "[m]ultiple additional patent applications … pending").  And "[g]eneral industry praise for the innovations effected by the [asserted patent] … is not the same as customer demand."  Dkt. 472 at 3.  Moreover, "even if [the evidence] were sufficient to show the patented features drive demand for *[Impinj's] own products*, [it] is insufficient to establish a causal nexus between those features and demand for *[NXP's] competing products*."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2015 WL 604582, at *3 (N.D. Cal. Feb. 12, 2015) (emphasis added).  Impinj did not introduce any survey or direct customer evidence regarding the channel shape of NXP's UCODE 8 or 9.  Impinj has cited the self-serving, hearsay testimony of Impinj's Chief Revenue Officer, Jeff Dossett, that unidentified individuals at unidentified "meetings and engagements" spoke about UCODE 8's "large pads and the – the channel architecture," but his testimony on that subject was not admitted for its truth.  Tr. 606:5-609:23.  And it is undisputed that the UCODE 8's unique, dual-axis channel architecture differs from that of Impinj's products, notwithstanding the Court's conclusion on summary judgment that the UCODE 8 also reads on the '302 patent.[3]

At the hearing, to the extent it is not covered during the jury trial, NXP's witnesses will expand on customer demand for the accused products, including that downstream customers (retailers like Nike) do not care about pads versus bumps, much less the shape of the space between them.  NXP will also discuss the unique benefits of NXP's pads.

## 2.    Legal Remedies Are More Than Adequate.

"In the absence of a finding of irreparable injury, there can be no finding that legal remedies are 'inadequate to compensate for that injury.'"  *Power Integrations*, 2015 WL 604582, at *5 (quoting *eBay*, 547 U.S. at 391).  Here, monetary damages are more than adequate, as

---

[3] There is no evidence of copying.  In any event, "evidence of copying…is insufficient by itself to establish the requisite causal nexus."  *Apple III*, 735 F.3d at 1367.

1  evidenced by the jury's award that took into account noninfringing alternatives and "what Impinj

2  is expecting it would lose … in terms of lost sales and profitability." Tr. at 758:22–25.

3      The evidence also does not support Impinj's purported refusal to license its patents.  At

4  the outset of this litigation, Impinj represented that it would "continue to provide reciprocal

5  royalty-free access to [Impinj] intellectual property necessary to practice the GS1® Gen2

6  protocol."  Dkt. 453-7; 453-8.  At trial in this case, Impinj CEO Chris Diorio testified that he

7  sought to "engage NXP" for two years before filing the lawsuit.  Tr. 263:10-19; *see also* Tr. at

8  1073:4–17.  And in a sworn declaration submitted in support of Impinj's motion for a permanent

9  injunction, Dr. Diorio reiterated Impinj's willingness to accept a royalty.  Dkt. 461-1 at ¶ 5.

10      At the hearing, NXP will also elicit evidence that Dr. Diorio reiterated that willingness to

11  settle in the first trial in the Texas matter, testifying that he sought a "resolution" with NXP for 20

12  months and that the reason Impinj had not licensed its patents to-date is because "nobody's

13  approached [Impinj] to license them."  Moreover, Impinj recently represented to its shareholders

14  that it was willing to settle the case, evidencing the adequacy of monetary damages.

15          **3.      The Balance of Hardships Does Not Favor Impinj.**

16      The scope of a requested injunction and the availability of design-arounds is "crucial" to

17  the balance of hardships.  *See Apple IV*, 809 F.3d at 640.  Here, rather than seeking a "narrowly

18  tailored" injunction, *id.* at 646, Impinj seeks to enjoin worldwide sales of multi-featured products.

19  NXP has a design-around underway, but designing around the '302 patent is not as simple as

20  deactivating a software feature (like in *Apple IV*).  Instead, NXP's engineers are designing a

21  mechanical interface that has to work with its customers' assembly equipment.

22      Impinj's relatively smaller size "does not mean that there is a hardship absent an

23  injunction."  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed.

24  Cir. 2012).  Nor is Impinj—with a $3 billion market capitalization and hundreds of employees—

25  a small company.  However, an injunction would threaten NXP's investment in its own

26  technologies that are incorporated into its products and diminish NXP's reputation with its

27  customers.  *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2012 WL 44064, at *3 (N.D.

28  Cal. Jan. 9, 2012); *Cave Consulting*, 2016 WL 4658979, at *23.

1    <u>At the hearing</u>, NXP will update the Court on the status of its design-around.  NXP's

2    witnesses will explain why simply reverting to UCODE 7 is not a realistic alternative in the

3    market as it exists today.  It would also cause hardship to NXP to ramp up its fabrication of

4    UCODE 7, ███████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████

8    ████████████████  As supply is among the top concerns for NXP's customers, enjoining all sales of

9    UCODE 8 and UCODE 9 will irreparably damage NXP's reputation.

10   Still further, the Patent Office recently granted *ex parte* reexamination on the '302 patent.

11   Declaration of T. Kaitlin Crowder, Ex. A.  "[T]he far more substantial risk of harm to [NXP] is

12   the potential for [NXP] to lose customers … only to later discover that the ['302] patent was

13   never valid."  *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 585-86 (E.D. Va. 2007);

14   *see also Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 579 (D. Del.

15   2011).

16   **4.      An Injunction Would Not Be in the Public's Interest.**

17   The scope of an injunction is also "crucial" to the public interest factor.  *Apple IV*, 809

18   F.3d at 640.  In particular, courts must consider the injunction's scope against "the prospect that

19   an injunction would have the effect of depriving the public of access to a large number of non-

20   infringing features."  *Apple III*, 735 F.3d at 1372–73.  Impinj cannot establish that it is in the

21   public interest to block access to the scores of non-infringing features in NXP's products.

22   Impinj is doing everything in its power to suppress competition.  The right to compete in a

23   free, competitive market serves the public interest.  *See* Heinrich Dep. at 363:8–364:11 (attached

24   to Vol. 6, July 12, 2023 daily transcript) ('302 patent inventor recognizing "customers['] desire to

25   have multiple suppliers in the marketplace and … the competition [it] breeds").  For good reason,

26   UCODE 8 and UCODE 9 are used for applications such as tagging surgical sponges to improve

27   patient care and are critical components of the U.S. and global supply chain in a wide variety of

28   fields.  *See* Tr. at 1067:2–1068:3 (Kodritsch); *see also Conceptus*, 2012 WL 44064, at *3.  In fact,

1    Impinj's request to enjoin UCODE 8 and 9 contradicts the representation it made upon filing this

2    suit that it "is making every effort to avoid disrupting [customers'] supply chains, for example by

3    not seeking an injunction on NXP's highest-volume endpoint IC," which has been UCODE 8 or 9

4    since 2020.  Dkt. 453-7; 452-6 at ¶ 13.

5           A party's inability to satisfy demand for the products it seeks to enjoin amplifies harm to

6    the public interest.  Impinj has been chronically unable to keep up with its own demand, which

7    often exceeded shipments by 50%, much less NXP's.  Ex. 1391.  It has offered no evidence from

8    its foundry, TSMC, that Impinj's "wafer allocation … would increase once NXP's infringement

9    ceases."  Dkt. 447 at 18.  And the evidence contradicts Impinj's assertion that it could "simply

10   source additional wafers from another supplier."  *Id.*; *cf.* Ex. 1077 at 30 ("Recommendation: Do

11   not entertain a 2nd Source").  ████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ██████████████████████████████████████████

15   ██████████████████████    Absent UCODE 8, Impinj's inability to keep up with demand

16   during this period would likely have caused reputational damage to Impinj and chilled RAIN

17   RFID adoption in the industry.  It is not in the public interest to allow Impinj to seek to enjoin the

18   sale of a product that it has already used to make up for its shortcomings and that it hopes to

19   similarly exploit in the future.  *See* Dkt. 461-1 at ¶ 5 (Diorio declaring that "to the extent there is

20   truly a demand for products that cannot be satisfied by the UCODE 7 product or by Impinj's

21   available products, Impinj is willing to allow NXP to sell infringing products").

22          Moreover, granting an injunction would be contrary to the "important public interest in

23   permitting full and free competition in the use of ideas which are in reality a part of the public

24   domain."  *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969); *see also Nestier Corp. v. Menasha

25   Corp.-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984).  The Patent Office recently

26   granted *ex parte* reexamination of the '302 patent on multiple grounds, including anticipation by

27   HITAG.  Declaration of T. Kaitlin Crowder, Ex. A.  The public interest is not served by broadly

28   enjoining multi-featured products when there is a pending substantial question as to the validity

1  of the sole patent grounding that injunction.

2  <u>At the hearing</u>, NXP will expand on how the UCODE products are used, as well as past

3  and current market pressures.  NXP will also explain that end-users that have qualified and been

4  working with UCODE 8 or UCODE 9-based inlays for the last several years would also

5  experience hardship if they have to revert to, or qualify for the first time, UCODE 7-based inlays

6  into their use cases.  As NXP will also expand on at the hearing, Impinj has recently refused to

7  update its reader products to even *recognize* new NXP tags—despite claiming that its readers are

8  industry-standard compliant.  Such firmware updates are routine for all reader manufacturers.

9  Given its prominent position in the reader market, Impinj's refusal to disseminate updates

10 effectively prevents NXP from introducing non-infringing alternatives.

11        **B.        The Proposed Injunction Is Facially Overbroad.**

12        "[T]he scope of an injunction plays a role in determining whether that injunction is

13 awarded." *See Apple IV*, 809 F.3d at 640.  It would be error to enter Impinj's requested

14 injunction, which extends far beyond Federal Rule of Civil Procedure 65's boundaries.

15        **1.        There Is No Basis to Enjoin NXP's Subsidiaries and Affiliates.**

16        "The text of Rule 65(d) is exclusive, stating that an injunction can permissibly bind 'only'

17 those persons listed in Rule 65(d)." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277,

18 1287 (9th Cir. 2009).  Rule 65(d) does not bind "subsidiaries and affiliates."  In fact, Impinj

19 declined to name any other defendants in this case, and it has chosen to sue NXP USA's affiliate

20 NXP Netherlands B.V. in Texas on the same patents, as relief cannot be awarded by this Court.

21        **2.        An Injunction Cannot Extend to Inducement or Non-U.S. Conduct.**

22        Impinj's injunction is also overbroad because (1) it omits any territorial restrictions and

23 (2) expressly extends to "infringing, directly or indirectly, or inducing infringement."  Dkt. 447 at

24 1; Dkt. 447-2 at 1.  First, "an injunction must be narrowly tailored to give only the relief to which

25 plaintiffs are entitled." *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990).

26 Impinj is not entitled to a prohibition on extraterritorial activity given that the Patent Act's

27 prohibition on direct infringement extends only to U.S. conduct.  Second, the injunction cannot

28 extend to "indirect" infringement.  A court "only ha[s] equitable power to grant relief on 'the

1    merits of the case or controversy before it,' and 'does not have the authority to issue an

2    injunction' 'based on claims not pled in the complaint.'"  *LA Alliance for Human Rights v. Cnty.*

3    *of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021) (citation omitted).  Indirect infringement was

4    not tried to or decided by the jury, as the Court denied Impinj leave to assert that infringement

5    theory.  *See* Dkt. 71 (SAC); Dkt. 262 (denying leave to assert inducement); Dkt. 427 (jury

6    instructions); Dkt. 426 (jury verdict).  An injunction extending to unadjudicated inducement

7    claims "improperly broaden[s] the scope of the … judgment."  *Inguran, LLC v. ABS Glob., Inc.*,

8    72 F.4th 1272, 1281 (Fed. Cir. 2023).

9    **3.**    **There Is No Basis to Require a Notice With Sales.**

10    A notice provision would be unwarranted.  No court has required customers or third-party

11    manufacturers to provide notice absent a finding of induced infringement.  *See* Dkt. 453 at 23.

12    **4.**    **Any Injunction Should Include an Appropriate Sunset Provision.**

13    Finally, Impinj fails to include a sunset provision to mitigate negative effects on end users

14    and prevent significant downstream disturbances while a design-around is implemented.  *E.g.*,

15    *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019); *Broadcom*

16    *Corp. v. Emulex Corp.*, 732 F.3d 1325, 1339 (Fed. Cir. 2013); *i4i Ltd. P'ship v. Microsoft Corp.*,

17    598 F.3d 831, 864 (Fed. Cir. 2010).  A sunset provision would also accommodate the Patent

18    Office's *ex parte* reexamination of the '302 patent.  It would be inequitable to enforce any

19    injunction while the PTO is re-evaluating invalidity of the only patent supporting the injunction.[4]

20    At the hearing, NXP will update the Court on the status of its design-around for the '302

21    patent and expand on its volume commitments to its customers.  *See* Dkt. 452-6 at ¶ 11.

22    **IV.**    **CONCLUSION**

23    For these reasons, which will be further articulated at the hearing and in post-trial briefing,

24    a permanent injunction on the '302 patent would be unwarranted if the jury finds the patent valid.

25

26    _____

27    [4] Impinj's appeal divests the Court of jurisdiction to consider an injunction based on
the '597 patent.  In any event, courts may not aggregate unrelated patents to support an
28    injunction.  *Apple III*, 735 F.3d at 1365.

1    Dated: March 11, 2024                          JONES DAY

2

3                                            By:*/s/ Michael C. Hendershot*
                                                    Michael C. Hendershot

4
                                                    Tharan Gregory Lanier
5                                                   (California State Bar No. 138784)
                                                    tglanier@jonesday.com
6                                                   Michael C. Hendershot
                                                    (California State Bar No. 211830)
7                                                   mhendershot@jonesday.com
                                                    Gurneet Singh
8                                                   (California State Bar No. 333711)
                                                    gsingh@jonesday.com
9                                                   JONES DAY
                                                    1755 Embarcadero Road
10                                                  Palo Alto, CA 94303
                                                    Telephone:  (650) 739-3939
11                                                  Facsimile:  (650) 739-3900

12                                                  Thomas W. Ritchie (admitted *pro hac vice*)
                                                    (Illinois State Bar No. 6301954)
13                                                  twritchie @jonesday.com
                                                    Lisa L. Furby (admitted *pro hac vice*)
14                                                  (Illinois State Bar No. 6312855)
                                                    lfurby@jonesday.com
15                                                  John M. Michalik (admitted *pro hac vice*)
                                                    (Illinois State Bar No. 6280622)
16                                                  jmichalik@jonesday.com
                                                    Timothy J. Heverin (admitted *pro hac vice*)
17                                                  (Illinoi State Bar No. 06243107)
                                                    tjheverin@jonesday.com
18                                                  JONES DAY
                                                    110 North Wacker Drive, Suite 4800
19                                                  Chicago, IL 60606
                                                    Telephone:  (312) 782-3939
20                                                  Facsimile:  (312) 782-8585

21                                                  Yury Kalish (admitted *pro hac vice*)
                                                    (D.C. State Bar No. 1020172)
22                                                  ykalish@jonesday.com
                                                    Tracy A. Stitt (admitted *pro hac vice*)
23                                                  (D.C. State Bar No. 1015680)
                                                    tastitt@jonesday.com
24                                                  Robert Levent Herguner (admitted *pro hac vice*)
25                                                  (New York State Bar No. 5722228)
                                                    rlherguner@jonesday.com
26                                                  JONES DAY
                                                    51 Louisiana Ave., N.W.
27                                                  Washington, D.C. 20001
                                                    Telephone:  (202) 879-3939
28                                                  Facsimile:  (202) 626-1700

1            T. Kaitlin Crowder (admitted *pro hac vice*)
(Ohio State Bar No. 0095796)

2            Robert M. Breetz (admitted *pro hac vice*)
(Ohio State Bar No. 0098968)

3            kcrowder@jonesday.com
JONES DAY

4            901 Lakeside Ave. E.
Cleveland, OH 44114

5            Telephone:  (216) 586-7347
Facsimile:  (216) 579-0212

6

7            Matthew J. Silveira
(California State Bar No. 264250)

8            JONES DAY
555 California Street, 26th Floor

9            San Francisco, CA 94104
Telephone: (415) 626-3939

10           Facsimile: (415) 875-5700
msilveira@jonesday.com

11          Attorneys for Defendant
NXP USA, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NXP USA, INC.'S TRIAL BRIEF RE
EVID. HRG. ON  PERMANENT INJUNCTION
Case No. 4:19-CV-03161-YGR